1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

PEOPLE OF THE STATE OF NEW            ) Civil Action
YORK,                                 ) No. 17-3706 (CBA)
by ERIC T. SCHNEIDERMAN,              )
Attorney General of the State         ) STATUS CONFERENCE
of New York,                          )
                       Plaintiff,     ) Brooklyn, New York
vs.                                   ) Date:  January 17, 2018
KENNETH GRIEPP, et al.,               ) Time:  10:00 a.m.
                                      )
                      Defendants.     )
_____

TRANSCRIPT OF STATUS CONFERENCE
HELD BEFORE
THE HONORABLE JUDGE CAROL BAGLEY AMON
UNITED STATES DISTRICT JUDGE
_____

A P P E A R A N C E S

For the Plaintiff:          Sandra Pullman, Esq.
                            Nancy Trasande, Esq.
                            Jessica Attie, Esq.
                            Lourdes Rosado, Esq.
                            Assistant Attorneys General
                            State of New York
                            Office of the Attorney General
                            120 Broadway
                            New York, New York  10271
                            212-416-8234


For Defendant               Horatio G. Mihet, Esq.
Fitchett:                   Roger K. Gannam, Esq.
                            Liberty Counsel
                            1053 Maitland Center Commons Blvd.
                            Maitland, Florida  32751
                            407-875-1776


(Appearances continued on the next page.)


Court Reporter:       Annette M. Montalvo
                      Official Court Reporter, EDNY
                      Office: 718-804-2711

2

```
 1   Appearances:  (Continued)

 2   For Defendants          Martin A. Cannon, Esq.
     Griepp, R. George,      Cannon Law Offices
 3   Musco, R. Doe,          20374 Magnolia Road
     Okuonghae, Kaminsky,    Crescent, Iowa  51526
 4   B. George, S. Doe,      718-783-8200
     Ryan, and Joseph:            -and-
 5                           Stephen M. Crampton, Esq.
                             Crampton Legal Services, PLLC
 6                           PO Box 4506
                             Tupelo, Missouri  38803
 7                           662-255-9439

 8

 9   For Defendants          B. Tyler Brooks, Esq.
     Braxton and LaLande:    Kate Oliveri, Esq.
10                           Thomas More Law Center
                             24 Frank Lloyd Wright Drive
11                           Suite J 3200
                             PO Box 393
12                           Ann Arbor, Michigan  48106
                             734-827-2001
13

14
     For Movant Choices      Rena Andoh, Esq.
15   Women's Medical         Danielle Vrabie, Esq.
     Center and              Sheppard Mullin Richter & Hampton LLP
16   Merle Hoffman           30 Rockefeller Plaza
                             New York, New York  10112
17                           212-653-8700

18

19

20

21   Proceedings reported by machine shorthand, transcript produced
     by computer-aided transcription.
22   _____

23   Court Reporter:         Annette M. Montalvo, CSR, RDR, CRR
                             Official Court Reporter
24                           United States Courthouse, Room N375
                             225 Cadman Plaza East
25                           Brooklyn, New York  11201
                             718-804-2711
```

1          (WHEREUPON, commencing at 10:23 a.m., the following

2    proceedings were had in open court, to wit:)

3          THE LAW CLERK:  *New York against Griepp*, 17-cv-3706,

4    on for status conference.

5          THE COURT:  Parties please be seated, please.

6          Let me just take appearances.  For counsel for the

7    plaintiff.

8          MS. PULLMAN:  Your Honor, Sandra Pullman from the

9    New York State Attorney General's office for plaintiff.

10          THE COURT:  And the rest of the table is the New

11    York Attorney General's office as well?

12          MS. PULLMAN:  Yes, Your Honor.  This part, Your

13    Honor, yes.

14          MS. ANDOH:  Your Honor, we represent nonparty

15    Choices Medical Center.

16          THE COURT:  Okay.  Do you also represent its CEO?

17          MS. ANDOH:  Yes.

18          THE COURT:  Okay.  And, I'm sorry, at this side of

19    the table?

20          MS. ROSADO:  Yes, Your Honor.  Lourdes Rosado, also

21    from the New York State Attorney General's office, on behalf

22    of the plaintiff.

23          MS. ATTIE:  Jessica Attie from the New York Attorney

24    General's office for plaintiff.

25          MS. TRASANDE:  Nancy Trasande for the New York

4

```
 1    Attorney General's office.
 2                THE COURT:  Okay.  So the four here represent --
 3                MS. PULLMAN:  Yes.  Thank you, Your Honor.
 4                THE COURT:  All right.  Now, the motions, I think,
 5    that are at issue today, because I called this for the
 6    purposes of resolving some of the outstanding discovery, most
 7    of those motions have been made on behalf of Mr. Fitchett; is
 8    that correct?
 9                MR. MIHET:  Yes, Your Honor.
10                THE COURT:  And you are counsel for?
11                MR. MIHET:  Horatio Mihet on behalf of defendant
12    Fitchett, and my colleague Roger Gannam with me as well.
13                THE COURT:  Now, Ms. Oliveri, and is it Mr. Brooks?
14                MR. BROOKS:  Yes, Your Honor.
15                THE COURT:  Now, you also represent parties here who
16    the discovery motions are at issue, I think, Ms. Braxton and
17    Ms. LaLande; is that correct?
18                MS. OLIVERI:  Yes, Your Honor.
19                THE COURT:  And Mr. Cannon and Mr. Crampton, I don't
20    think you have anything at stake today.
21                MR. CANNON:  No, Judge.  Martin Cannon, appearing
22    here with Mr. Crampton on behalf of the ten Griepp defendants.
23    We don't have a pending motion.  Of course, we support the
24    others.
25                THE COURT:  Of course.
```

5

1          Now, there are a whole series of outstanding motions

2    to dismiss I believe that have been fully briefed as well.

3          I think to just make sure things keep moving here, I

4    am going to hear arguments on those motions on January 29, at

5    11:00 a.m., okay.  So everyone who has a motion to dismiss,

6    that's when those arguments will be heard.

7          All right.  There are a number of discovery motions

8    pending.  Let me just take up the most recently completed --

9    well, it is not actually completed.  There was a motion for a

10   protective order filed on behalf of Merle Hoffman in

11   connection with her deposition.  Just last night counsel

12   opposed that and also moved, I think, for contempt and

13   sanctions so we're not going to deal with the contempt and

14   sanctions.  Obviously, you haven't had a chance to answer

15   that.

16         But I don't -- reading the response, reading the

17   fact that she was a likely witness, listed that she filed a

18   declaration in support of the injunction here, I don't know

19   how you can say that she's not appropriately subject to a

20   subpoena to testify.

21         MS. ANDOH:  Your Honor, Rena Andoh on behalf of

22   Merle Hoffman.

23         So, Your Honor, I think that there are a few issues

24   that would --

25         THE COURT:  I don't want you to take up the

6

1    sanctions and all of that.

2            MS. ANDOH:  Sure.

3            THE COURT:  Hopefully, that -- we can deal with that

4    at a later time.

5            MS. ANDOH:  Understood, and thank you, Your Honor.

6    So I will just go straight to the meat of the issue with

7    respect to Ms. Hoffman.

8            So I guess a couple of points.  Part of this is that

9    we view the notice of subpoena to Ms. Hoffman as being

10   somewhat intertwined with our motion to quash the subpoena for

11   Choices.  Obviously, the first time that we found out what the

12   basis was that they were claiming for the reason of deposing

13   Ms. Hoffman was last night at 11:00 at night, and it's also a

14   little concerning to me that I am not even able to respond

15   because they have requested an in camera review of part of

16   that basis.

17           THE COURT:  Well, I mean, forget any of that.  You

18   know as a matter of public record that she was listed as a

19   potential witness, that she filed a declaration.  Why isn't

20   that enough to make her appropriately the subject of a

21   deposition?  I don't understand that.

22           MS. ANDOH:  So when you read the declaration, the

23   declaration is pretty clear that her understanding is with

24   respect to protestors generally outside.  And the

25   declaration --

7

1          THE COURT:  Why isn't that relevant?  Why isn't her

2   understanding of what's going on outside and what she's

3   observed since these -- as I take it, the defendants in this

4   action are the principal people who were outside.

5          MS. ANDOH:  Your Honor, she couldn't pick any of the

6   17 defendants out of a line-up.

7          THE COURT:  I don't think that's a basis.  So I am

8   going to deny the motion for protective order with respect to

9   that deposition.

10          Mr. Mihet, I hope you will take under consideration

11   your pursuing this motion for contempt.  I mean, I think what

12   she said was she didn't have any personal knowledge of these,

13   you know, individual defendants.  I don't think that we serve

14   the purposes of this litigation by pursuing that motion.

15          MR. MIHET:  I'll definitely consider Your Honor's

16   guidance on that.

17          THE COURT:  I think you should consider withdrawing

18   it.

19          MR. MIHET:  When I put the two declarations side by

20   side, one provides detailed specific observations about what

21   people said, where they stood, who they were talking to, and

22   all those details, and another declaration says "I know

23   nothing personally or nothing of value."  In my mind --

24          THE COURT:  Well, I think what she was saying, I

25   mean, a charitable reading of it was that she knew nothing

8

1    directly about who these individuals were, but I'd ask you

2    just to reconsider that.  I mean, in everybody's interest is

3    that we move this case along and get it resolved as soon as

4    possible.  And all of these side issues just don't help that.

5    I mean, it is not productive.  So let's not go there.

6              MR. MIHET:  Thank you, Your Honor.

7              THE COURT:  So I'd ask you to reconsider that --

8    those motions, and just -- so counsel doesn't have to respond

9    to them, if you don't want to pursue them, just let us know --

10   what is today?  Today is Wednesday.  Let them know by the end

11   of the day tomorrow whether you're pursuing those.  Okay?

12             MR. MIHET:  Certainly, Your Honor.

13             MS. ANDOH:  Your Honor?

14             THE COURT:  Yes.

15             MS. ANDOH:  One request.  Since Ms. Hoffman is now

16   going to be deposed, what we would ask is that she not be

17   ambushed with materials that -- in other words, the redacted

18   materials that they were seeking an in camera review of, to

19   the extent that they intend to use them at the deposition, we

20   would like to be able to see them ahead of time.

21             MR. MIHET:  Your Honor, that's exactly the point of

22   the motion they filed to cause us to disclose in advance our

23   attorney work product.  That would be extremely prejudicial.

24   We responded to discovery requests in this case.  We have

25   fulfilled our discovery obligations.  There's no authority for

9

1  the proposition that we must now provide things that we have

2  culled from the public record and elsewhere, based on which we

3  intend to question the witness.  We are entitled to the

4  witness' candid and fresh testimony at deposition.

5        THE COURT:  I take it this is material that would

6  constitute a best impeachment material?

7        MR. MIHET:  Yes, Your Honor.

8        THE COURT:  I don't think you are entitled to that.

9        MS. ANDOH:  Well, I mean, you know, to the extent --

10  obviously, to the extent that she's being deposed, I mean, I

11  don't know --

12        THE COURT:  I'm not looking at any -- I mean, I

13  haven't looked at any yet.

14        MS. ANDOH:  I mean, listen.  I am equally in the

15  dark as Your Honor as I -- you know, I don't know what exactly

16  it is that they are talking about, but it seems to me that if

17  it was relevant to this case, that it would have been produced

18  already.  And so I don't know -- I don't know that there is a

19  reason for her to be ambushed with materials that were

20  properly to be turned over to the New York Attorney General's

21  office.  Obviously, I have gotten a limited knowledge of the

22  discovery, but --

23        THE COURT:  I don't know whether they are or not.

24  Counsel says they're not.  If you -- counsel shouldn't be

25  using a document at the deposition that should have been

1  turned over before.  You know that.  But, you know, I can't --

2          MS. ANDOH:  The problem for me is, obviously, as a

3  nonparty, I am not necessarily going to know whether or not it

4  was properly turned over.

5          THE COURT:  Maybe you want to talk to the AG about

6  what documents they have that pertain to -- I mean, I think

7  you all have a joint confidentiality agreement or -- so

8  whatever documents the AG has in this regard that they

9  received --

10          MS. ANDOH:  We actually don't, but -- sorry.  Go

11  ahead.

12          MS. PULLMAN:  Your Honor, if I may, for plaintiff.

13          We haven't received any redacted documents.  Again,

14  this was filed after midnight last night so I still don't know

15  exactly what Mr. Mihet has attached.  But given that he's

16  asked for an in camera review to shield these documents from

17  the parties --

18          THE COURT:  I'm not looking at these documents.

19          MS. PULLMAN:  I think it is safe to say we have not

20  received any redacted documents nor any documents concerning

21  Merle Hoffman in discovery.

22          THE COURT:  Have you asked for them?

23          MS. PULLMAN:  We've asked for a number of -- all

24  responsive documents.  We have also asked repeatedly for

25  initial disclosures that they could identify to us what they

1  thought was relevant.  They provided those to us last night at

2  about 1:00 in the morning.  We have been asking for the last

3  month and a half for those -- for the initial disclosures.

4        THE COURT:  All I can say is that if documents are

5  presented -- you act at your peril, Counsel, if you use

6  documents that should have been turned over and weren't turned

7  over.

8        MR. MIHET:  Your Honor, I understand that.

9        THE COURT:  I hope you understand that.

10        MR. MIHET:  We have complied with our discovery

11  obligations.  A lot of the documents that we purported to

12  produce or we wish to produce to the Court was only to assist

13  the Court in determining that this deposition should go

14  forward.  Some of those documents are documents that they have

15  given to us.  The reason we wanted to produce them for in

16  camera is because we don't want to be forced to reveal our

17  work product and our deposition outline and questioning to

18  counsel in advance.

19        THE COURT:  Well, documents that aren't work

20  product --

21        MR. MIHET:  Suffice it to say, Your Honor, we've

22  provided --

23        THE COURT:  I mean, if it's documents they have, it

24  is certainly not a problem.  But, in any event, I don't think

25  that -- the situation, you have to think carefully.  You don't

1  want to use a document in the deposition of Ms. Hoffman that

2  should have been turned over and wasn't.  That's a problem.  I

3  don't know whether any documents like that exist.  But a

4  document, you know, your notes, how you intend to proceed in

5  the deposition, all of that is work product, but the documents

6  are not.  So if there are documents that should have been

7  turned over, you may want to review that.  And I just don't

8  want to hear in the middle of a deposition of Ms. Hoffman that

9  she's being confronted with the document that should have been

10  turned over.  So be very careful about that.

11          MR. MIHET:  We will, Your Honor.

12          THE COURT:  All right.  With regard to --

13          MR. MIHET:  One other thing.  Ms. Hoffman's

14  deposition was scheduled to take place today.  Obviously, it

15  cannot.  The only remaining deposition day available now is

16  this coming Monday, January 22.  I trust that counsel will

17  cooperate with us.

18          MS. ANDOH:  Your Honor, I am not in a position to

19  represent that Ms. Hoffman's available on the 22nd.

20  Obviously, we understand that this is being done on an

21  expedited basis.  We will do everything we can to make her

22  available as quickly as possible while still giving her an

23  opportunity to be properly prepared for deposition.  So we

24  will do everything we can.  If she's available on the 22nd, we

25  will put her forward.

13

1          THE COURT:  This is the kind of thing that

2     responsible counsel should be able to work out between

3     themselves without a lot of haranguing over what day

4     somebody's going to show up for a deposition.

5          You know, the temperature needs to be taken down on

6     this case, definitely.  You know, there's a lot of statements

7     and briefs that I think are sort of moving in the wrong

8     direction here, and, you know, I'm not going to tolerate a lot

9     of nonsense with counsel not agreeing or, you know, on things

10    or being obstreperous or not -- just tit for tat kind of

11    thing.  We are not going to engage in that.

12         This is a serious matter.  The plaintiffs have

13    serious concerns, and the defendants, of course, have very

14    serious concerns.  So this is a case that both sides need to

15    act very responsibly on, and I have confidence that you are

16    going to do that.  I understand the importance to this case to

17    both sides, and I understand as well that this case has a

18    certain emotional component.  But that's what we've got to --

19    and that emotional component I think exists on both sides.

20    And that's what we've got to take out of this case and just

21    work towards getting the case resolved.

22         You know, ultimately, it comes down to a matter of,

23    you know, as far as I'm concerned, the burden of proof, who

24    has the burden of proof, what they have shown, what they

25    haven't shown, what the law says about what is permitted, what

14

1    the First Amendment requires.

2            So, you know, I just want the parties to try and

3    both put out of their heads some of the, you know -- I am not

4    suggesting it is not genuinely felt emotional reaction to this

5    case, but those kind of emotions do not have a part to play in

6    how we resolve discovery motions or any other matters in this

7    case.  So, you know, let me just say that to proceed.

8            With respect to another issue which is the

9    deposition of the Attorney General, I am not inclined at this

10   stage of the litigation without knowing what the nature of

11   defenses are, what the nature of counterclaims are, at this

12   point, to resolve the issue about whether the Attorney General

13   of New York needs to be deposed.  So I am not going to order

14   his deposition at this point in time.

15           If the motion to dismiss is not granted and defenses

16   are filed and counterclaims are filed and somehow defendants

17   want to persuade me that the Attorney General may have

18   something to say about that, well, we can take that up at a

19   later time.  But at this point in the litigation, I am not

20   going to order the deposition of the Attorney General of the

21   United States.

22           Now we come to Choices' motion to quash the nonparty

23   subpoena.  And let me just get the request here.

24           Choices makes the statement here that they have

25   turned over anything relevant to these inquiries to the

1    Attorney General, and that the Attorney General has been

2    requested to produce this information and that, therefore, the

3    documents are somewhere in those 4,000 documents that were

4    turned over by the Attorney General.  I confess to be somewhat

5    confused by this.  The, quote, 4,000 documents that the

6    Attorney General provided, were they in response to a subpoena

7    from the defendants?  I mean, those documents were not turned

8    over in response to the 30 -- well, I guess there's the

9    30(b)(6) or a document request, or were they?  What were those

10   documents turned over in response to?

11            MS. PULLMAN:  Your Honor, those were turned over in

12   response to document requests.  We provided the entire

13   investigative file that we had in this matter.  Every document

14   we received from Choices, every document we received from

15   Volunteer Escorts, coordinated by NOW New York City, who work

16   outside the clinic on Saturday morning, every video clip that

17   Choices ever gave to us we turned over as well as, of course,

18   all of our video from the OAG's camera and any documents

19   collected in our investigation.

20            THE COURT:  Okay.  So --

21            MR. MIHET:  May I be heard?

22            THE COURT:  Wait a minute.  So just taking up

23   request number 7 on the document subpoena to Choices, all

24   video, audio, photographs, digital or other recordings of the

25   defendant Scott Fitchett.

16

1          Was that requested of Choices, and did Choices turn

2    that over to you?  I'm just asking, Ms. Pullman.

3          MS. PULLMAN:  Yes.  We received all video that

4    Choices retained.

5          THE COURT:  For what period of time?

6          MS. PULLMAN:  Their retention policy wasn't

7    absolute, it wasn't a hundred percent video retained, compared

8    to our camera, which was up for a full year, and defendants

9    got every second of recording of that camera.

10         It is our understanding that Choices pulled security

11   footage when there was an incident that they thought

12   constituted a violation of law, and every one of those they

13   turned over to us, and we turned over in turn to defendants,

14   as well as every document that they retained --

15         THE COURT:  So you turned over all of your footage?

16         MS. PULLMAN:  Yes.

17         THE COURT:  And Choices -- well, let me ask counsel

18   for Choices.  What video -- I mean, you could respond to this

19   by saying -- I mean, your basic point was I am not answering

20   any of this.  Why couldn't you have responded to some of this?

21         MS. ANDOH:  Well, we told them --

22         THE COURT:  But that's a not formal response to a

23   document request.

24         MS. ANDOH:  Well, I mean, I think our point was that

25   it is all a hundred percent duplicative, which is exactly --

17

1        THE COURT:  Well, I don't know whether it is or not.

2  How does counsel know whether it is or not, unless you

3  specifically say in response to each one?

4        MS. ANDOH:  So we offered to give them the

5  equivalent of a Rule 34 certification saying exactly that.

6  They didn't want that.

7        MR. MIHET:  Your Honor, that's --

8        THE COURT:  Wait a minute.  Let me just take the

9  easiest one.  All audio, video, or recordings of defendant

10  Scott Fitchett.

11        MS. ANDOH:  To the extent that it was retained and

12  was in the possession of Choices at the time that the Attorney

13  General made the request, it was turned over to the Attorney

14  General.

15        So, basically, what happened was --

16        THE COURT:  Do you have any other video or

17  recordings of the defendant Scott Fitchett that was not turned

18  over to the Attorney General?

19        MS. ANDOH:  Not to the knowledge of Choices, after a

20  good faith diligence.

21        THE COURT:  All right.  So you could respond to

22  that.  You can respond to that request in that way, okay.

23        MS. ANDOH:  Okay.

24        MR. MIHET:  Your Honor, this is why we're here

25  because --

18

1          THE COURT:  I know, this is like the dentist.

2          MR. MIHET:  -- until now they refused to provide us

3    that certification.  The only thing they offered has been

4    we'll provide a witness to authenticate documents.  We simply

5    want --

6          THE COURT:  Well, it's because I think sometimes,

7    Counsel, you are talking past each other.  And this is the

8    problem with this.  I feel like a first grade teacher, but if

9    that's what it is going to take to get this case resolved,

10   I'll do it.

11         Counsel has said in response to -- and you will say

12   this in writing, I take it.

13         MS. ANDOH:  Understood.

14         THE COURT:  Respond to this in writing, okay, to the

15   document request.

16         Let's just -- all documents constituting recording,

17   memorialized or concerning any communication between you and

18   any named defendant.  Did you have documents that were

19   responsive to that?

20         MS. ANDOH:  I don't believe we did, as a matter of

21   fact, Your Honor.  I don't think that there was any --

22         THE COURT:  Well, can you say that?

23         MS. ANDOH:  -- correspondence.

24         THE COURT:  That we don't have any documents

25   responsive?

1          MS. ANDOH:  I mean, I can.  Once again, the point

2    that we -- the point that we were trying to communicate and

3    did not seem to register was that all -- to the extent that

4    there was anything that was responsive to any of these

5    document demands, it has been turned over to the Attorney

6    General, and the Attorney General then proceeded to produce it

7    in response to document requests so --

8          THE COURT:  But that's kind of a -- you know, the

9    problem with that is that's a very general statement, and it

10   is like, well, the AG must have it, if we had it.  But counsel

11   doesn't even know whether you had it or not.  I think it is

12   important to respond to each of these inquiries.  If you want

13   to respond, we had material -- every single document we had we

14   turned over in response.  In other words, I think you have to

15   respond to each one of these so we know what the position is,

16   and then the AG can indicate whether they, in fact, if the

17   answer is we turned it over to the AG, the AG in turn can

18   answer whether we turned it over to them.  And then we at

19   least -- I don't know that the AG doesn't have to go through

20   and point out every single document that's responsive to this,

21   but we do need some statement, not a broad statement, you

22   know, look guys, AG's got it, you find it.  You know, this is

23   why -- I understand why there's a little bit of a problem with

24   this.

25         MS. ANDOH:  Okay.  Understood, Your Honor, we will

20

1  provide objections and responses to the seven document

2  demands.

3          THE COURT:  But say which ones, you know, that we

4  did have documents responsive to this.

5          How many documents did you turn over to the AG?

6          MS. ANDOH:  That's a good question.  I actually

7  don't know the answer off the top of my head.  Ms. Pullman

8  might know better than me.

9          MS. PULLMAN:  And I don't know that I can give you a

10 number, but I am picturing a tremendous banker's box full of

11 an entire file cabinet that contained documents in which staff

12 and Volunteer Escorts wrote down their observations of

13 defendant's activities.

14         THE COURT:  Did everything in the box that Choices

15 gave you, did you turn over to defendant?

16         MS. PULLMAN:  Yes, Your Honor.

17         THE COURT:  Every single shred of paper?

18         MS. PULLMAN:  Every last piece that they gave us.

19 We didn't assert privilege over anything that wasn't -- they

20 gave it to us, we gave it to defendants.

21         THE COURT:  So then you respond to this document

22 request, and this is what you say.  You say, everything

23 responsive to this request was turned over to the AG, if

24 that's correct, or if you have other -- you know, it may be

25 that you might have some other document responsive to this

21

1    request that wasn't turned over to the AG when you read and

2    analyze it, but I think you have the responsibility to go

3    through each one of these and answer it.

4           Also, to the extent that you make relevance

5    objections to four and five, Counsel, what's the relevance of

6    contact with the media?

7           MR. MIHET:  Your Honor, those statements are either

8    admissible or likely to lead to admissible evidence in this

9    case.  As we have already seen, statements made to the media

10   by the Attorney General and by Ms. Hoffman go to the very

11   nature of our defense in this lawsuit, which is that it was

12   brought for an improper purpose, to stifle our client's First

13   Amendment rights.  So when we have, for example, Choices' CEO

14   telling the media that our client is the equivalent of the

15   American Taliban, we think that's directly relevant, and if

16   there are other statements like that, we believe that we are

17   required to know.  Whether they are admissible themselves or

18   not is a matter for another time, but, clearly, they can go to

19   bias, they can go to credibility, to impeachment, and to our

20   counterclaims and defenses.

21          MS. ANDOH:  Your Honor, if I may.  I am not aware --

22   first of all, I'm not aware of my client ever making a

23   statement like that.  But beyond that, I just -- to the extent

24   that there's a statement that's actually in the media, it is

25   in the public domain.  I mean, we have no more control over

22

1    what has been published than anybody else.

2            THE COURT:  No, I think it is asking for your

3    documents.  It is not asking you to go research -- to Google

4    yourself.

5            MS. ANDOH:  I understand that.  But I think there's

6    also a point here which is we are not -- I know that -- this

7    may seem like splitting hairs, but if you will go with me for

8    about 30 seconds, I promise it is not.  We're not a party to

9    this litigation.  We're not.  And I think one of the problems,

10   and it is -- maybe the fact we are sitting at the same table

11   as the Attorney General is adding to this.  But in no way,

12   shape, or form is Choices a party to this litigation.

13           Choices is not the victim that the Attorney General

14   is suing on behalf of.  And so this issue of well, you know,

15   what Merle Hoffman said to the media goes to the heart of

16   their defense, to me, that's nonsensical because --

17           THE COURT:  Well, it's Choices' patients that

18   they're suing on behalf of, right?

19           MS. ANDOH:  That's right.  It is people who have

20   been --

21           THE COURT:  And they're --

22           MR. ANDOH:  -- inconvenienced, assaulted, whatever,

23   in front of the clinic.

24           THE COURT:  And then Choices' employees, the

25   escorts.

1          MS. ANDOH:  Volunteers.  The escorts are volunteers.

2    But, yes.  I mean, the answer is that, you know, there needs

3    to be an actual understanding of the separation between the

4    case that's happening here and Choices and Ms. Hoffman, and it

5    seems as though these requests really try to conflate the New

6    York Attorney General with Choices and Ms. Hoffman, and we

7    object to that because, in fact, we have no control over this

8    case whatsoever.  We really are a true nonparty in this.

9          THE COURT:  No control?  I mean, you supplied the

10   information to the AG that --

11         MS. ANDOH:  But we have no control over the course

12   of this litigation.  We didn't make -- we are not the ones who

13   made the decision to bring the action, we're not the ones who

14   are prosecuting it.  We turned over material, and now --

15         THE COURT:  But I don't think that there's anything

16   overly -- I mean, you are a nonparty.  I think you stand in a

17   little bit different shoes than the average nonparty.

18         MS. ANDOH:  Sure.  But Ms. Hoffman's opinion about

19   the defendants has absolutely nothing to do with this case.

20         MR. MIHET:  It does, Your Honor, when it is

21   Ms. Hoffman in documents in treating the Attorney General to

22   bring this lawsuit for an improper purpose.  It has everything

23   to do with our counterclaims and our defenses.

24         THE COURT:  Well, you don't have counterclaims and

25   defenses yet.  I don't know what they are.

24

1    But it is not clear to me that -- I don't think that

2    I can say that statements -- that contacts with the media

3    would be completely irrelevant, and there's a broad relevance

4    standard.  So I'm going to direct you to respond to four and

5    five.

6    Six, I take it, is actually getting at complaints

7    from patients, among other things?

8    MR. MIHET:  Yes, Your Honor.  Complaints from

9    patients.  Also, to the extent that escorts or other employees

10   filed reports, updates, summaries that reflect on activity

11   outside of Choices, it goes to all of that critical

12   document --

13   THE COURT:  Again, this may be material that you

14   have gotten from --

15   MR. MIHET:  It may be, and if we simply have

16   certification that they produced all responsive documents to

17   the Attorney General, that's all we're seeking, Your Honor.

18   We're not seeking to make them reproduce 4,000 pages of

19   documents.

20   THE COURT:  I think you were in the beginning.

21   MS. ANDOH:  Yes.

22   MR. MIHET:  Not at all, Your Honor.  We made it

23   clear, and I can show you e-mails.  We made it very clear.

24   THE COURT:  Let's not go over old ground.  New

25   ground is tough enough.

25

1            MR. MIHET:  Thank you, Your Honor.

2            THE COURT:  All right.  So that's taken care of the

3     subpoena.

4            Now we have the 30(b)(6).

5            MR. MIHET:  For Choices or AG?

6            THE COURT:  I am talking about Choices.

7            MR. MIHET:  Okay.

8            THE COURT:  Why can't -- you know, you could have a

9     30(b) -- looking at this, a lot of this seems more

10    appropriately the subject of interrogatories or maybe further

11    document production.  I do have a concern about -- and I know

12    that interrogatories technically aren't for parties, but I can

13    do what I want.  It is called discretion.  There's some

14    support for this.

15           So I'm thinking of a way that we don't have Choices

16    having -- looking through things, trying to memorize stuff.

17    Why don't we do this in forms of interrogatories, and to the

18    extent that Choices doesn't have any information that they

19    don't know the answers to these questions, they can say "I

20    don't know the answers to the question."  But at least you

21    have an answer.  So, you know, I would think -- and then after

22    you get this production, there can be a 30(b)(6) document, you

23    know, witness who can, you know, perhaps if you have questions

24    about the search or something like that, you can ask those

25    kinds of questions.

26

1           But I don't know that the answer is that we don't

2   respond, and, you know, the response could well be "We don't

3   have this information."

4           MS. ANDOH:  Your Honor, obviously, we moved in the

5   alternative to modify.  This is not -- you know, I mean, we

6   had actually at one point I think suggested to Your Honor the

7   possibility of having some form of interrogatories.

8           THE COURT:  The interrogatory.

9           MS. ANDOH:  The only concern that I have, and, once

10  again, I am going to have to defer to the Attorney General on

11  this to some extent, because I don't know the full sort of

12  backstory behind this, but I would think that there would be

13  issues of us turning over the identities of witnesses to the

14  extent that they're patients of ours.

15          THE COURT:  Don't you have a protective order?

16          MR. MIHET:  We do, Your Honor.

17          THE COURT:  Doesn't the protective order -- I mean,

18  if witnesses are witnesses.  They can't keep their -- this is

19  a lawsuit.  They can't keep their identities -- I mean, I

20  understand the sensitivity about patients.

21          MS. ANDOH:  Right.

22          THE COURT:  But can't -- I thought that had been

23  dealt with by a protective order.

24          MS. ANDOH:  I am going to defer to Ms. Pullman on

25  this.

1          THE COURT:  Okay.

2          MS. PULLMAN:  It has, Your Honor.  We've initially

3  provided redacted documents to opposing counsel, while we were

4  waiting for a protective order.  We've since unredacted the

5  names of all witnesses.  We have maintained redactions for

6  patients exactly because as Your Honor noted, there's

7  sensitivity there.  And defendants have yet to object to that

8  so I think our understanding is that they are all in agreement

9  that patient names --

10          THE COURT:  All right.  So that would apply to your

11  responses as well.

12          MS. ANDOH:  Okay.

13          THE COURT:  The protective order applies, you know,

14  or should be understood to apply.

15          MS. ANDOH:  Right.  We will sign onto the protective

16  order and comply with it.

17          THE COURT:  Oh, okay.  You hadn't signed on?

18          MS. ANDOH:  Not yet.  No, we had not, Your Honor.

19          MR. MIHET:  Your Honor, one concern I have with

20  respect to interrogatories, and we're happy to give that route

21  a shot, this case is set for trial January 12 -- I'm sorry,

22  February 12.

23          THE COURT:  We missed it.  Where were we all?

24          (Laughter.)

25          MR. MIHET:  It is now January 17.  If Choices takes

28

1    30 --

2            THE COURT:  What date is the trial?

3            MR. MIHET:  -- 30 days to provide responses and

4    objection, it could be that we'll get this information after

5    the trial, when it will be of no use to us.  So I think part

6    of our discussion today will have to focus on the trial date

7    and where we are with respect to that, but I think we also --

8            THE COURT:  Everyone's nodding.  Let me guess.  You

9    all want to put the trial date off?

10           MS. PULLMAN:  No, Your Honor.

11           MS. ANDOH:  No, Your Honor.

12           MS. PULLMAN:  In fact, we have a number of issues to

13   raise regarding scheduling.

14           MS. ANDOH:  And, Your Honor, we can commit to -- I

15   mean, assuming that we assume that these questions as posed

16   have been converted into interrogatories, we can get them

17   responses a week, ten days.  You know, obviously, we are not

18   trying to impede the progress of this case in any way.  We

19   briefed both of these issues as quickly as we possibly could.

20   We are certainly not trying to be obstructive in terms of

21   keeping the trial date on.

22           THE COURT:  You know, so I would direct that you

23   respond to all of them, including the law enforcement

24   question.

25           MS. ANDOH:  Understood.

1          MR. MIHET:  And are you providing a suggested date

2     for the response?

3          THE COURT:  When can you respond?

4          MS. ANDOH:  How about a week from Friday?  That's

5     still pretty quick.

6          THE COURT:  Okay.  That's fine.

7          MS. ANDOH:  And, obviously, we will discuss with

8     Mr. Mihet when we can put Ms. Hoffman up, but the goal would

9     be to have Ms. Hoffman be deposed in the next two weeks, at

10    the outside, and hopefully sooner than that.

11         THE COURT:  Okay.

12         MS. ANDOH:  Obviously, we just need to find out what

13    her schedule is.  I also need to coordinate apparently with

14    the New York Attorney General's office getting whatever

15    documentation might be relevant to her deposition so she's not

16    being ambushed and we have a chance to prepare her properly.

17         THE COURT:  Sure.  Okay.  So we're set there.

18         Let's turn, I think, the last thing that we have is

19    the AG wants to strike 30(b)(6).

20         MS. PULLMAN:  Yes.

21         THE COURT:  Let me get to that.  Why can't we handle

22    these the same way, just have them answered by

23    interrogatories?  There are some, though, that request clearly

24    legal material that I think has been objected, appropriately

25    withdrawn.  Correct, Counsel?

30

1          MR. GANNAM:  That's correct, Your Honor.  Roger

2    Gannam for defendant Fitchett on this issue.

3          The primary topics that the Attorney General objects

4    to seek factual information about the allegations in the

5    complaint.  We've served interrogatories that seek essentially

6    the same information.  And in response we were told initially,

7    "We think that's too burdensome, but check out these 16

8    dates."  And then the position further evolved, "Well, we'll

9    provide you some additional narrowing to these five or six

10   dates, but we're not going to tell you that that's everything,

11   and we are still looking at our own production."

12         If the state would simply answer our

13   interrogatories --

14         THE COURT:  Then you don't need this?

15         MR. GANNAM:  Then we probably would not need the

16   30(b)(6) as to those topics.  That is, seeking the factual

17   information behind the allegation.  Mr. Fitchett just wants to

18   know why he's being sued.  And if he can know that it is

19   because you followed on January 1 at 2:00 p.m., and you harass

20   on February 1 at 3:00 p.m., then we would be satisfied.  But

21   as we sit here today, all we have been given is all of the

22   documents, all of the video --

23         THE COURT:  All right.  Can you respond to that?

24         MS. PULLMAN:  Yes, Your Honor.  Thank you.

25         We have provided Mr. Fitchett's counsel with all of

1    the material in our possession as we have identified his --

2    that we have identified include his client and -- document his

3    client's violation of law.

4          We've identified the videos in which we think he's

5    captured violating federal, state, local laws.  We've provided

6    documents that either name him or don't, but we have

7    identified where those documents came from, who provided them.

8    Again, you know, we've --

9          THE COURT:  Have you given him the dates that you

10   are going to rely on at the hearing?

11         MS. PULLMAN:  We have.

12         THE COURT:  Have you given him all the dates?

13         MS. PULLMAN:  We have.  And the only, I think what

14   Mr. Fitchett's counsel is referring to, is that we have not

15   committed to saying that everything that we've created as

16   attorneys and documented, here are the videos that we have,

17   here are the documents that we note contain reference to

18   Mr. Fitchett, we can't commit that an eyewitness isn't going

19   to say, "I saw Mr. Fitchett on numerous occasions, I can't say

20   what date."  That's the only caveat we've ever given.

21   Frankly, to give him any more information would actually

22   require us to do additional attorney work product to create a

23   document, to itemize where he appears and on what dates and

24   what witnesses might recall him -- I mean, we have given him

25   every last bit of information that we have in our possession

1  about where his client appears in the discovery we produced.

2  And we don't have any more discovery to produce.

3           THE COURT:  Have you provided him with the name of

4  witnesses who were going to identify him?

5           MS. PULLMAN:  We have, Your Honor, and they've

6  noticed all of the depositions, and they've taken most of the

7  depositions so far.

8           MR. GANNAM:  Your Honor, if I may, as Choices

9  counsel just said, and we would agree, Choices and its

10  witnesses did not decide which conduct by Fitchett is the

11  basis of the Attorney General's lawsuit.  That's what we need

12  to know.  And for the Attorney General to say we've provided

13  or pointed out what video Mr. Fitchett is in or what documents

14  he's in, that doesn't really answer the question.  In some of

15  those dates that they pointed us to, Mr. Fitchett doesn't do

16  anything that we can view as illegal.  We don't know if it is

17  the state's position that if he was doing something illegal on

18  that date or not.  We simply want to know, to the point that

19  we won't then get to trial and have a witness say something

20  that the Attorney General wasn't relying on, and say, "Okay,

21  we are going to rely on that one, too, now that's part of our

22  claim," we don't think that would be proper.

23           We just want to know why he's being sued so that we

24  can develop our defense accordingly.  And to simply say, "We

25  have told you what documents he's in or what video he's in,"

1    doesn't really answer that question.

2          THE COURT:  Well, they've also told you the names of

3    every witness they are going to rely on, and you can depose

4    those witnesses, right?

5          MR. GANNAM:  Well, we can only -- we have taken the

6    deposition of three out of the four escorts that we have

7    planned to depose.  We believe we may have -- that may be all

8    of the witnesses the state is going to rely on as to

9    Mr. Fitchett.  But we don't know what dates or times within

10   that witness' knowledge, supposedly, we should be asking for.

11   As a result, we have to ask each of those witnesses about

12   every day that they may have been out there the same time as

13   Mr. Fitchett, and that's consuming valuable time.  We simply

14   want to know, tell us the conduct that he's done that this

15   lawsuit is based on, and then we can decide what to ask the

16   witnesses about that conduct.

17         MS. PULLMAN:  Your Honor, I hear Mr. Gannam saying

18   it is burdensome for him to ask eyewitnesses about every time

19   they saw his client outside of Choices.  They've already done

20   that.  And it's my understanding that that's part of

21   discovery.  "What did you see my client do and when," and to

22   nail them down to what their version of the events are.

23         The other objection I hear him to be making is that

24   we've identified the videos in which we think his client is

25   either blocking someone, harassing them, shoving them, doing

34

1  whatever constitutes all the allegations that we've identified

2  in our complaint, and his only response is, he doesn't see

3  that that constitutes violation of law.  That's his defense,

4  and, again, I believe that it is genuinely held, that belief

5  that his client hasn't violated the law.  But that doesn't

6  mean we haven't met discovery obligations.

7              THE COURT:  All right.  So is it correct that you

8  are relying on the conduct of Mr. Fitchett, as shown in the

9  videos, all of which you have turned over to the defendant?

10             MS. PULLMAN:  Yes, Your Honor.

11             THE COURT:  And that you were relying on the

12  testimony of witnesses -- I take it these videos have dates

13  and times?

14             MS. PULLMAN:  They do, Your Honor.

15             THE COURT:  And you are relying on the testimony of

16  a series of witnesses who can identify Mr. Fitchett, and I

17  take it they put some approximate date on which these things

18  happened?

19             MS. ANDOH:  Yes.  I mean, it is over -- Mr. Fitchett

20  has been showing up to protest outside this facility for

21  years, so often the --

22             THE COURT:  What period -- just so I'm clear, what

23  period of time does the lawsuit cover?

24             MS. PULLMAN:  It's about 2012 to the present.  As

25  soon as the clinic opened, the protestors showed up.

35

1          MR. GANNAM:  Your Honor, if I may --

2          THE COURT:  So the videos that you have, what period

3    of time do they cover?

4          MS. PULLMAN:  About a year.  We began investigating

5    defendant's activities in I think the summer of 2016 and put

6    up --

7          THE COURT:  So those are your videos?

8          MS. PULLMAN:  Yes, Your Honor.

9          THE COURT:  The Choices videos, do they show, do you

10   rely on conduct of Mr. Fitchett in the Choices videos?

11         MS. PULLMAN:  I don't believe so.  He's one of 13

12   defendants.  He does appear in some of their videos, but these

13   are clips --

14         THE COURT:  Are you relying on those videos as

15   proving the type of conduct that you've alleged?

16         MS. PULLMAN:  Yes, Your Honor.  And when we were

17   going into the preliminary injunction hearing, we had

18   identified all of these video clips as exhibits, and we have

19   since referred defendants to which exhibit corresponds to

20   allegations against their client.

21         THE COURT:  You have?

22         MS. PULLMAN:  We have.

23         MR. GANNAM:  Your Honor, if I could just -- the last

24   communication from the Attorney General narrowing the focus of

25   allegations or evidence against our client, they said

1  expressly, these exhibits are not exhaustive of the

2  plaintiff's case in chief to be presented at trial.  It also

3  says the OAG is still in the process of identifying material

4  from its own production to the defendant.

5        If the state would say "We are relying on this

6  universe of items as to your client Mr. Fitchett and nothing

7  else," then our question would be answered.  But if they are

8  saying, "We are relying on this stuff, but there might be more

9  that we're not able -- either willing or able to tell you

10  about that" --

11        THE COURT:  When can you give them the definitive

12  statement that they are looking for, that "This is what we're

13  relying on and we're not relying on anything else," so they

14  know what to look at to prepare?  I mean, you still say you

15  are still looking at stuff.  You know, that's a problem for

16  defendants.

17        MS. PULLMAN:  Sure.  I think that message was sent

18  in abundance of caution, because there are eyewitness

19  testimony -- I mean, there are statements that are made by

20  witnesses that may not be captured by identifying specific

21  videos.  It is not our intent to --

22        THE COURT:  Have you turned over the statements, or

23  the --

24        MS. PULLMAN:  I'm sorry, witness testimony, who have

25  been deposed.  This is our entire case.  I mean, we have -- we

1    are -- this is another issue we want to raise with Your Honor.

2    We will have a deadline to identify exhibits at trial, we will

3    comply with that, we are not seeking to show up at trial with

4    an exhibit we haven't identified.  But if Your Honor wants, we

5    can take a look at the exhibits we have to date and issue

6    definitive statements that there are no other videos in which

7    Scott Fitchett appears that we will be turning over later.

8            THE COURT:  And no other witnesses that you are

9    relying on.

10          MS. PULLMAN:  Certainly no other witnesses.

11          THE COURT:  Other than the ones who have been told.

12          And the same is true with your client.  Your

13    client --

14          MS. OLIVERI:  Yes.  Part of the problem we're

15    having, he wants to know here, is on what date the alleged

16    violations of law happened on.  And these questions aren't

17    being resolved in depositions because it happens all the time.

18    We are not getting --

19          THE COURT:  Well, maybe they don't know.  If they

20    don't know, I mean, then you've got that broad allegation, and

21    then you make an argument to the Court that that's not the

22    kind of testimony you can rely on.  But they can't make up

23    dates if they don't know them.  You don't want them to make up

24    stuff.

25          MS. OLIVERI:  Right.  But that's why having the

38

1  deposition, the 30(b)(6) deposition of the Attorney General,

2  is so important, so we know what --

3          THE COURT:  But that's not going to answer the

4  question.

5          MS. OLIVERI:  It will answer the questions as to

6  what dates and times they allege violations of law occurred,

7  and if on October 31, 2015 was the alleged --

8          THE COURT:  But I thought they had done that in

9  terms of responding to interrogatories.  Counsel basically

10 says, "We've got that, we just want them to say that's it."

11         MR. GANNAM:  No, Your Honor.  What they provided is,

12 at first they said look at these 16 dates.  They didn't say

13 that was the only conduct by Mr. Fitchett.  And then they

14 followed that up after further discussion and said, look at --

15 it is about five or six dates, and these are exhibits, these

16 are video and exhibits that we are going to rely on, but it is

17 not exhaustive of our case in chief against your client.

18 There may be more.

19         What we want to avoid is the situation where we've

20 deposed the witnesses they have identified, we know what those

21 witnesses know and don't know, and then get to trial and have

22 a witness that says, "Oh, I just remembered something," or,

23 "Now I know something I didn't know before," and the state

24 say, "Yeah, we are going to rely on that, too."

25         THE COURT:  Well, that won't happen.  It will be

1   excluded.  If the witness hadn't testified about it before,

2   I'll just exclude it.  I think that gives you everything that

3   you need.  But you need a statement from the AG that that's

4   what we're relying on and they are willing to give that.

5           Can you provide that statement a week from Friday?

6   That gives you time to look through everything you need to

7   look through?

8           MS. PULLMAN:  Yes, Your Honor.

9           THE COURT:  Okay.  I think that takes care of it.

10          MR. GANNAM:  Thank you, Your Honor.

11          THE COURT:  All right.  I think we've resolved the

12  motions outstanding before the Court, and now you have --

13  Ms. Pullman, you have some other things.

14          MS. PULLMAN:  Unfortunately, I do, and I think this

15  goes to Your Honor's concern, the parties haven't been able to

16  work together amicably.  I still feel that --

17          MR. GANNAM:  Before we go -- I'm sorry, Your Honor.

18  There were a few topics in the 30(b)(6) that were not objected

19  to.  Are we able to move forward with that portion of the

20  30(b)(6) deposition?

21          THE COURT:  Yes.  Anything that wasn't objected to,

22  you can go forward with.

23          MS. PULLMAN:  That's scheduled for Friday morning.

24          THE COURT:  Okay.

25          MS. PULLMAN:  So, Your Honor, this is about

40

1   scheduling, and I apologize, but we have not only been unable

2   to reach an agreement with defendants on some of these

3   scheduling dates, we have been unable to obtain their position

4   on them.  And I just want to walk through --

5           THE COURT:  Scheduling for what?

6           MS. PULLMAN:  So pretrial deadlines, and, also,

7   which includes, you know, a conclusion of depositions, the

8   number of depositions, when we're going to submit the pretrial

9   orders to each other, to the Court.  I mean, I think that this

10  has to conclude at some point.

11          THE COURT:  Excuse me.

12          (Short pause.)

13          THE COURT:  Okay.  So the hearing is now scheduled

14  for February 12.  All right.  So you need to work out these

15  deadlines dates.  You haven't been able to do it with counsel.

16          MS. PULLMAN:  So it is deadlines for pretrial

17  submissions, date for the close of fact discovery and an

18  end -- a cap on the number of depositions.

19          And just to be clear, parties were working

20  collaboratively to try to schedule the amount of discovery we

21  thought we could in the time available, up until our last

22  appearance in front of you, and defendants represented that --

23          THE COURT:  You are not saying it was me, are you?

24          (Laughter.)

25          MS. PULLMAN:  Defendants represented, and I think

41

1   this is December 6, or early December, that they needed an

2   emergency stay of the trial that was then set to be on held on

3   the week of January 8, and they represented that the only

4   reason they needed that extension was that there were three

5   terabytes of video, because they requested all video from our

6   camera, we turned it over, and a number of documents.

7           We initially opposed any extension, but when they

8   said it is purely due to this enormous volume of discovery, we

9   said, we don't want to ambush you, and, reluctantly, we won't

10  oppose it, and Your Honor set us for trial on February 12.

11          At the point that we were in front of Your Honor in

12  early December, we had agreed plaintiff would take the

13  depositions of four defendants, they've indicated all 13 plan

14  to testify, but we said we only have a limited amount of time,

15  we will stick to four defendants, and they noticed the

16  deposition of all of the four escorts who we plan to put on,

17  which made sense.  They were the fact -- they were the

18  eyewitnesses to defendant's conduct.

19          You know, there was also the issue of notice of

20  30(b)(6), we have been meeting and conferring about that at

21  length, and we have a resolution on that, the issue of the

22  Choices is 30(b)(6).  And then we have the hearing in front of

23  Your Honor about the scheduling dates.  And they say, "We need

24  an extension because of the volume of discovery."

25          That was December, I think, 7.  You know, there was

42

1    hearing -- the magistrate, they moved to disqualify the

2    magistrate.  We did not respond, and we sent them -- you know,

3    they moved on the 19th, we opposed but didn't respond

4    otherwise.  And on December 20 we sent a letter trying to

5    proceed with discovery and said, "Here's what we understand.

6    We have four defendants that need to be deposed, you have four

7    escorts you want to depose, there's also the OAG 30(b)(6),

8    which we've also said would go forward on the nondisputed

9    topics, and here are some dates.  And, by the way, we need to

10   do these because here are pretrial submissions that we think

11   need to happen.  Can we propose these dates to you so we can

12   jointly send them to the Court and submit them as a proposed

13   order?"

14            They worked with us, you know, they set dates for

15   the four escorts, the four defendants.  Never responded to the

16   pretrial deadlines.  We assumed it was just an oversight.  And

17   then immediately after that, in late December, early January,

18   they started adding deposition after deposition after

19   deposition.  They expressed their intention to depose Merle

20   Hoffman, they expressed their intention to depose Attorney

21   General Eric Schneiderman.  And then on January 4, they sent

22   us an e-mail indicating they want to depose six more

23   witnesses, bringing their total to 13, beyond even -- putting

24   aside what we can do on an expedited schedule, beyond what

25   even federal rules permit, and all of these six witnesses were

43

1  declarants to our original preliminary injunction motion.

2  These are not new eyewitnesses, fact witness who are

3  identified --

4          THE COURT:  Are they testifying at your trial?

5          MS. PULLMAN:  Several of them are not.  And so we

6  conveyed to them several of them are not.  I think three of

7  them are.  But we also said, if you want to take even those

8  three, well, then, there we identified three defendants who we

9  would also like to depose.  If you want to take those three,

10  then we will take the deposition of Ronald George and Patricia

11  Musco and Ranville Thomas.

12          And, you know, but we also said, what do you think

13  about the pretrial deadlines?  How can we possibly get these

14  depositions done?  And, to date, they have all taken close to

15  seven hours.  As you can imagine, they've been fairly

16  contentious.  There are strong feelings on both sides, and no

17  one -- even though ones that were anticipated to take a half

18  day, took nearly seven hours.

19          So we said, "You all want three more witnesses, we

20  need -- we want three" --

21          THE COURT:  On the tit for tat theory?

22          MS. PULLMAN:  No, Your Honor, purely, we would

23  depose all 13 defendants who all intend to testify.  I mean,

24  they're parties who will be testifying, and the only reason we

25  are holding back is that we intend to go to trial on February

44

1   12.

2           THE COURT:  All right.  So you have six witnesses

3   whose depositions people want before the end of the --

4           MS. PULLMAN:  Except that defendants have now said,

5   "Well, if you want -- if you don't permit us to take the three

6   who plan to testify, then we withdraw our withdrawal."  You

7   know, they told us, "We won't pursue some of the witnesses

8   that you say aren't testifying at trial, although we still

9   want some of the others."  And, you know, there's no -- "We

10  take no position -- we refuse to respond to your question

11  about how can we do this and set pretrial deadlines."

12          THE COURT:  What kind of pretrial deadlines are you

13  talking about?  I mean, deadlines to do what?

14          MS. PULLMAN:  To submit a joint pretrial order, to

15  submit -- it is our burden in the first instance to propose a

16  pretrial order to defendants.  They'll review -- you know

17  register objections, we will work together to submit something

18  to Your Honor.  But, also, I think we need a close of fact

19  discovery.  I mean, the fact that at this point they are

20  seeking 13 -- you know, it's seeking more than ten

21  depositions, more than what they provide for in the federal

22  rules.

23          THE COURT:  Wait a minute.  I thought it was just

24  the three who are going to testify, and Ms. Hoffman, that's

25  four.

1    MS. PULLMAN:  They've added -- they originally

2  withdrew, and now are saying it is not their position any

3  longer.  They want the testimony of a woman named Jean

4  Bucaria, who works at NOW New York City, and was involved in

5  sending Volunteer Escorts out.  They want the deposition of --

6    THE COURT:  Is this someone who's testifying for

7  you?

8    MS. PULLMAN:  No.  They want the deposition of a

9  woman, Christina Lee, who is from the National Lawyers Guild,

10  who a year or two or three ago, not in any recent time, was a

11  legal observer who is not going to testify.

12    I understand these were declarants, but we've made

13  clear that they are not testifying.  They want the deposition

14  of Camille Barbone, who has left Choices, lives in Florida,

15  and we are not planning to put on the stand.

16    MR. MIHET:  We withdrew that.

17    MS. PULLMAN:  They've also, as you know, they've

18  added the deposition Merle Hoffman.  I understand there may be

19  some relevance there, but, I mean, all of these are arguably

20  relevant on some level.

21    THE COURT:  But, Counsel, all good things have to

22  come to an end, we want to get this case moving, you want to

23  get the case moving.  Why can't you leave it at the three who

24  are going to testify, Ms. Hoffman, that's four?

25    MR. MIHET:  Your Honor, we have offered to withdraw

46

1  Bucaria and Lee off the schedule, which means that all --

2          THE COURT:  Why do you need more than the three who

3  are going to testify?

4          MR. MIHET:  Some of them are going to testify.

5          THE COURT:  No.  Those three.  They said three are

6  going to testify.  Why can't you be satisfied --

7          MR. MIHET:  That's all we have, Your Honor.  We have

8  Asmus, Priegue, and Din, we have the Choices 30(b)(6) --

9          THE COURT:  All right, yes.

10          MR. MIHET:  -- and we have the Hoffman, and we have

11  the Attorney General 30(b)(6).

12          THE COURT:  But the Attorney General I said we are

13  not doing.

14          MR. MIHET:  Not -- the 30(b)(6), the OAG 30(b)(6).

15          THE COURT:  Oh, I'm sorry.

16          MR. MIHET:  That's all, Your Honor.  And we have

17  noticed these for deposition --

18          THE COURT:  You are not asking for anybody other

19  than people we have discussed here today, the three who are

20  going to testify.

21          MR. MIHET:  Correct.  We specifically told counsel

22  that we were willing to drop Bucaria and Lee --

23          THE COURT:  Forget what was said before.  Does that

24  work?

25          MS. PULLMAN:  We will seek depositions of three

47

1    defendants.  I just need the end of discovery --

2              THE COURT:  Which ones do you want?

3              MS. PULLMAN:  Ronald George.

4              THE COURT:  Mr. George.

5              MS. PULLMAN:  Ranville Thomas, and Patricia Musco,

6    but we would like some deadline for the end of these

7    depositions.

8              THE COURT:  Okay.  So when can you do all this?

9    This is, what?

10             MS. PULLMAN:  We propose the end of next week.  They

11   have already said that they think the three -- their

12   depositions of Lee -- no, sorry, the three who plan to

13   testify, Asmus, Priegue and Din, they've already said they

14   only want one day for all three.  I am skeptical, but they

15   promise that one day they will fit in all three, and they

16   won't seek any more time even if they need more.

17             THE COURT:  But you want this completed by the end

18   of next week?

19             MS. PULLMAN:  Yes, Your Honor.

20             THE COURT:  Is Ms. Hoffman available by the end of

21   next week?

22             MS. ANDOH:  We'll do what we can.  It may bleed

23   over, but if it does, it'll only be by a day or two.  I also

24   think, as far as I understand, also, just to sort of preview

25   this, my understanding is that Asmus, Priegue, and Din are

48

1  actual Choices employees, so I may actually wind up having --

2  I haven't actually had the conversation with my client yet

3  because we haven't been served, but, I mean, this is literally

4  the first time I have ever heard from counsel for Mr. Fitchett

5  of his interest in taking depositions of Choices employees,

6  like today.

7          But, you know, obviously, once again, we are trying

8  to be cooperative, Your Honor, we really are, so, you know, we

9  will do what we can.

10         MR. MIHET:  Your Honor, just for the record, the

11 Attorney General told us that we could serve the Attorney

12 General with deposition subpoenas for those witnesses, and

13 that's what we've done.  So if they're not communicating,

14 that's really not on us.

15         MS. ANDOH:  They're nonparties, Your Honor.  I mean,

16 they did not consent -- these three individuals did not

17 consent to have the New York Attorney General to accept

18 service on their behalf.

19         THE COURT:  Well, you two need to talk to each other

20 then.

21         MS. PULLMAN:  Choices has since obtained counsel.

22 We don't object to the matter of service.  We have made clear

23 to defendants that we have passed information on.  Choices is

24 now represented, from the time that we submitted our initial

25 disclosures and said they can be contacted through us.  You

1  know, they have obtained counsel, and we are -- but there's no

2  objection to the matter of service on our part.

3         MR. MIHET:  Your Honor, if the OAG were not going to

4  take these three additional, three or four depositions, we

5  could finish next week.  The problem is, if they want to add

6  these three tit for tat, all of next week is already spoken

7  for and accounted, I don't know how we could accomplish that.

8  We would then need to take this into at least the following

9  week in order to accommodate the three latecomers that they've

10  never noticed.

11        MS. PULLMAN:  Your Honor, I think it goes without

12  saying, it is not tit for tat.  These are defendants.  The

13  parties, they plan to testify at trial, and the only reason

14  that we ever worked collaboratively --

15        THE COURT:  All right.  Discovery will close January

16  31.  You guys work it out.

17        MS. PULLMAN:  Thank you, Your Honor.

18        MR. MIHET:  Thank you, Your Honor.

19        THE COURT:  Now, the other thing that needs to be

20  filed is the pretrial order, right?

21        MS. PULLMAN:  Yes, Your Honor.

22        THE COURT:  All right.  Can you do that by the 9th?

23  Having it closed for me.

24        MS. PULLMAN:  We have a pretrial conference --

25        THE COURT:  We have a pretrial conference that day?

1          MR. MIHET:  On the 5th.

2          MS. PULLMAN:  Yes.

3          MR. MIHET:  Your Honor, may I be heard about trial?

4          THE COURT:  Yes.  You don't want to do it?

5          MR. MIHET:  Well, we do.

6          MS. PULLMAN:  Plaintiff does, Your Honor.

7          MR. MIHET:  We are eager to do it.  The problem is,

8   when we contemplated consolidating preliminary injunction

9   hearing and trial, that was before we laid eyes on even one

10  document in discovery, before we took any deposition.  As the

11  Court has been made aware now, the course of discovery has

12  progressed to such a point where we believe in good faith that

13  we have compulsory counterclaims and third-party claims that

14  we must bring in this case, which we cannot bring until it

15  comes time for us to answer a complaint, if that time ever

16  should come.

17          So we're in a position now where trial is

18  approaching, we are intending to file counterclaims, third

19  party claims, and we don't see how those could be tried on

20  February 12.  I have to presume that, you know, counsel for

21  Choices, when they receive our counterclaim and third-party

22  claim, will want to engage in motion practice.  I presume they

23  will want to engage in some discovery before trial.  I could

24  be wrong, but that's what usually happens in litigation.

25          And so at this point from where I'm sitting, from

1  where my cocounsel are sitting, I have permission to represent

2  their feelings on this as well.  We don't see how trial could

3  proceed on this -- on February 12.  But the preliminary

4  injunction hearing, which the AG attorney's office has been so

5  eager to have, could proceed on February 12.

6          So what we would suggest to the Court then, for the

7  Court's consideration, is a decoupling of the two.  We have

8  the PI hearing on the 12th, and then when it comes time for

9  trial, we can have the trial.  Rule 65 says that the evidence

10 presented at the PI hearing need not be repeated at trial, so

11 Your Honor will not need to re-sit through 15 witnesses at

12 trial, which you have already heard from at the PI stage, and

13 that would be a way to go forward from where the defendants

14 are sitting.

15         Otherwise, we're in a position to file a pretrial

16 statement, proposed findings of fact, conclusions of law, at a

17 point in time where we don't even know what our counterclaims

18 are going to be into the trial.  And, Your Honor, just so you

19 know, we've been working around the clock on this case, the

20 entire team of attorneys, 14, 16, 18-hour days.  It is not

21 like we have been sitting around --

22         THE COURT:  No, I understand that.

23         MR. MIHET:  -- and waiting for this.  We are moving

24 as fast as we can, but this is where I think we are.

25         THE COURT:  I do understand the problem.  So unless

1    the AG objects, I have no objection to decoupling it, because

2    if there are going to be counterclaims, and we don't want to

3    do half a trial.  So I probably -- I tried to come up with the

4    proposal that would resolve things, but doesn't look like it's

5    going to do it.  So, okay.

6              MR. MIHET:  So I think that will greatly simplify

7    the filings that we need to make in advance of the preliminary

8    injunction hearing now, since it is not a full-blown merits

9    trial.  We still need to make some disclosures, obviously,

10   exhibit lists and witness lists, but I think we're in a

11   different posture and our job should be somewhat easier.

12             THE COURT:  Okay.  I think we are going to have

13   to -- let me ask a practical question about the motion to

14   dismiss.  I know that part of the motion to dismiss deals with

15   the question of standing, which can be resolved, but a large

16   portion of the motion to dismiss deals with a claim that the

17   complaint doesn't have enough information.  We are a little

18   bit past that at this point in time because you have gotten

19   most of the information.  It seems like to me, although we can

20   have the motions to dismiss on the standing grounds, what is

21   the point of pursuing the fact that the complaint isn't

22   specific enough at this point in time, since we're going to

23   have a preliminary injunction hearing, which has been

24   scheduled, everybody's gone through depositions at the end of

25   that, we can clearly resolve with a full picture whether

53

1    there's sufficient evidence for each of these defendants.

2          So I understand resolving the standing question, but

3    I don't know what the point of going through whether the

4    complaint has enough information in it, which seems to be the

5    large portion of the rest of the motion.

6          Counsel?

7          MR. CRAMPTON:  Your Honor, Steve Crampton for the

8    ten Griepp defendants.

9          As counsel for the other defendants has already

10   argued with respect to specificity regarding their claims, we

11   have ten clients, over a period of over five years, and a

12   hopeless --

13         THE COURT:  But haven't you been given information

14   from the AG in the same way that counsel has, identifying when

15   your clients are on the tapes, what witnesses are going to

16   testify about them?

17         MR. CRAMPTON:  We would be satisfied with that.  I

18   would also add, Your Honor, that the motions to dismiss are

19   not solely premised on that lack of specificity.  There are

20   legal matters also raised that --

21         THE COURT:  Well, I know.  You've raised standing

22   and --

23         MR. CRAMPTON:  With regard to the New York City

24   Clinic Access Act, Your Honor, there is this follow and harass

25   language, and the testimony adduced to this point makes it

54

1  pretty clear that the interpretation of certainly the escorts

2  and presumably the Attorney General, raises very serious

3  issues --

4          THE COURT:  I know, but let's be practical.  I'm

5  going to have to hear all of that.  So, I mean, you know,

6  that's very difficult in the context of a motion to dismiss.

7  I understand your positions about how the complaint is not

8  terribly specific about anyone, but now you have the

9  information for what it is.  We are going to have the hearing.

10  At the end of the hearing, you know, with all of this -- with

11  the Court knowing exactly what it is that the Attorney General

12  has to say about each one of these people, can resolve that.

13  And that seems to be practically what we ought to do here.

14          I understand about the standing and those are issues

15  that, you know, if you think you've got a good motion, you

16  know, we can talk about that on the 29th.

17          MR. CRAMPTON:  Your Honor, there are also facial and

18  as applied challenges to both face and the follow and harass

19  law.

20          THE COURT:  Well, I understand the facial

21  challenges.  We can deal with that.  The Second Circuit has

22  upheld the federal statute, which puts you at a tad of a

23  disadvantage.  I rarely try to reverse them, you know.  You

24  are not dealing with Jack Weinstein here.  I don't have that

25  level of confidence, but --

1          (Laughter.)

2          MR. CRAMPTON:  By contrast, the follow and harass

3     law has not been construed by anyone.

4          THE COURT:  Well, interestingly -- well, we can talk

5     about that on the 29th.

6          MR. CRAMPTON:  Sure.

7          THE COURT:  But those are all issues I will

8     definitely try to resolve before the hearing, because I

9     understand those don't have anything to do with whether

10    there's enough evidence, and I'll do my best to resolve those

11    before the hearing.  So I understand your position on that.

12         Yes, ma'am?

13         MS. PULLMAN:  Sorry to bother, Your Honor, but we

14    have a close of discovery January 31, and we'd just like to

15    set -- we maybe propose February 3rd for exchange of exhibit

16    lists, maybe the 3rd for plaintiffs to provide their pretrial

17    order proposal to defendants.

18         THE COURT:  Tell me again.  I don't think counsel

19    can hear you.

20         MS. PULLMAN:  So we would propose the 3rd --

21         MR. MIHET:  That's a Saturday.

22         MS. PULLMAN:  Sorry.  February 2nd for the exhibit

23    lists and -- exchange of exhibit lists and witness lists.

24    That's just over a week before trial.  PI hearing.  Plaintiff

25    can submit the proposed pretrial order to defendants on the

56

1   2nd.  We ask that defendants turn it around on the 6th so that

2   we can jointly submit something to the Court on the 8th.  I

3   mean, we have a hearing, if Your Honor doesn't mind the joint

4   pretrial order being submitted after the hearing, we can --

5            THE COURT:  Joint pretrial after the hearing?

6            MS. PULLMAN:  I would like it to be before, but our

7   close of discovery now is set for January 31 --

8            MR. CRAMPTON:  Your Honor, if I may, do we need a

9   joint pretrial hearing conference if we don't --

10           THE COURT:  Oh, yes.  Do we need a joint pretrial

11   order?  You bet we do.  I don't want to hear, "I never heard

12   of that witness.  No one told me about that witness."

13           MR. CRAMPTON:  I was referring to the conference,

14   Your Honor.

15           THE COURT:  Pardon me?

16           MR. CRAMPTON:  I was referring to the conference.

17           THE COURT:  Yes.  Oh, you were not referring to the

18   order, you were referring to the conference.

19           MR. CRAMPTON:  Correct.

20           THE COURT:  So the order could be filed on the 9th.

21           MS. PULLMAN:  And we could -- the parties could

22   exchange --

23           THE COURT:  You need to exchange documents before

24   then on the --

25           MS. PULLMAN:  On the 2nd, perhaps.

57

1        THE COURT:  Yes.  Try and exchange your documents on

2   the 2nd and file the pretrial order on the 9th.

3        MS. PULLMAN:  That's fine by us.

4        THE COURT:  And the hearing starts on the 12th.

5        How long do the parties think the hearing will take?

6        MS. PULLMAN:  I imagine a week, unless -- I think

7   the last time we exchanged witness lists for the preliminary

8   injunction hearing, defendants indicated that all 13 plan to

9   testify.

10        THE COURT:  All right.  It may get a little choppy

11   then because I won't -- I can't sit on the 16th.  I can't --

12   couldn't resume it, I could -- it would have to go through the

13   15th, and then I would be able to resume it on the 22nd.  So

14   just to let you know in terms of the scheduling of your

15   witnesses.

16        MS. PULLMAN:  Thank you, Your Honor.

17        MR. CANNON:  When you resume it, Your Honor, how

18   long can you resume it for?

19        THE COURT:  Oh.  I can move things around so that I

20   try and take it straight through from there.  I have a lot on

21   my calendar, but I'll finish -- I'll take it through and

22   finish it there.  Those were just other matters that I

23   couldn't change.

24        MR. CANNON:  What was that resumption date again?

25        THE COURT:  The 22nd.

58

1          So we are all set?

2          MS. PULLMAN:  Thank you, Your Honor.

3          THE COURT:  Okay.

4          MR. MIHET:  Thank you.

5          MR. GANNAM:  Thank you.

6          THE COURT:  Thank you.

7          (WHEREUPON, at 11:35 a.m., the proceedings were

8  concluded.)

9

10

11

12

13                      * * * * *

14              **REPORTER'S CERTIFICATE**

15          I, ANNETTE M. MONTALVO, do hereby certify that the

16  above and foregoing constitutes a true and accurate transcript
    of my stenographic notes and is a full, true and complete

17  transcript of the proceedings to the best of my ability.

18          Dated this 25th day of January, 2018.

19  /s/Annette M. Montalvo
    Annette M. Montalvo, CSR, RDR, CRR

20  Official Court Reporter

21

22

23

24

25

1

## /

/s/Annette [1] - 58:19

## 1

**1** [2] - 30:19, 30:20
**10112** [1] - 2:16
**10271** [1] - 1:17
**1053** [1] - 1:20
**10:00** [1] - 1:6
**10:23** [1] - 3:1
**11201** [1] - 2:25
**11:00** [2] - 5:5, 6:13
**11:35** [1] - 58:7
**12** [8] - 27:21, 27:22, 40:14, 41:10, 44:1, 50:20, 51:3, 51:5
**120** [1] - 1:16
**12th** [1] - 51:8, 57:4
**13** [6] - 35:11, 41:13, 42:23, 43:23, 44:20, 57:8
**14** [1] - 51:20
**15** [1] - 51:11
**15th** [1] - 57:13
**16** [3] - 30:7, 38:12, 51:20
**16th** [1] - 57:11
**17** [3] - 1:6, 7:6, 27:25
**17-3706** [1] - 1:3
**17cv3706** [1] - 3:3
**18-hour** [1] - 51:20
**19th** [1] - 42:3
**1:00** [1] - 11:2

## 2

**20** [1] - 42:4
**2012** [1] - 34:24
**2015** [1] - 38:7
**2016** [1] - 35:5
**2018** [2] - 1:6, 58:18
**20374** [1] - 2:3
**212-416-8234** [1] - 1:17
**212-653-8700** [1] - 2:16
**22** [1] - 12:16
**225** [1] - 2:24
**22nd** [4] - 12:19, 12:24, 57:13, 57:25
**24** [1] - 2:10
**25th** [1] - 58:18
**29** [1] - 5:4
**29th** [2] - 54:16, 55:5
**2:00** [1] - 30:19
**2nd** [4] - 55:22, 56:1, 56:25, 57:2

## 3

**30** [5] - 2:15, 15:8, 22:8, 28:1, 28:3
**30(b** [1] - 25:9
**30(b)(6** [10] - 15:9, 25:22, 30:16, 38:1, 39:18, 39:20, 41:20, 42:7, 46:8, 46:14
**30(b)(6)** [5] - 25:4, 29:19, 41:22, 46:11,

46:14
**31** [4] - 38:7, 49:16, 55:14, 56:7
**3200** [1] - 2:10
**32751** [1] - 1:21
**34** [1] - 17:5
**38803** [1] - 2:6
**393** [1] - 2:11
**3:00** [1] - 30:20
**3rd** [3] - 55:15, 56:16, 55:20

## 4

**4** [1] - 42:21
**4,000** [3] - 15:3, 15:5, 24:18
**407-875-1776** [1] - 1:21
**4506** [1] - 2:6
**48106** [1] - 2:11

## 5

**51526** [1] - 2:3
**5th** [1] - 50:1

## 6

**6** [1] - 41:1
**65** [1] - 51:9
**662-255-9439** [1] - 2:7
**6th** [1] - 56:1

## 7

**7** [2] - 15:23, 41:25
**718-783-8200** [1] - 2:4
**718-804-2711** [2] - 1:25, 2:25
**734-827-2001** [1] - 2:12

## 8

**8** [1] - 41:3
**8th** [1] - 56:2

## 9

**9th** [3] - 49:22, 56:20, 57:2

## A

**a.m** [4] - 1:6, 3:1, 5:5, 58:7
**ability** [1] - 58:17
**able** [9] - 6:14, 8:20, 13:2, 36:9, 39:15, 39:19, 40:15, 57:13
**absolute** [1] - 16:7
**absolutely** [1] - 23:19
**abundance** [1] - 36:18
**accept** [1] - 48:17
**Access** [1] - 53:24
**accommodate** [1] - 49:9
**accomplish** [1] - 49:7
**accordingly** [1] - 32:24

**accounted** [1] - 49:7
**accurate** [1] - 58:16
**act** [2] - 11:5, 13:15
**Act** [1] - 53:24
**Action** [1] - 1:3
**action** [2] - 7:4, 23:13
**activities** [2] - 20:13, 35:5
**activity** [1] - 24:10
**actual** [2] - 23:3, 48:1
**add** [2] - 49:5, 53:18
**added** [2] - 45:1, 45:18
**adding** [2] - 22:11, 42:18
**additional** [3] - 30:9, 31:22, 49:4
**adduced** [1] - 53:25
**admissible** [3] - 21:8, 21:17
**advance** [3] - 8:22, 11:18, 52:7
**AG** [17] - 10:5, 10:8, 19:10, 19:16, 19:17, 19:19, 20:5, 20:23, 21:1, 23:10, 25:5, 29:19, 39:3, 51:4, 52:1, 53:14
**AG's** [1] - 19:22
**ago** [1] - 45:10
**agree** [1] - 32:9
**agreed** [1] - 41:12
**agreeing** [1] - 13:9
**agreement** [3] - 10:7, 27:8, 40:2
**ahead** [2] - 8:20, 10:11
**aided** [1] - 2:21
**al** [1] - 1:6
**allegation** [2] - 30:17, 37:20
**allegations** [4] - 30:4, 34:1, 35:20, 35:25
**allege** [1] - 38:6
**alleged** [3] - 35:15, 37:15, 38:7
**alternative** [1] - 26:5
**ambush** [1] - 41:9
**ambushed** [3] - 8:17, 9:19, 29:16
**Amendment** [2] - 14:1, 21:13
**American** [1] - 21:15
**amicably** [1] - 39:16
**AMON** [1] - 1:10
**amount** [2] - 40:20, 41:14
**analyze** [1] - 21:2
**ANDOH** [50] - 3:14, 3:17, 5:21, 6:2, 6:5, 6:22, 7:5, 8:13, 8:15, 9:9, 9:14, 10:2, 10:10, 12:18, 16:21, 16:24, 17:4, 17:11, 17:19, 17:23, 18:13, 18:20, 18:23, 19:1, 19:25, 20:6, 21:21, 22:5, 22:19, 22:22, 23:1, 23:11, 23:18, 24:21, 26:4, 26:9, 26:21, 26:24, 27:12, 27:15, 27:18, 28:11, 28:14, 28:25, 29:4, 29:7, 29:12, 34:19, 47:22, 48:15
**Andoh** [2] - 2:14, 5:21
**Ann** [1] - 2:11
**ANNETTE** [1] - 58:15
**Annette** [3] - 1:24, 2:23, 58:19
**answer** [5] - 5:14, 19:17, 19:18, 20:7, 21:3, 23:2, 25:21, 26:1, 30:12, 32:14, 33:1, 38:3, 38:5, 50:15
**answered** [2] - 29:22, 36:7

answering [1] - 16:19
answers [2] - 25:19, 25:20
anticipated [1] - 43:17
apologize [1] - 40:1
appear [1] - 35:12
appearance [1] - 40:22
Appearances [2] - 1:23, 2:1
appearances [1] - 3:6
appearing [1] - 4:21
applied [1] - 54:18
applies [1] - 27:13
apply [2] - 27:10, 27:14
approaching [1] - 50:18
appropriately [4] - 5:19, 6:20, 25:10, 29:24
approximate [1] - 34:17
Arbor [1] - 2:11
arguably [1] - 45:19
argued [1] - 53:10
argument [1] - 37:21
arguments [2] - 5:4, 5:6
aside [1] - 42:24
Asmus [3] - 46:8, 47:13, 47:25
assaulted [1] - 22:22
assert [1] - 20:19
assist [1] - 11:12
Assistant [1] - 1:15
assume [1] - 28:15
assumed [1] - 42:16
assuming [1] - 28:15
attached [1] - 10:15
ATTIE [1] - 3:23
Attie [2] - 1:14, 3:23
attorney [2] - 8:23, 31:22
Attorney [43] - 1:4, 1:16, 3:9, 3:11, 3:21, 3:23, 4:1, 9:20, 14:9, 14:12, 14:17, 14:20, 15:1, 15:4, 15:6, 17:12, 17:13, 17:18, 19:5, 19:6, 21:10, 22:11, 22:13, 23:6, 23:21, 24:17, 26:10, 29:14, 30:3, 32:11, 32:12, 32:20, 35:24, 38:1, 42:20, 46:11, 46:12, 48:11, 48:17, 54:2, 54:11
attorney's [1] - 51:4
attorneys [2] - 31:16, 51:20
Attorneys [1] - 1:15
audio [2] - 15:24, 17:9
authenticate [1] - 18:4
authority [1] - 8:25
available [6] - 12:15, 12:19, 12:22, 12:24, 40:21, 47:20
average [1] - 23:17
avoid [1] - 38:19
aware [3] - 21:21, 21:22, 50:11

### B

backstory [1] - 26:12
BAGLEY [1] - 1:10
banker's [1] - 20:10

Barbone [1] - 45:14
based [2] - 9:2, 33:15
basic [1] - 16:19
basis [5] - 6:12, 6:16, 7:7, 12:21, 32:11
BEFORE [1] - 1:9
began [1] - 35:4
beginning [1] - 24:20
behalf [9] - 3:21, 4:7, 4:11, 4:22, 5:10, 5:21, 22:14, 22:18, 48:18
behind [2] - 26:12, 30:17
belief [1] - 34:4
best [3] - 9:6, 55:10, 58:17
bet [1] - 56:11
better [1] - 20:8
between [3] - 13:2, 18:17, 23:3
beyond [3] - 21:23, 42:23, 42:24
bias [1] - 21:19
bit [4] - 19:23, 23:17, 31:25, 52:18
bleed [1] - 47:22
blocking [1] - 33:25
blown [1] - 52:8
Blvd [1] - 1:20
bother [1] - 55:13
box [2] - 20:10, 20:14
Box [2] - 2:6, 2:11
Braxton [2] - 2:9, 4:16
briefed [2] - 5:2, 28:19
briefs [1] - 13:7
bring [4] - 23:13, 23:22, 50:14
bringing [1] - 42:23
broad [3] - 19:21, 24:3, 37:20
Broadway [1] - 1:16
Brooklyn [2] - 1:5, 2:25
brooks [1] - 4:13
Brooks [1] - 2:9
BROOKS [1] - 4:14
brought [1] - 21:12
Bucaria [3] - 45:4, 46:1, 46:22
burden [3] - 13:23, 13:24, 44:15
burdensome [2] - 30:7, 33:18

### C

cabinet [1] - 20:11
Cadman [1] - 2:24
calendar [1] - 57:21
camera [8] - 6:15, 8:18, 10:16, 11:16, 15:18, 16:8, 16:9, 41:6
Camille [1] - 45:14
candid [1] - 9:4
cannon [1] - 4:19
Cannon [3] - 2:2, 2:2, 4:21
CANNON [3] - 4:21, 57:17, 57:24
cannot [2] - 12:15, 50:14
cap [1] - 40:18
captured [2] - 31:5, 36:20
care [2] - 25:2, 39:9
careful [1] - 12:10
carefully [1] - 11:25

CAROL [1] - 1:10
case [25] - 8:3, 8:24, 9:17, 13:6, 13:14, 13:16, 13:17, 13:20, 13:21, 14:5, 14:7, 18:9, 21:9, 23:4, 23:8, 23:19, 27:21, 28:18, 36:2, 36:25, 38:17, 45:22, 45:23, 50:14, 51:19
caution [1] - 36:18
caveat [1] - 31:20
CBA [1] - 1:3
Center [4] - 1:20, 2:9, 2:15, 3:15
CEO [2] - 3:16, 21:13
certain [1] - 13:18
certainly [5] - 8:12, 11:24, 28:20, 37:10, 54:1
CERTIFICATE [1] - 58:14
certification [3] - 17:5, 18:3, 24:16
certify [1] - 58:15
challenges [2] - 54:18, 54:21
chance [2] - 5:14, 29:16
change [1] - 57:23
charitable [1] - 7:25
check [1] - 30:7
chief [2] - 36:2, 38:17
Choices [37] - 2:14, 3:15, 6:11, 15:14, 15:17, 15:23, 16:1, 16:4, 16:10, 16:17, 16:18, 17:12, 17:19, 20:14, 22:12, 23:4, 23:6, 24:11, 25:5, 25:6, 25:15, 25:18, 27:25, 32:8, 32:9, 33:19, 35:9, 35:10, 41:22, 45:14, 46:8, 48:1, 48:5, 48:21, 48:23, 50:21
choices [2] - 14:24, 22:13
Choices' [4] - 14:22, 21:13, 22:17, 22:24
choppy [1] - 57:10
Christina [1] - 45:9
Circuit [1] - 54:21
City [3] - 15:15, 45:4, 53:23
Civil [1] - 1:3
claim [3] - 33:22, 50:22, 52:16
claiming [1] - 6:12
claims [3] - 50:13, 50:19, 53:10
clear [9] - 6:23, 24:1, 24:23, 34:22, 40:19, 45:13, 48:22, 54:1
clearly [3] - 21:18, 29:23, 52:25
CLERK [1] - 3:3
client [15] - 21:14, 21:22, 31:2, 32:1, 33:19, 33:21, 33:24, 34:5, 35:20, 35:25, 36:6, 37:12, 37:13, 38:17, 48:2
client's [2] - 21:12, 31:3
clients [3] - 53:11, 53:15
clinic [3] - 15:16, 22:23, 34:25
Clinic [1] - 53:24
clip [1] - 15:16
clips [2] - 35:13, 35:18
clock [1] - 51:19
close [6] - 40:17, 43:14, 44:18, 49:15, 55:14, 56:7
closed [1] - 49:23
cocounsel [1] - 51:1

collaboratively [2] - 40:20, 49:14
colleague [1] - 4:12
collected [1] - 15:19
coming [1] - 12:16
commencing [1] - 3:1
commit [2] - 28:14, 31:18
committed [1] - 31:15
Commons [1] - 1:20
communicate [1] - 19:2
communicating [1] - 48:13
communication [2] - 18:17, 35:24
compared [1] - 16:7
complaint [7] - 30:5, 34:2, 50:15, 52:17, 52:21, 53:4, 54:7
complaints [2] - 24:6, 24:8
complete [1] - 58:16
completed [3] - 5:8, 5:9, 47:17
completely [1] - 24:3
complied [1] - 11:10
comply [2] - 27:16, 37:3
component [2] - 13:18, 13:19
compulsory [1] - 50:13
computer [1] - 2:21
computer-aided [1] - 2:21
concern [4] - 25:11, 26:9, 27:19, 39:15
concerned [1] - 13:23
concerning [3] - 6:14, 10:20, 18:17
concerns [2] - 13:13, 13:14
conclude [1] - 40:10
concluded [1] - 58:8
conclusion [1] - 40:7
conclusions [1] - 51:16
conduct [8] - 32:10, 33:14, 33:16, 34:8, 35:10, 35:15, 38:13, 41:18
conference [7] - 3:4, 49:24, 49:25, 56:9, 56:13, 56:16, 56:18
CONFERENCE [2] - 1:4, 1:9
conferring [1] - 41:20
confess [1] - 15:4
confidence [2] - 13:15, 54:25
confidentiality [1] - 10:7
conflate [1] - 23:5
confronted [1] - 12:9
confused [1] - 15:5
connection [1] - 5:11
consent [2] - 48:16, 48:17
consider [2] - 7:15, 7:17
consideration [2] - 7:10, 51:7
consolidating [1] - 50:8
constitute [1] - 9:6
constituted [1] - 16:12
constitutes [3] - 34:1, 34:3, 58:16
constituting [1] - 18:16
construed [1] - 55:3
consuming [1] - 33:13
contact [1] - 21:6
contacted [1] - 48:25
contacts [1] - 24:2
contain [1] - 31:17

contained [1] - 20:11
contemplated [1] - 50:8
contempt [3] - 5:12, 5:13, 7:11
contentious [1] - 43:16
context [1] - 54:6
continued [1] - 1:23
Continued [1] - 2:1
contrast [1] - 55:2
control [4] - 21:25, 23:7, 23:9, 23:11
conversation [1] - 48:2
converted [1] - 28:16
conveyed [1] - 43:6
cooperate [1] - 12:17
cooperative [1] - 48:8
coordinate [1] - 29:13
coordinated [1] - 15:15
correct [8] - 4:8, 4:17, 20:24, 29:25, 30:1, 34:7, 46:21, 56:19
correspondence [1] - 18:23
corresponds [1] - 35:19
Counsel [7] - 1:20, 11:5, 18:7, 21:5, 29:25, 45:21, 53:6
counsel [28] - 3:6, 4:10, 5:11, 8:8, 9:24, 11:18, 12:16, 13:2, 13:9, 16:17, 17:2, 18:11, 19:10, 27:3, 30:25, 31:14, 32:9, 38:9, 40:15, 46:21, 48:4, 48:21, 49:1, 50:20, 53:9, 53:14, 55:18
counterclaim [1] - 50:21
counterclaims [9] - 14:11, 14:16, 21:20, 23:23, 23:24, 50:13, 50:18, 51:17, 52:2
couple [1] - 6:8
course [6] - 4:23, 4:25, 13:13, 15:17, 23:11, 50:11
COURT [163] - 1:1, 3:5, 3:10, 3:16, 3:18, 4:2, 4:4, 4:10, 4:13, 4:15, 4:19, 4:25, 5:25, 6:3, 6:17, 7:1, 7:7, 7:17, 7:24, 8:7, 8:14, 9:5, 9:8, 9:12, 9:23, 10:5, 10:18, 10:22, 11:4, 11:9, 11:19, 11:23, 12:12, 13:1, 15:20, 15:22, 16:5, 16:15, 16:17, 16:22, 17:1, 17:8, 17:16, 17:21, 18:1, 18:6, 18:14, 18:22, 18:24, 19:8, 20:3, 20:14, 20:17, 20:21, 22:2, 22:17, 22:21, 22:24, 23:9, 23:15, 23:24, 24:13, 24:20, 24:24, 25:2, 25:6, 25:8, 26:8, 26:15, 26:17, 26:22, 27:1, 27:10, 27:13, 27:17, 27:23, 28:2, 28:8, 28:22, 29:3, 29:6, 29:11, 29:17, 29:21, 30:14, 30:23, 31:9, 31:12, 32:3, 33:2, 34:7, 34:11, 34:15, 34:22, 35:2, 35:7, 35:9, 35:14, 35:21, 36:11, 36:22, 37:8, 37:11, 37:19, 38:3, 38:8, 38:25, 39:9, 39:11, 39:21, 39:24, 40:5, 40:11, 40:13, 40:23, 43:4, 43:21, 44:2, 44:12, 44:23, 45:6, 45:21, 46:2, 46:5, 46:9, 46:12, 46:15, 46:18, 46:23, 47:2, 47:4, 47:8, 47:17, 47:20, 48:19, 49:15, 49:19, 49:22, 49:25, 50:4, 51:22, 51:25, 52:12, 53:13, 53:21, 54:4, 54:20, 55:4, 55:7, 55:18, 56:5, 56:10,

56:15, 56:17, 56:20, 56:23, 57:1, 57:4, 57:10, 57:19, 57:25, 58:3, 58:6
Court [14] - 1:24, 1:25, 2:23, 2:23, 11:12, 11:13, 37:21, 39:12, 40:9, 42:12, 50:11, 51:6, 56:2, 58:20
court [2] - 3:2, 54:11
Court's [1] - 51:7
Courthouse [1] - 2:24
cover [2] - 34:23, 35:3
CRAMPTON [10] - 53:7, 53:17, 53:23, 54:17, 55:2, 55:6, 56:8, 56:13, 56:16, 56:19
Crampton [5] - 2:5, 2:5, 4:19, 4:22, 53:7
create [1] - 31:22
created [1] - 31:15
credibility [1] - 21:19
Crescent [1] - 2:3
critical [1] - 24:11
CRR [2] - 2:23, 58:19
CSR [2] - 2:23, 58:19
culled [1] - 9:2

**D**

Danielle [1] - 2:14
dark [1] - 9:15
date [18] - 28:2, 28:6, 28:9, 28:21, 29:1, 31:20, 32:18, 34:17, 37:5, 37:15, 40:17, 43:14, 57:24
Date [1] - 1:6
Dated [1] - 58:18
dates [18] - 30:8, 30:10, 31:9, 31:12, 31:23, 32:15, 33:9, 34:12, 37:23, 38:6, 38:12, 38:15, 40:3, 40:15, 41:23, 42:9, 42:11, 42:14
days [3] - 28:3, 28:17, 51:20
deadline [2] - 37:2, 47:6
deadlines [8] - 40:6, 40:15, 40:16, 42:16, 43:13, 44:11, 44:12, 44:13
deal [3] - 5:13, 6:3, 54:21
dealing [1] - 54:24
deals [2] - 52:14, 52:16
dealt [1] - 26:23
December [6] - 41:1, 41:12, 41:25, 42:4, 42:17
decide [2] - 32:10, 33:15
decision [1] - 23:13
declarants [2] - 43:1, 45:12
declaration [6] - 5:18, 6:19, 6:22, 6:23, 6:25, 7:22
declarations [1] - 7:19
decoupling [2] - 51:7, 52:1
defendant [9] - 4:11, 15:25, 17:9, 17:17, 18:18, 20:15, 30:2, 34:9, 36:4
Defendant [1] - 1:19
defendant's [3] - 20:13, 35:5, 41:18
Defendants [3] - 1:7, 2:2, 2:9
defendants [37] - 4:22, 7:3, 7:6, 7:13, 13:13, 14:16, 15:7, 16:8, 16:13, 20:20, 23:19, 27:7, 35:12, 35:19, 36:16, 40:2,

40:22, 40:25, 41:13, 41:15, 42:6, 42:15, 43:8, 43:23, 44:4, 44:16, 47:1, 48:23, 49:12, 51:13, 53:1, 53:8, 53:9, 55:17, 55:25, 56:1, 57:8

**defense** [4] - 21:11, 22:16, 32:24, 34:3

**defenses** [5] - 14:11, 14:15, 21:20, 23:23, 23:25

**defer** [2] - 26:10, 26:24

**definitely** [3] - 7:15, 13:6, 55:8

**definitive** [2] - 36:11, 37:6

**demands** [2] - 19:5, 20:2

**dentist** [1] - 18:1

**deny** [1] - 7:8

**depose** [8] - 33:3, 33:7, 42:7, 42:19, 42:20, 42:22, 43:9, 43:23

**deposed** [7] - 8:16, 9:10, 14:13, 29:9, 36:25, 38:20, 42:6

**deposing** [1] - 6:12

**deposition** [35] - 5:11, 6:21, 7:9, 8:19, 9:4, 9:25, 11:13, 11:17, 12:1, 12:5, 12:8, 12:14, 12:15, 12:23, 13:4, 14:9, 14:14, 14:20, 29:15, 33:6, 38:1, 39:20, 41:16, 42:18, 42:19, 43:10, 45:5, 45:8, 45:13, 45:18, 46:17, 48:12, 50:10

**depositions** [16] - 32:6, 32:7, 37:17, 40:7, 40:8, 40:18, 41:13, 43:14, 44:3, 44:21, 46:25, 47:7, 47:12, 48:5, 49:4, 52:24

**detailed** [1] - 7:20

**details** [1] - 7:22

**determining** [1] - 11:13

**develop** [1] - 32:24

**different** [2] - 23:17, 52:11

**difficult** [1] - 54:6

**digital** [1] - 15:24

**diligence** [1] - 17:20

**direct** [2] - 24:4, 28:22

**direction** [1] - 13:8

**directly** [2] - 8:1, 21:15

**disadvantage** [1] - 54:23

**disclose** [1] - 8:22

**disclosures** [4] - 10:25, 11:3, 48:25, 52:9

**discovery** [26] - 4:6, 4:16, 5:7, 8:24, 8:25, 9:22, 10:21, 11:10, 14:6, 32:1, 32:2, 33:21, 34:6, 40:17, 40:20, 41:8, 41:24, 42:5, 44:19, 47:1, 49:15, 50:10, 50:11, 50:23, 55:14, 56:7

**discretion** [1] - 25:13

**discuss** [1] - 29:7

**discussed** [1] - 46:19

**discussion** [2] - 28:6, 38:14

**dismiss** [9] - 5:2, 5:5, 14:15, 52:14, 52:16, 52:20, 53:18, 54:6

**disqualify** [1] - 42:1

**DISTRICT** [3] - 1:1, 1:1, 1:10

**document** [25] - 9:25, 12:1, 12:4, 12:9, 15:9, 15:12, 15:13, 15:14, 15:23, 16:14, 16:23, 18:15, 19:5, 19:7, 19:13,

19:20, 20:1, 20:21, 20:25, 24:12, 25:11, 25:22, 31:2, 31:23, 50:10

**documentation** [1] - 29:15

**documented** [1] - 31:16

**documents** [45] - 10:6, 10:8, 10:13, 10:16, 10:18, 10:20, 10:24, 11:4, 11:6, 11:11, 11:14, 11:19, 11:23, 12:3, 12:5, 12:6, 15:3, 15:5, 15:7, 15:10, 15:18, 18:4, 18:16, 18:18, 18:24, 20:4, 20:5, 20:11, 22:3, 23:21, 24:16, 24:19, 27:3, 30:22, 31:6, 31:7, 31:17, 32:13, 32:25, 41:6, 56:23, 57:1

**Doe** [2] - 2:3, 2:4

**domain** [1] - 21:25

**done** [6] - 12:20, 33:14, 33:19, 38:8, 43:14, 48:13

**down** [4] - 13:5, 13:22, 20:12, 33:22

**Drive** [1] - 2:10

**drop** [1] - 46:22

**due** [1] - 41:8

**duplicative** [1] - 16:25

## E

**e-mail** [1] - 42:22

**e-mails** [1] - 24:23

**eager** [2] - 50:7, 51:5

**early** [3] - 41:1, 41:12, 42:17

**easier** [1] - 52:11

**easiest** [1] - 17:9

**East** [1] - 2:24

**EASTERN** [1] - 1:1

**EDNY** [1] - 1:25

**either** [4] - 21:7, 31:6, 33:25, 36:9

**elsewhere** [1] - 9:2

**emergency** [1] - 41:2

**emotional** [3] - 13:18, 13:19, 14:4

**emotions** [1] - 14:5

**employees** [4] - 22:24, 24:9, 48:1, 48:5

**end** [11] - 8:10, 40:18, 44:3, 45:22, 47:1, 47:6, 47:10, 47:17, 47:20, 52:24, 54:10

**enforcement** [1] - 28:23

**engage** [3] - 13:11, 50:22, 50:23

**enormous** [1] - 41:8

**entire** [4] - 15:12, 20:11, 36:25, 51:20

**entitled** [2] - 9:3, 9:8

**equally** [1] - 9:14

**equivalent** [2] - 17:5, 21:14

**Eric** [1] - 42:21

**ERIC** [1] - 1:4

**Escorts** [2] - 15:15, 45:5

**escorts** [9] - 20:12, 22:25, 23:1, 24:9, 33:6, 41:16, 42:7, 42:15, 54:1

**Esq** [11] - 1:13, 1:13, 1:14, 1:14, 1:19, 1:19, 2:2, 2:5, 2:9, 2:14, 2:14

**essentially** [1] - 30:5

**et** [1] - 1:6

**event** [1] - 11:24

**events** [1] - 33:22

**evidence** [5] - 21:8, 35:25, 51:9, 53:1, 55:10

**evolved** [1] - 30:8

**exactly** [7] - 8:21, 9:15, 10:15, 16:25, 17:5, 27:6, 54:11

**example** [1] - 21:13

**except** [1] - 44:4

**exchange** [5] - 55:15, 55:23, 56:22, 56:23, 57:1

**exchanged** [1] - 57:7

**exclude** [1] - 39:2

**excluded** [1] - 39:1

**excuse** [1] - 40:11

**exhaustive** [2] - 36:1, 38:17

**exhibit** [6] - 35:19, 37:4, 52:10, 55:15, 55:22, 55:23

**exhibits** [6] - 35:18, 36:1, 37:2, 37:5, 38:15, 38:16

**exist** [1] - 12:3

**exists** [1] - 13:19

**expedited** [2] - 12:21, 42:24

**expressed** [2] - 42:19, 42:20

**expressly** [1] - 36:1

**extension** [3] - 41:4, 41:7, 41:24

**extent** [11] - 8:19, 9:9, 9:10, 17:11, 19:3, 21:4, 21:23, 24:9, 25:18, 26:11, 26:14

**extremely** [1] - 8:23

**eyes** [1] - 50:9

**eyewitness** [2] - 31:18, 36:18

**eyewitnesses** [3] - 33:18, 41:18, 43:2

## F

**face** [1] - 54:18

**facial** [2] - 54:17, 54:20

**facility** [1] - 34:20

**fact** [13] - 5:17, 18:21, 19:16, 22:10, 23:7, 28:12, 40:17, 41:17, 43:2, 44:18, 44:19, 51:16, 52:21

**factual** [2] - 30:4, 30:16

**fairly** [1] - 43:15

**faith** [2] - 17:20, 50:12

**far** [3] - 13:23, 32:7, 47:24

**fast** [1] - 51:24

**February** [10] - 27:22, 30:20, 40:14, 41:10, 43:25, 50:20, 51:3, 51:5, 55:15, 55:22

**federal** [4] - 31:5, 42:25, 44:21, 54:22

**feelings** [2] - 43:16, 51:2

**felt** [1] - 14:4

**few** [2] - 5:23, 39:18

**file** [5] - 15:13, 20:11, 50:18, 51:15, 57:2

**filed** [10] - 5:10, 5:17, 6:19, 8:22, 10:14, 14:16, 24:10, 49:20, 56:20

**filings** [1] - 52:7

**findings** [1] - 51:16

**fine** [2] - 29:6, 57:3

**finish** [3] - 49:5, 57:21, 57:22

**First** [2] - 14:1, 21:12

**first** [6] - 6:11, 18:8, 21:22, 38:12, 44:15, 48:4
**fit** [1] - 47:15
**Fitchett** [23] - 1:19, 4:7, 4:12, 15:25, 17:10, 17:17, 30:2, 30:17, 31:18, 31:19, 32:10, 32:13, 32:15, 33:9, 33:13, 34:8, 34:16, 34:19, 35:10, 36:6, 37:7, 38:13, 48:4
**Fitchett's** [2] - 30:25, 31:14
**five** [5] - 21:5, 24:5, 30:9, 38:15, 53:11
**Florida** [2] - 1:21, 45:14
**focus** [2] - 28:6, 35:24
**follow** [3] - 53:24, 54:18, 55:2
**followed** [2] - 30:19, 38:14
**following** [2] - 3:1, 49:8
**footage** [2] - 16:11, 16:15
**FOR** [1] - 1:1
**forced** [1] - 11:16
**foregoing** [1] - 58:16
**forget** [2] - 6:17, 46:23
**form** [2] - 22:12, 26:7
**formal** [1] - 16:22
**forms** [1] - 25:17
**forward** [6] - 11:14, 12:25, 39:19, 39:22, 42:8, 51:13
**four** [14] - 4:2, 21:5, 24:4, 33:6, 41:13, 41:15, 41:16, 42:6, 42:15, 44:25, 45:24, 49:4
**Frank** [1] - 2:10
**frankly** [1] - 31:21
**fresh** [1] - 9:4
**Friday** [3] - 29:4, 39:5, 39:23
**front** [4] - 22:23, 40:22, 41:11, 41:22
**fulfilled** [1] - 8:25
**full** [6] - 16:8, 20:10, 26:11, 52:8, 52:25, 58:16
**full-blown** [1] - 52:8
**fully** [1] - 5:2

## G

**Gannam** [4] - 1:19, 4:12, 30:2, 33:17
**GANNAM** [10] - 30:1, 30:15, 32:8, 33:5, 35:1, 35:23, 38:11, 39:10, 39:17, 58:5
**General** [36] - 1:4, 1:15, 1:16, 14:9, 14:12, 14:17, 14:20, 15:1, 15:4, 15:6, 17:13, 17:14, 17:18, 19:6, 21:10, 22:11, 22:13, 23:6, 23:21, 24:17, 26:10, 30:3, 32:12, 32:20, 35:24, 38:1, 42:21, 46:11, 46:12, 48:11, 48:12, 48:17, 54:2, 54:11
**general** [1] - 19:9
**General's** [8] - 3:9, 3:11, 3:21, 3:24, 4:1, 9:20, 29:14, 32:11
**generally** [1] - 6:24
**genuinely** [2] - 14:4, 34:4
**George** [5] - 2:2, 2:4, 43:10, 47:3, 47:4
**given** [8] - 10:15, 11:15, 30:21, 31:9, 31:12, 31:20, 31:24, 53:13
**goal** [1] - 29:8

**Google** [1] - 22:3
**grade** [1] - 18:8
**granted** [1] - 14:15
**greatly** [1] - 52:6
**Griepp** [4] - 2:2, 3:3, 4:22, 53:8
**GRIEPP** [1] - 1:6
**ground** [2] - 24:24, 24:25
**grounds** [1] - 52:20
**guess** [3] - 6:8, 15:8, 28:8
**guidance** [1] - 7:16
**Guild** [1] - 45:9
**guys** [2] - 19:22, 49:16

## H

**hairs** [1] - 22:7
**half** [3] - 11:3, 43:17, 52:3
**Hampton** [1] - 2:15
**handle** [1] - 29:21
**happy** [1] - 27:20
**haranguing** [1] - 13:3
**harass** [4] - 30:19, 53:24, 54:18, 55:2
**harassing** [1] - 33:25
**head** [1] - 20:7
**heads** [1] - 14:3
**hear** [7] - 5:4, 12:8, 33:17, 33:23, 54:5, 55:19, 56:11
**heard** [6] - 5:6, 15:21, 48:4, 50:3, 51:12, 56:11
**hearing** [23] - 31:10, 35:17, 40:13, 41:22, 42:1, 50:9, 51:4, 51:8, 51:10, 52:8, 52:23, 54:9, 54:10, 55:8, 55:11, 55:24, 56:3, 56:4, 56:5, 56:9, 57:4, 57:5, 57:8
**heart** [1] - 22:15
**held** [2] - 34:4, 41:2
**HELD** [1] - 1:9
**help** [1] - 8:4
**hereby** [1] - 58:15
**Hoffman** [23] - 2:15, 5:10, 5:22, 6:7, 6:9, 6:13, 8:15, 10:21, 12:1, 12:8, 21:10, 22:15, 23:4, 23:6, 23:21, 29:8, 29:9, 42:20, 44:24, 45:18, 45:24, 46:10, 47:20
**Hoffman's** [3] - 12:13, 12:19, 23:18
**holding** [1] - 43:25
**Honor** [97] - 3:8, 3:12, 3:13, 3:14, 3:20, 4:3, 4:9, 4:14, 4:18, 5:21, 5:23, 6:5, 7:5, 8:6, 8:12, 8:13, 8:21, 9:7, 9:15, 10:12, 11:8, 11:21, 12:11, 12:18, 15:11, 17:7, 17:24, 18:21, 19:25, 20:16, 21:7, 21:21, 23:20, 24:8, 24:17, 24:22, 25:1, 26:4, 26:6, 26:16, 27:2, 27:6, 27:18, 27:19, 28:10, 28:11, 28:14, 30:1, 30:24, 32:5, 32:8, 33:17, 34:10, 34:14, 35:1, 35:8, 35:16, 37:1, 37:4, 38:11, 39:8, 39:10, 39:17, 39:25, 41:10, 41:11, 41:23, 43:22, 44:18, 45:25, 46:7, 46:16, 47:19, 48:8, 48:10, 48:15, 49:3, 49:11, 49:17,

49:18, 49:21, 50:3, 50:6, 51:11, 51:18, 53:7, 53:18, 53:24, 54:17, 55:13, 56:3, 56:8, 56:14, 57:16, 57:17, 58:2
**Honor's** [2] - 7:15, 39:15
**HONORABLE** [1] - 1:10
**hope** [2] - 7:10, 11:9
**hopefully** [2] - 6:3, 29:10
**hopeless** [1] - 53:12
**Horatio** [2] - 1:19, 4:11
**hours** [2] - 43:15, 43:18
**hundred** [2] - 16:7, 16:25

## I

**identified** [11] - 31:1, 31:2, 31:4, 31:7, 33:24, 34:1, 35:18, 37:4, 38:20, 43:3, 43:8
**identify** [4] - 10:25, 32:4, 34:16, 37:2
**identifying** [3] - 36:3, 36:20, 53:14
**identities** [2] - 26:13, 26:19
**illegal** [2] - 32:16, 32:17
**imagine** [2] - 43:15, 57:6
**immediately** [1] - 42:17
**impeachment** [2] - 9:6, 21:19
**impede** [1] - 28:18
**importance** [1] - 13:16
**important** [2] - 19:12, 38:2
**improper** [2] - 21:12, 23:22
**IN** [1] - 1:1
**incident** [1] - 16:11
**inclined** [1] - 14:9
**include** [1] - 31:2
**includes** [1] - 40:7
**including** [1] - 28:23
**inconvenienced** [1] - 22:22
**indicate** [1] - 19:16
**indicated** [2] - 41:13, 57:8
**indicating** [1] - 42:22
**individual** [1] - 7:13
**individuals** [2] - 8:1, 48:16
**information** [16] - 15:2, 23:10, 25:18, 26:3, 28:4, 30:4, 30:6, 30:17, 31:21, 31:25, 48:23, 52:17, 52:19, 53:4, 53:13, 54:9
**initial** [3] - 10:25, 11:3, 48:24
**injunction** [8] - 5:18, 35:17, 43:1, 50:8, 51:4, 52:8, 52:23, 57:8
**inquiries** [2] - 14:25, 19:12
**instance** [1] - 44:15
**intend** [5] - 8:19, 9:3, 12:4, 43:23, 43:25
**intending** [1] - 50:18
**intent** [1] - 36:21
**intention** [2] - 42:19, 42:20
**interest** [2] - 8:2, 48:5
**interestingly** [1] - 55:4
**interpretation** [1] - 54:1
**interrogatories** [10] - 25:10, 25:12, 25:17, 26:7, 27:20, 28:16, 29:23, 30:5, 30:13, 38:9

**interrogatory** [1] - 26:8
**intertwined** [1] - 6:10
**investigating** [1] - 35:4
**investigation** [1] - 15:19
**investigative** [1] - 15:13
**involved** [1] - 45:4
**Iowa** [1] - 2:3
**irrelevant** [1] - 24:3
**issue** [11] - 4:5, 4:16, 6:6, 14:8, 14:12, 22:14, 30:2, 37:1, 37:5, 41:19, 41:21
**issues** [8] - 5:23, 8:4, 26:13, 28:12, 28:19, 54:3, 54:14, 55:7
**it'll** [1] - 47:23
**itemize** [1] - 31:23
**items** [1] - 36:6

### J

**Jack** [1] - 54:24
**January** [13] - 1:6, 5:4, 12:16, 27:21, 27:25, 30:19, 41:3, 42:17, 42:21, 49:15, 55:14, 56:7, 58:18
**Jean** [1] - 45:3
**Jessica** [2] - 1:14, 3:23
**job** [1] - 52:11
**joint** [6] - 10:7, 44:14, 56:3, 56:5, 56:9, 56:10
**jointly** [2] - 42:12, 56:2
**Joseph** [1] - 2:4
**Judge** [1] - 4:21
**JUDGE** [2] - 1:10, 1:10

### K

**Kaminsky** [1] - 2:3
**keep** [3] - 5:3, 26:18, 26:19
**keeping** [1] - 28:21
**KENNETH** [1] - 1:6
**kind** [6] - 13:1, 13:10, 14:5, 19:8, 37:22, 44:12
**kinds** [1] - 25:25
**knowing** [2] - 14:10, 54:11
**knowledge** [4] - 7:12, 9:21, 17:19, 33:10

### L

**lack** [1] - 53:19
**laid** [1] - 50:9
**LaLande** [2] - 2:9, 4:17
**language** [1] - 53:25
**large** [2] - 52:15, 53:5
**last** [11] - 5:11, 6:13, 10:14, 11:1, 11:2, 20:18, 29:18, 31:25, 35:23, 40:21, 57:7
**late** [1] - 42:17
**latecomers** [1] - 49:9
**Laughter** [3] - 27:24, 40:24, 55:1
**law** [11] - 13:25, 16:12, 28:23, 31:3, 34:3, 34:5, 37:16, 38:6, 51:16, 54:19, 55:3

**LAW** [1] - 3:3
**Law** [2] - 2:2, 2:9
**laws** [1] - 31:5
**lawsuit** [6] - 21:11, 23:22, 26:19, 32:11, 33:15, 34:23
**Lawyers** [1] - 45:9
**lead** [1] - 21:8
**least** [3] - 19:19, 25:20, 49:8
**leave** [1] - 45:23
**Lee** [4] - 45:9, 46:1, 46:22, 47:12
**left** [1] - 45:14
**legal** [3] - 29:24, 45:11, 53:20
**Legal** [1] - 2:5
**length** [1] - 41:21
**letter** [1] - 42:4
**level** [2] - 45:20, 54:25
**Liberty** [1] - 1:20
**likely** [2] - 5:17, 21:8
**limited** [2] - 9:21, 41:14
**line** [1] - 7:6
**line-up** [1] - 7:6
**listed** [2] - 5:17, 6:18
**listen** [1] - 9:14
**lists** [2] - 52:10, 55:16, 55:23, 57:7
**literally** [1] - 48:3
**litigation** [7] - 7:14, 14:10, 14:19, 22:9, 22:12, 23:12, 50:24
**lives** [1] - 45:14
**Lloyd** [1] - 2:10
**LLP** [1] - 2:15
**local** [1] - 31:5
**look** [8] - 19:22, 36:14, 37:5, 38:12, 38:14, 39:6, 39:7, 52:4
**looked** [1] - 9:13
**looking** [7] - 9:12, 10:18, 25:9, 25:16, 30:11, 36:12, 36:15
**Lourdes** [2] - 1:14, 3:20

### M

**ma'am** [1] - 55:12
**machine** [1] - 2:21
**magistrate** [2] - 42:1, 42:2
**Magnolia** [1] - 2:3
**mail** [1] - 42:22
**mails** [1] - 24:23
**maintained** [1] - 27:5
**Maitland** [2] - 1:20, 1:21
**Martin** [2] - 2:2, 4:21
**material** [8] - 9:5, 9:6, 19:13, 23:14, 24:13, 29:24, 31:1, 36:3
**materials** [3] - 8:17, 8:18, 9:19
**matter** [8] - 6:18, 13:12, 13:22, 15:13, 18:20, 21:18, 48:22, 49:2
**matters** [3] - 14:6, 53:20, 57:22
**mean** [40] - 6:17, 7:11, 7:25, 8:2, 8:5, 9:9, 9:10, 9:12, 9:14, 10:6, 11:23, 15:7, 16:18, 16:19, 16:24, 19:1, 21:25, 23:2, 23:9, 23:16, 26:5, 26:17, 26:19,

28:15, 31:24, 34:6, 34:19, 36:14, 36:19, 36:25, 37:20, 40:9, 43:23, 44:13, 44:19, 45:19, 48:3, 48:15, 54:5, 56:3
**means** [1] - 46:1
**meat** [1] - 46:6
**media** [6] - 21:6, 21:9, 21:14, 21:24, 22:15, 24:2
**Medical** [2] - 2:14, 3:15
**meeting** [1] - 41:20
**memorialized** [1] - 18:17
**memorize** [1] - 25:16
**merits** [1] - 52:8
**Merle** [7] - 2:15, 5:10, 5:22, 10:21, 22:15, 42:19, 45:18
**message** [1] - 36:17
**met** [1] - 34:6
**Michigan** [1] - 2:11
**middle** [1] - 12:8
**midnight** [1] - 10:14
**might** [5] - 20:8, 20:25, 29:15, 31:24, 36:8
**MIHET** [49] - 4:9, 4:11, 7:15, 7:19, 8:6, 8:12, 8:21, 9:7, 11:8, 11:10, 11:21, 12:11, 12:13, 15:21, 17:7, 17:24, 18:2, 21:7, 23:20, 24:8, 24:15, 24:22, 25:1, 25:5, 25:7, 26:16, 27:19, 27:25, 28:3, 29:1, 45:16, 45:25, 46:4, 46:7, 46:10, 46:14, 46:16, 46:21, 48:10, 49:3, 49:18, 50:1, 50:3, 50:5, 50:7, 51:23, 52:6, 55:21, 58:4
**Mihet** [5] - 1:19, 4:11, 7:10, 10:15, 29:8
**mind** [2] - 7:23, 56:3
**minute** [3] - 15:22, 17:8, 44:23
**missed** [1] - 27:23
**Missouri** [1] - 2:6
**modify** [1] - 26:5
**Monday** [1] - 12:16
**MONTALVO** [1] - 58:15
**Montalvo** [4] - 1:24, 2:23, 58:19, 58:19
**month** [1] - 11:3
**morning** [3] - 11:2, 15:16, 39:23
**most** [4] - 4:6, 5:8, 32:6, 52:19
**motion** [18] - 4:23, 5:5, 5:9, 6:10, 7:8, 7:11, 7:14, 8:22, 14:15, 14:22, 43:1, 50:22, 52:13, 52:14, 52:16, 53:5, 54:6, 54:15
**motions** [11] - 4:4, 4:7, 4:16, 5:1, 5:4, 5:7, 8:8, 14:6, 39:12, 52:20, 53:18
**Movant** [1] - 2:14
**move** [2] - 8:3, 39:19, 57:19
**moved** [2] - 5:12, 26:4, 42:1, 42:3
**moving** [5] - 5:3, 13:7, 45:22, 45:23, 51:24
**MR** [74] - 4:9, 4:11, 4:14, 4:21, 7:15, 7:19, 8:6, 8:12, 8:21, 9:7, 11:8, 11:10, 11:21, 12:11, 12:13, 15:21, 17:7, 17:24, 18:2, 21:7, 22:22, 23:20, 24:8, 24:15, 24:22, 25:1, 25:5, 25:7, 26:16, 27:19, 27:25, 28:3, 29:1, 30:1, 30:15,

32:8, 33:5, 35:1, 35:23, 38:11, 39:10, 39:17, 45:16, 45:25, 46:4, 46:7, 46:10, 46:14, 46:16, 46:21, 48:10, 49:3, 49:18, 50:1, 50:3, 50:5, 50:7, 51:23, 52:6, 53:7, 53:17, 53:23, 54:17, 55:2, 55:6, 55:21, 56:8, 56:13, 56:16, 56:19, 57:17, 57:24, 58:4, 58:5
**MS** [125] - 3:8, 3:12, 3:14, 3:17, 3:20, 3:23, 3:25, 4:3, 4:18, 5:21, 6:2, 6:5, 6:22, 7:5, 8:13, 8:15, 9:9, 9:14, 10:2, 10:10, 10:12, 10:19, 10:23, 12:18, 15:11, 16:3, 16:6, 16:16, 16:21, 16:24, 17:4, 17:11, 17:19, 17:23, 18:13, 18:20, 18:23, 19:1, 19:25, 20:6, 20:9, 20:16, 20:18, 21:21, 22:5, 22:19, 23:1, 23:11, 23:18, 24:21, 26:4, 26:9, 26:21, 26:24, 27:2, 27:12, 27:15, 27:18, 28:10, 28:11, 28:12, 28:14, 28:25, 29:4, 29:7, 29:12, 29:20, 30:24, 31:11, 31:13, 32:5, 33:17, 34:10, 34:14, 34:19, 34:24, 35:4, 35:8, 35:11, 35:16, 35:22, 36:17, 36:24, 37:10, 37:14, 37:25, 38:5, 39:8, 39:14, 39:23, 39:25, 40:6, 40:16, 40:25, 43:5, 43:22, 44:4, 44:14, 45:1, 45:8, 45:17, 46:25, 47:3, 47:5, 47:10, 47:19, 47:22, 48:15, 48:21, 49:11, 49:17, 49:21, 49:24, 50:2, 50:6, 55:13, 55:20, 55:22, 56:6, 56:21, 56:25, 57:3, 57:6, 57:16, 58:2
**Mullin** [1] - 2:15
**Musco** [3] - 2:3, 43:11, 47:5
**must** [3] - 9:1, 19:10, 50:14

## N

**N375** [1] - 2:24
**nail** [1] - 33:22
**name** [2] - 31:6, 32:3
**named** [2] - 18:18, 45:3
**names** [3] - 27:5, 27:9, 33:2
**Nancy** [2] - 1:13, 3:25
**narrowing** [2] - 30:9, 35:24
**National** [1] - 45:9
**nature** [3] - 14:10, 14:11, 21:11
**nearly** [1] - 43:18
**necessarily** [1] - 10:3
**need** [29] - 13:14, 19:21, 29:12, 29:13, 30:14, 30:15, 32:11, 39:3, 39:6, 40:14, 41:23, 42:6, 42:9, 42:11, 43:20, 44:18, 46:2, 47:1, 47:16, 48:19, 49:8, 51:10, 51:11, 52:7, 52:9, 56:8, 56:10, 56:23
**needed** [2] - 41:1, 41:4
**needs** [4] - 13:5, 14:13, 23:2, 49:19
**never** [3] - 42:15, 49:10, 56:11
**new** [2] - 24:24, 43:2
**NEW** [2] - 1:1, 1:3
**New** [22] - 1:5, 1:5, 1:15, 1:17, 2:16, 2:25, 3:3, 3:9, 3:10, 3:21, 3:23, 3:25, 9:20, 14:13, 15:15, 23:5, 29:14, 45:4, 48:17, 53:23

**next** [7] - 1:23, 29:9, 47:10, 47:18, 47:21, 49:5, 49:6
**night** [5] - 5:11, 6:13, 10:14, 11:1
**nondisputed** [1] - 42:8
**nonparties** [1] - 48:15
**nonparty** [6] - 3:14, 10:3, 14:22, 23:8, 23:16, 23:17
**nonsense** [1] - 13:9
**nonsensical** [1] - 22:16
**note** [1] - 31:17
**noted** [1] - 27:6
**notes** [2] - 12:4, 58:16
**nothing** [5] - 7:23, 7:25, 23:19, 36:6
**notice** [2] - 6:9, 41:19
**noticed** [4] - 32:6, 41:15, 46:17, 49:10
**NOW** [1] - 15:15, 45:4
**number** [8] - 5:7, 10:23, 15:23, 20:10, 28:12, 40:8, 40:18, 41:6
**numerous** [1] - 31:19

## O

**OAG** [4] - 36:3, 42:7, 46:14, 49:3
**OAG's** [1] - 15:18
**object** [3] - 23:7, 27:7, 48:22
**objected** [3] - 29:24, 39:18, 39:21
**objection** [4] - 28:4, 33:23, 49:2, 52:1
**objections** [3] - 20:1, 21:5, 44:17
**objects** [2] - 30:3, 52:1
**obligations** [3] - 8:25, 11:11, 34:6
**observations** [2] - 7:20, 20:12
**observed** [1] - 7:3
**observer** [1] - 45:11
**obstreperous** [1] - 13:10
**obstructive** [1] - 28:20
**obtain** [1] - 40:3
**obtained** [2] - 48:21, 49:1
**obviously** [13] - 5:14, 6:11, 9:10, 9:21, 10:2, 12:14, 12:20, 26:4, 28:17, 29:7, 29:12, 48:7, 52:9
**occasions** [1] - 31:19
**occurred** [1] - 38:6
**October** [1] - 38:7
**OF** [4] - 1:1, 1:3, 1:9
**offered** [3] - 17:4, 18:3, 45:25
**office** [8] - 3:9, 3:11, 3:21, 3:24, 4:1, 9:21, 29:14, 51:4
**Office** [2] - 1:16, 1:25
**Offices** [1] - 2:2
**Official** [3] - 1:25, 2:23, 58:20
**often** [1] - 34:21
**Okuonghae** [1] - 2:3
**old** [1] - 24:24
**Oliveri** [1] - 4:13
**OLIVER** [4] - 4:18, 37:14, 37:25, 38:5
**once** [3] - 19:1, 26:9, 48:7
**one** [19] - 7:20, 8:15, 12:13, 16:12, 17:3, 17:9, 19:15, 21:3, 22:9, 26:6, 27:19, 32:21, 35:11, 43:17, 47:14, 47:15,

50:9, 54:12, 56:12
**ones** [6] - 20:3, 23:12, 23:13, 37:11, 43:17, 47:2
**open** [1] - 3:2
**opened** [1] - 34:25
**opinion** [1] - 23:18
**opportunity** [1] - 12:23
**oppose** [1] - 41:10
**opposed** [3] - 5:12, 41:7, 42:3
**opposing** [1] - 27:3
**order** [22] - 5:10, 7:8, 14:13, 14:20, 26:15, 26:17, 26:23, 27:4, 27:13, 27:16, 42:13, 44:14, 44:16, 49:9, 49:20, 55:17, 55:25, 56:4, 56:11, 56:18, 56:20, 57:2
**orders** [1] - 40:9
**original** [1] - 43:1
**originally** [1] - 45:1
**otherwise** [2] - 42:4, 51:15
**ought** [1] - 54:13
**outline** [1] - 11:17
**outside** [8] - 6:24, 7:2, 7:4, 15:16, 24:11, 29:10, 33:19, 34:20
**outstanding** [3] - 4:6, 5:1, 39:12
**overly** [1] - 23:16
**oversight** [1] - 42:16
**own** [2] - 30:11, 36:4

## P

**p.m** [2] - 30:19, 30:20
**page** [1] - 1:23
**pages** [1] - 24:18
**paper** [1] - 20:17
**pardon** [1] - 56:15
**part** [10] - 3:12, 6:8, 6:15, 14:5, 28:5, 32:21, 33:20, 37:14, 49:2, 52:14
**parties** [11] - 3:5, 4:15, 10:17, 14:2, 25:12, 39:15, 40:19, 43:24, 49:13, 56:21, 57:5
**party** [5] - 22:8, 22:12, 50:13, 50:19, 50:21
**passed** [1] - 48:23
**past** [2] - 18:7, 52:18
**patient** [1] - 27:9
**patients** [6] - 22:17, 24:7, 24:9, 26:14, 26:20, 27:6
**Patricia** [2] - 43:10, 47:5
**pause** [1] - 40:12
**pending** [2] - 4:23, 5:8
**people** [6] - 7:4, 7:21, 22:19, 44:3, 46:19, 54:12
**PEOPLE** [1] - 1:3
**percent** [2] - 16:7, 16:25
**perhaps** [2] - 25:23, 56:25
**peril** [1] - 11:5
**period** [5] - 16:5, 34:22, 34:23, 35:2, 53:11
**permission** [1] - 51:1
**permit** [2] - 42:25, 44:5

**permitted** [1] - 13:25
**personal** [1] - 7:12
**personally** [1] - 7:23
**persuade** [1] - 14:17
**pertain** [1] - 10:6
**photographs** [1] - 15:24
**PI** [4] - 51:8, 51:10, 51:12, 55:24
**pick** [1] - 7:5
**picture** [1] - 52:25
**picturing** [1] - 20:10
**piece** [1] - 20:18
**place** [1] - 12:14
**plaintiff** [8] - 3:7, 3:9, 3:22, 3:24, 10:12, 41:12, 50:6, 55:24
**Plaintiff** [2] - 1:5, 1:13
**plaintiff's** [1] - 36:2
**plaintiffs** [2] - 13:12, 55:16
**plan** [6] - 41:13, 41:16, 44:6, 47:12, 49:13, 57:8
**planned** [1] - 33:7
**planning** [1] - 45:15
**play** [1] - 14:5
**Plaza** [2] - 2:15, 2:24
**PLLC** [1] - 2:5
**PO** [2] - 2:6, 2:11
**point** [23] - 8:21, 14:12, 14:14, 14:19, 16:19, 16:24, 19:1, 19:2, 19:20, 22:6, 26:6, 32:18, 40:10, 41:11, 44:19, 50:12, 50:25, 51:17, 52:18, 52:21, 52:22, 53:3, 53:25
**pointed** [2] - 32:13, 32:15
**points** [1] - 6:8
**policy** [1] - 16:6
**portion** [3] - 39:19, 52:16, 53:5
**posed** [1] - 28:15
**position** [10] - 12:18, 19:15, 30:8, 32:17, 40:3, 44:10, 45:2, 50:17, 51:15, 55:11
**positions** [1] - 54:7
**possession** [3] - 17:12, 31:1, 31:25
**possibility** [1] - 26:7
**possible** [2] - 8:4, 12:22
**possibly** [1] - 28:19
**posture** [1] - 52:11
**potential** [1] - 6:19
**practical** [2] - 52:13, 54:4
**practically** [1] - 54:13
**practice** [1] - 50:22
**prejudicial** [1] - 8:23
**preliminary** [7] - 35:17, 43:1, 50:8, 51:3, 52:7, 52:23, 57:7
**premised** [1] - 53:19
**prepare** [2] - 29:16, 36:14
**prepared** [1] - 12:23
**present** [1] - 34:24
**presented** [3] - 11:5, 36:2, 51:10
**presumably** [1] - 54:2
**presume** [2] - 50:20, 50:22
**pretrial** [21] - 40:6, 40:8, 40:16, 42:10, 42:16, 43:13, 44:11, 44:12, 44:14,

44:16, 49:20, 49:24, 49:25, 51:15, 55:16, 55:25, 56:4, 56:5, 56:9, 56:10, 57:2
**pretty** [3] - 6:23, 29:5, 54:1
**preview** [1] - 47:24
**Priegue** [3] - 46:8, 47:13, 47:25
**primary** [1] - 30:3
**principal** [1] - 7:4
**privilege** [1] - 20:19
**problem** [11] - 10:2, 11:24, 12:2, 18:8, 19:9, 19:23, 36:15, 37:14, 49:5, 50:7, 51:25
**problems** [2] - 12:4
**proceed** [5] - 12:4, 14:7, 42:5, 51:3, 51:5
**proceeded** [1] - 19:6
**Proceedings** [1] - 2:21
**proceedings** [3] - 3:2, 58:7, 58:17
**process** [1] - 36:3
**produce** [6] - 11:12, 11:15, 15:2, 19:6, 32:2
**produced** [4] - 2:21, 9:17, 24:16, 32:1
**product** [5] - 8:23, 11:17, 11:20, 12:5, 31:22
**production** [4] - 25:11, 25:22, 30:11, 36:4
**productive** [1] - 8:5
**progress** [1] - 28:18
**progressed** [1] - 50:12
**promise** [2] - 22:8, 47:15
**proof** [2] - 13:23, 13:24
**proper** [1] - 32:22
**properly** [4] - 9:20, 10:4, 12:23, 29:16
**proposal** [2] - 52:4, 55:17
**propose** [5] - 42:11, 44:15, 47:10, 55:15, 55:20
**proposed** [3] - 42:12, 51:16, 55:25
**proposition** [1] - 9:1
**prosecuting** [1] - 23:14
**protective** [8] - 5:10, 7:8, 26:15, 26:17, 26:23, 27:4, 27:13, 27:15
**protest** [1] - 34:20
**protestors** [2] - 6:24, 34:25
**provide** [9] - 9:1, 18:2, 18:4, 20:1, 28:3, 30:9, 39:5, 44:21, 55:16
**provided** [11] - 11:1, 11:22, 15:6, 15:12, 27:3, 30:25, 31:5, 31:7, 32:3, 32:12, 38:11
**provides** [1] - 7:20
**providing** [1] - 29:1
**proving** [1] - 35:15
**public** [3] - 6:18, 9:2, 21:25
**published** [1] - 22:1
**pulled** [1] - 16:10
**PULLMAN** [69] - 3:8, 3:12, 4:3, 10:12, 10:19, 10:23, 15:11, 16:3, 16:6, 16:6, 20:9, 20:16, 20:18, 27:2, 28:10, 28:12, 29:20, 30:24, 31:11, 31:13, 32:5, 33:17, 34:10, 34:14, 34:24, 35:4, 35:8,

35:11, 35:16, 35:22, 36:17, 36:24, 37:10, 39:8, 39:14, 39:23, 39:25, 40:6, 40:16, 40:25, 43:5, 43:22, 44:4, 44:14, 45:1, 45:8, 45:17, 46:25, 47:3, 47:5, 47:10, 47:19, 48:21, 49:11, 49:17, 49:21, 49:24, 50:2, 50:6, 55:13, 55:20, 55:22, 56:6, 56:21, 56:25, 57:3, 57:6, 57:16, 58:2
**Pullman** [6] - 1:13, 3:8, 16:2, 20:7, 26:24, 39:13
**purely** [2] - 41:8, 43:22
**purported** [1] - 11:11
**purpose** [2] - 21:12, 23:22
**purposes** [2] - 4:6, 7:14
**pursue** [2] - 8:9, 44:7
**pursuing** [4] - 7:11, 7:14, 8:11, 52:21
**put** [9] - 7:19, 12:25, 14:3, 28:9, 29:8, 34:17, 35:5, 41:16, 45:15
**puts** [1] - 54:22
**putting** [1] - 42:23

## Q

**quash** [2] - 6:10, 14:22
**questioning** [1] - 11:17
**questions** [6] - 25:19, 25:23, 25:25, 28:15, 37:16, 38:5
**quick** [1] - 29:5
**quickly** [2] - 12:22, 28:19
**quote** [1] - 15:5

## R

**raise** [2] - 28:13, 37:1
**raised** [2] - 53:20, 53:21
**raises** [1] - 54:2
**Ranville** [2] - 43:11, 47:5
**rarely** [1] - 54:23
**RDR** [2] - 2:23, 58:19
**re** [1] - 51:11
**re-sit** [1] - 51:11
**reach** [1] - 40:2
**reaction** [1] - 14:4
**read** [2] - 6:22, 21:1
**reading** [3] - 5:16, 7:25
**really** [6] - 23:5, 23:8, 32:14, 33:1, 48:8, 48:14
**reason** [6] - 6:12, 9:19, 11:15, 41:4, 43:24, 49:13
**receive** [1] - 50:21
**received** [6] - 10:9, 10:13, 10:20, 15:14, 16:3
**recent** [1] - 45:10
**recently** [1] - 5:8
**reconsider** [2] - 8:2, 8:7
**record** [2] - 6:18, 9:2, 48:10
**recording** [2] - 16:9, 18:16
**recordings** [3] - 15:24, 17:9, 17:17
**redacted** [4] - 8:17, 10:13, 10:20, 27:3
**redactions** [1] - 27:5

**reference** [1] - 31:17
**referred** [1] - 35:19
**referring** [5] - 31:14, 56:13, 56:16, 56:17, 56:18
**reflect** [1] - 24:10
**refuse** [1] - 44:10
**refused** [1] - 18:2
**regard** [3] - 10:8, 12:12, 53:23
**regarding** [2] - 28:13, 53:10
**register** [2] - 19:3, 44:17
**relevance** [4] - 21:4, 21:5, 24:3, 45:19
**relevant** [7] - 7:1, 9:17, 11:1, 14:25, 21:15, 29:15, 45:20
**reluctantly** [1] - 41:9
**rely** [8] - 31:10, 32:21, 33:3, 33:8, 35:10, 37:22, 38:16, 38:24
**relying** [11] - 32:20, 34:8, 34:11, 34:15, 35:14, 36:5, 36:8, 36:13, 37:9, 39:4
**remaining** [1] - 12:15
**remembered** [1] - 38:22
**Rena** [2] - 2:14, 5:21
**repeated** [1] - 51:10
**repeatedly** [1] - 10:24
**reported** [1] - 2:21
**Reporter** [5] - 1:24, 1:25, 2:23, 2:23, 58:20
**REPORTER'S** [1] - 58:14
**reports** [1] - 24:10
**represent** [6] - 3:14, 3:16, 4:2, 4:15, 12:19, 51:1
**represented** [4] - 40:22, 40:25, 41:3, 48:24
**reproduce** [1] - 24:18
**request** [12] - 8:15, 14:23, 15:9, 15:23, 16:23, 17:13, 17:22, 18:15, 20:22, 20:23, 21:1, 29:23
**requested** [4] - 6:15, 15:2, 16:1, 41:5
**requests** [4] - 8:24, 15:12, 19:7, 23:5
**require** [1] - 31:22
**required** [1] - 21:17
**requires** [1] - 14:1
**research** [1] - 22:3
**resolution** [1] - 41:21
**resolve** [7] - 14:6, 14:12, 52:4, 52:25, 54:12, 55:8, 55:10
**resolved** [6] - 8:3, 13:21, 18:9, 37:17, 39:11, 52:15
**resolving** [2] - 4:6, 53:2
**respect** [7] - 6:7, 6:24, 7:8, 14:8, 27:20, 28:7, 53:10
**respond** [18] - 6:14, 8:8, 16:18, 17:21, 17:22, 18:14, 19:12, 19:13, 19:15, 20:21, 24:4, 26:2, 28:23, 29:3, 30:23, 42:2, 42:3, 44:10
**responded** [3] - 8:24, 16:20, 42:15
**responding** [1] - 38:9
**response** [14] - 5:16, 15:6, 15:8, 15:10, 15:12, 16:22, 17:3, 18:11, 19:7, 19:14, 26:2, 29:2, 30:6, 34:2

**responses** [4] - 20:1, 27:11, 28:3, 28:17
**responsibility** [1] - 21:2
**responsible** [1] - 13:2
**responsibly** [1] - 13:15
**responsive** [9] - 10:24, 18:19, 18:25, 19:4, 19:20, 20:4, 20:23, 20:25, 24:16
**rest** [2] - 3:10, 53:5
**result** [1] - 33:11
**resume** [4] - 57:12, 57:13, 57:17, 57:18
**resumption** [1] - 57:24
**retained** [4] - 16:4, 16:7, 16:14, 17:11
**retention** [1] - 16:6
**reveal** [1] - 11:16
**reverse** [1] - 54:23
**review** [5] - 6:15, 8:18, 10:16, 12:7, 44:16
**Richter** [1] - 2:15
**rights** [1] - 21:13
**Road** [1] - 2:3
**Rockefeller** [1] - 2:15
**Roger** [3] - 1:19, 4:12, 30:1
**Ronald** [2] - 43:10, 47:3
**Room** [1] - 2:24
**Rosado** [2] - 1:14, 3:20
**ROSADO** [1] - 3:20
**route** [1] - 27:20
**Rule** [1] - 17:5
**rule** [1] - 51:9
**rules** [2] - 42:25, 44:22
**Ryan** [1] - 2:4

**S**

**safe** [1] - 10:19
**sanctions** [3] - 5:13, 5:14, 6:1
**Sandra** [2] - 1:13, 3:8
**satisfied** [3] - 30:20, 46:6, 53:17
**Saturday** [2] - 15:16, 55:21
**saw** [2] - 31:19, 33:19
**schedule** [4] - 29:13, 40:20, 42:24, 46:1
**scheduled** [4] - 12:14, 39:23, 40:13, 52:24
**scheduling** [6] - 28:13, 40:1, 40:3, 40:5, 41:23, 57:14
**Schneiderman** [1] - 42:21
**SCHNEIDERMAN** [1] - 1:4
**Scott** [4] - 15:25, 17:10, 17:17, 37:7
**search** [1] - 25:24
**seated** [1] - 3:5
**second** [1] - 16:9
**Second** [1] - 54:21
**seconds** [1] - 22:8
**security** [1] - 16:10
**see** [5] - 8:20, 33:21, 34:2, 50:19, 51:2
**seek** [4] - 30:4, 30:5, 46:25, 47:16
**seeking** [7] - 8:18, 24:17, 24:18, 30:16, 37:3, 44:20
**seem** [2] - 19:3, 22:7
**send** [1] - 42:12

**sending** [1] - 45:5
**sense** [1] - 41:17
**sensitivity** [2] - 26:20, 27:7
**sent** [4] - 36:17, 42:2, 42:4, 42:21
**separation** [1] - 23:3
**series** [2] - 5:1, 34:16
**serious** [4] - 13:12, 13:13, 13:14, 54:2
**serve** [2] - 7:13, 48:11
**served** [2] - 30:5, 48:3
**service** [3] - 48:18, 48:22, 49:2
**Services** [1] - 2:5
**set** [9] - 27:21, 29:17, 41:2, 41:10, 42:14, 44:11, 55:15, 56:7, 58:1
**seven** [2] - 20:1, 43:15, 43:18
**several** [2] - 43:5, 43:6
**shape** [1] - 22:12
**Sheppard** [1] - 2:15
**shield** [1] - 10:16
**shoes** [1] - 23:17
**Short** [1] - 40:12
**shorthand** [1] - 2:21
**shot** [1] - 27:21
**shoving** [1] - 33:25
**show** [4] - 13:4, 24:23, 35:9, 37:3
**showed** [1] - 34:25
**showing** [1] - 34:20
**shown** [3] - 13:24, 13:25, 34:8
**shred** [1] - 20:17
**side** [4] - 3:18, 7:19, 7:20, 8:4
**sides** [4] - 13:14, 13:17, 13:19, 43:16
**sign** [1] - 27:15
**signed** [1] - 27:17
**simplify** [1] - 52:6
**simply** [6] - 18:4, 24:15, 30:12, 32:18, 32:24, 33:13
**single** [3] - 19:13, 19:20, 20:17
**sit** [3] - 30:21, 51:11, 57:11
**sitting** [5] - 22:10, 50:25, 51:1, 51:14, 51:21
**situation** [2] - 11:25, 38:19
**six** [10] - 24:6, 30:9, 38:15, 42:22, 42:25, 44:2
**skeptical** [1] - 47:14
**solely** [1] - 53:19
**someone** [2] - 33:25, 45:6
**sometimes** [1] - 18:6
**somewhat** [3] - 6:10, 15:4, 52:11
**somewhere** [1] - 15:3
**soon** [2] - 8:3, 34:25
**sooner** [1] - 29:10
**sorry** [9] - 3:18, 10:10, 27:21, 36:24, 39:17, 46:15, 47:12, 55:13, 55:22
**sort** [3] - 13:7, 26:11, 47:24
**specific** [4] - 7:20, 36:20, 52:22, 54:8
**specifically** [1] - 17:3, 46:21
**specificity** [2] - 53:10, 53:19
**splitting** [1] - 22:7
**spoken** [1] - 49:6
**staff** [1] - 20:11

**stage** [2] - 14:10, 51:12
**stake** [1] - 4:20
**stand** [2] - 23:16, 45:15
**standard** [1] - 24:4
**standing** [5] - 52:15, 52:20, 53:2, 53:21, 54:14
**started** [1] - 42:18
**starts** [1] - 57:4
**state** [5] - 30:12, 31:5, 33:8, 36:5, 38:23
**STATE** [1] - 1:3
**State** [4] - 1:4, 1:15, 3:9, 3:21
**state's** [1] - 32:17
**statement** [10] - 14:24, 19:9, 19:21, 21:23, 21:24, 36:12, 39:3, 39:5, 51:16
**statements** [8] - 13:6, 21:7, 21:9, 21:16, 24:2, 36:19, 36:22, 37:6
**States** [2] - 2:24, 14:21
**STATES** [2] - 1:1, 1:10
**status** [1] - 3:4
**STATUS** [2] - 1:4, 1:9
**statute** [1] - 54:22
**stay** [1] - 41:2
**stenographic** [1] - 58:16
**Stephen** [1] - 2:5
**Steve** [1] - 53:7
**stick** [1] - 41:15
**stifle** [1] - 21:12
**still** [10] - 10:14, 12:22, 29:5, 30:11, 36:3, 36:14, 36:15, 39:16, 44:8, 52:9
**stood** [1] - 7:21
**straight** [2] - 6:6, 57:20
**strike** [1] - 29:19
**strong** [1] - 43:16
**stuff** [4] - 25:16, 36:8, 36:15, 37:24
**subject** [3] - 5:19, 6:20, 25:10
**submissions** [2] - 40:17, 42:10
**submit** [7] - 40:8, 42:12, 44:14, 44:15, 44:17, 55:25, 56:2
**submitted** [2] - 48:24, 56:4
**subpoena** [7] - 5:20, 6:9, 6:10, 14:23, 15:6, 15:23, 25:3
**subpoenas** [1] - 48:12
**sued** [2] - 30:18, 32:23
**suffice** [1] - 11:21
**sufficient** [1] - 53:1
**suggest** [1] - 51:6
**suggested** [2] - 26:6, 29:1
**suggesting** [1] - 14:4
**suing** [2] - 22:14, 22:18
**Suite** [1] - 2:10
**summaries** [1] - 24:10
**summer** [1] - 35:5
**supplied** [1] - 23:9
**support** [3] - 4:23, 5:18, 25:14
**supposedly** [1] - 33:10

### T

**table** [3] - 3:10, 3:19, 22:10

**tad** [1] - 54:22
**Taliban** [1] - 21:15
**tapes** [1] - 53:15
**tat** [4] - 13:10, 43:21, 49:6, 49:12
**teacher** [1] - 18:8
**team** [1] - 51:20
**technically** [1] - 25:12
**temperature** [1] - 13:5
**ten** [5] - 4:22, 28:17, 44:20, 53:8, 53:11
**terabytes** [1] - 41:5
**terms** [3] - 28:20, 38:9, 57:14
**terribly** [1] - 54:8
**testified** [1] - 39:1
**testify** [15] - 5:20, 41:14, 43:23, 44:6, 44:24, 45:11, 45:24, 46:3, 46:4, 46:6, 46:20, 47:13, 49:13, 53:16, 57:9
**testifying** [5] - 43:4, 43:24, 44:8, 45:6, 45:13
**testimony** [8] - 9:4, 34:12, 34:15, 36:19, 36:24, 37:22, 45:3, 53:25
**THE** [167] - 1:1, 1:1, 1:3, 1:10, 3:3, 3:5, 3:10, 3:16, 3:18, 4:2, 4:4, 4:10, 4:13, 4:15, 4:19, 4:25, 5:25, 6:3, 6:17, 7:1, 7:7, 7:17, 7:24, 8:7, 8:14, 9:5, 9:8, 9:12, 9:23, 10:5, 10:18, 10:22, 11:4, 11:9, 11:19, 11:23, 12:12, 13:1, 15:20, 15:22, 16:5, 16:15, 16:17, 16:22, 17:1, 17:8, 17:16, 17:21, 18:1, 18:6, 18:14, 18:22, 18:24, 19:8, 20:3, 20:14, 20:17, 20:21, 22:2, 22:17, 22:21, 22:24, 23:9, 23:15, 23:24, 24:13, 24:20, 24:24, 25:2, 25:6, 25:8, 26:8, 26:15, 26:17, 26:22, 27:1, 27:10, 27:13, 27:17, 27:23, 28:2, 28:8, 28:22, 29:3, 29:6, 29:11, 29:17, 29:21, 30:14, 30:23, 31:9, 31:12, 32:3, 33:2, 34:7, 34:11, 34:15, 34:22, 35:2, 35:7, 35:9, 35:14, 35:21, 36:11, 36:22, 37:8, 37:11, 37:19, 38:3, 38:8, 38:25, 39:9, 39:11, 39:21, 39:24, 40:5, 40:11, 40:13, 40:23, 43:4, 43:21, 44:2, 44:12, 44:23, 45:6, 45:21, 46:2, 46:5, 46:9, 46:12, 46:15, 46:18, 46:23, 47:2, 47:4, 47:8, 47:17, 47:20, 48:19, 49:15, 49:19, 49:22, 49:25, 50:4, 51:22, 51:25, 52:12, 53:13, 53:21, 54:4, 54:20, 55:4, 55:7, 55:18, 56:5, 56:10, 56:15, 56:17, 56:20, 56:23, 57:1, 57:4, 57:10, 57:19, 57:25, 58:3, 58:6
**themselves** [2] - 13:3, 21:17
**theory** [1] - 43:21
**therefore** [1] - 15:2
**they've** [11] - 32:5, 32:6, 33:2, 33:19, 41:13, 43:15, 45:1, 45:17, 47:13, 49:9
**thinking** [1] - 25:15
**third** [3] - 50:13, 50:18, 50:21
**third-party** [2] - 50:13, 50:21
**Thomas** [3] - 2:9, 43:11, 47:5
**three** [26] - 33:6, 41:4, 43:6, 43:8, 43:9, 43:19, 43:20, 44:5, 44:24, 45:10,

45:23, 46:2, 46:5, 46:19, 46:25, 47:11, 47:12, 47:14, 47:15, 48:16, 49:4, 49:6, 49:9
**tit** [4] - 13:10, 43:21, 49:6, 49:12
**today** [9] - 4:5, 4:20, 8:10, 12:14, 28:6, 30:21, 46:19, 48:6
**together** [2] - 39:16, 44:17
**tolerate** [1] - 13:8
**tomorrow** [1] - 8:11
**took** [2] - 43:18, 50:10
**top** [1] - 20:7
**topics** [4] - 30:3, 30:16, 39:18, 42:9
**total** [1] - 42:23
**tough** [1] - 24:25
**towards** [1] - 13:21
**transcript** [3] - 2:21, 58:16, 58:17
**TRANSCRIPT** [1] - 1:9
**transcription** [1] - 2:21
**TRASANDE** [1] - 3:25
**Trasande** [2] - 1:13, 3:25
**treating** [1] - 23:21
**tremendous** [1] - 20:10
**trial** [30] - 27:21, 28:2, 28:5, 28:6, 28:9, 28:21, 32:19, 36:2, 37:2, 37:3, 38:21, 41:2, 41:10, 43:4, 43:25, 44:8, 49:13, 50:3, 50:9, 50:17, 50:23, 51:2, 51:9, 51:10, 51:12, 51:18, 52:3, 52:9, 55:24
**tried** [2] - 50:19, 52:3
**true** [4] - 23:8, 37:12, 58:16, 58:16
**trust** [1] - 12:16
**try** [7] - 14:2, 23:5, 40:20, 54:23, 55:8, 57:1, 57:20
**trying** [6] - 19:2, 25:16, 28:18, 28:20, 42:4, 48:7
**Tupelo** [1] - 2:6
**turn** [7] - 16:1, 16:13, 19:17, 20:5, 20:15, 29:18, 56:1
**turned** [29] - 9:20, 10:11, 10:4, 11:6, 12:2, 12:7, 12:10, 14:25, 15:4, 15:7, 15:10, 15:11, 15:17, 16:13, 16:15, 17:13, 17:17, 19:5, 19:14, 19:17, 19:18, 20:23, 21:1, 23:14, 34:9, 36:22, 41:6
**turning** [2] - 26:13, 37:7
**two** [6] - 7:19, 29:9, 45:10, 47:23, 48:19, 51:7
**Tyler** [1] - 2:9
**type** [1] - 35:15

### U

**ultimately** [1] - 13:22
**unable** [2] - 40:1, 40:3
**under** [1] - 7:10
**understood** [5] - 6:5, 18:13, 19:25, 27:14, 28:25
**unfortunately** [1] - 39:14
**UNITED** [2] - 1:1, 1:10
**United** [2] - 2:24, 14:21
**universe** [1] - 36:6

**unless** [3] - 17:2, 51:25, 57:6
**unredacted** [1] - 27:4
**up** [18] - 5:8, 5:25, 7:6, 13:4, 14:18, 15:22, 16:8, 29:8, 34:20, 34:25, 35:6, 37:3, 37:22, 37:23, 38:14, 40:21, 48:1, 52:3
**updates** [1] - 24:10
**upheld** [1] - 54:22

### V

**valuable** [1] - 33:13
**value** [1] - 7:23
**version** [1] - 33:22
**victim** [1] - 22:13
**video** [15] - 15:16, 15:18, 15:24, 16:3, 16:7, 16:18, 17:9, 17:16, 30:22, 32:13, 32:25, 35:18, 38:16, 41:5
**videos** [13] - 31:4, 31:16, 33:24, 34:9, 34:12, 35:2, 35:7, 35:9, 35:10, 35:12, 35:14, 36:21, 37:6
**view** [2] - 6:9, 32:16
**violated** [1] - 34:5
**violating** [1] - 31:5
**violation** [3] - 16:12, 31:3, 34:3
**violations** [2] - 37:16, 38:6
**volume** [2] - 41:8, 41:24
**volunteer** [1] - 20:12
**Volunteer** [2] - 15:15, 45:5
**volunteers** [2] - 23:1
**Vrabie** [1] - 2:14
**vs** [1] - 1:6

### W

**wait** [3] - 15:22, 17:8, 44:23
**waiting** [2] - 27:4, 51:23
**walk** [1] - 40:4
**wants** [4] - 29:19, 30:17, 37:4, 37:15
**Wednesday** [1] - 8:10
**week** [12] - 28:17, 29:4, 39:5, 41:3, 47:10, 47:18, 47:21, 49:5, 49:6, 49:9, 55:24, 57:6
**weeks** [1] - 29:9
**Weinstein** [1] - 54:24
**whatsoever** [1] - 23:8
**WHEREUPON** [2] - 3:1, 58:7
**whole** [1] - 5:1
**willing** [3] - 36:9, 39:4, 46:22
**wind** [1] - 48:1
**wish** [1] - 11:12
**wit** [1] - 3:2
**withdraw** [2] - 44:6, 45:25
**withdrawal** [1] - 44:6
**withdrawing** [1] - 7:17
**withdrawn** [1] - 29:25
**withdrew** [2] - 45:2, 45:16
**witness** [16] - 5:17, 6:19, 9:3, 18:4, 25:23, 32:19, 33:3, 36:24, 38:22, 39:1, 43:2, 52:10, 55:23, 56:12, 57:7

**witness'** [2] - 9:4, 33:10
**witnesses** [27] - 26:13, 26:18, 27:5, 31:24, 32:4, 32:10, 33:4, 33:8, 33:11, 33:16, 34:12, 34:16, 36:20, 37:8, 37:10, 38:20, 38:21, 42:23, 42:25, 43:19, 44:2, 44:7, 48:12, 51:11, 53:15, 57:15
**woman** [2] - 45:3, 45:9
**Women's** [1] - 2:14
**words** [2] - 8:17, 19:14
**works** [1] - 45:4
**Wright** [1] - 2:10
**writing** [2] - 18:12, 18:14
**wrote** [1] - 20:12

### Y

**year** [3] - 16:8, 35:4, 45:10
**years** [2] - 34:21, 53:11
**YORK** [2] - 1:1, 1:3
**York** [22] - 1:5, 1:5, 1:15, 1:17, 2:16, 2:25, 3:3, 3:9, 3:11, 3:21, 3:23, 3:25, 9:20, 14:13, 15:15, 23:6, 29:14, 45:4, 48:17, 53:23
**yourself** [1] - 22:4