**1**

<pre>
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2

 3   PEOPLE OF THE STATE OF NEW YORK,   ) Civil Action
     by ERIC T. SCHNEIDERMAN, Attorney  ) No. 17-3706 (CBA)
 4   General of the State of New York,  )
                                        ) STATUS CONFERENCE
 5                        Plaintiff,    )
                                        ) Brooklyn, New York
 6              -against-               ) February 2, 2018
                                        ) 3:30 p.m.
 7   KENNETH GRIEPP, et al.,            )
                                        )
 8                        Defendants.
     _____
 9
                TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
10           BEFORE THE HONORABLE CAROL BAGLEY AMON
                  UNITED STATES DISTRICT JUDGE
11   _____

12                    A P P E A R A N C E S

13   For the Plaintiff:       SANDRA PULLMAN, ESQ.
                              NANCY TRASANDE, ESQ.
14                            JESSICA ATTIE, ESQ.

15                            Assistant Attorneys General
                              State of New York
16                            Office of the Attorney General
                              120 Broadway
17                            New York, New York 10271

18
     For Defendant            HORATIO G. MIHET, ESQ.
19   Fitchett                 Liberty Counsel
                              1053 Maitland Center Commons Blvd.
20                            Maitland, Florida 32751

21

22

23

24

25
</pre>

2

1              A P P E A R A N C E S:  (Continued)

2   For Defendants          MARTIN A. CANNON, ESQ.
    Griepp, R. George,      Cannon Law Offices
3   Musco, R. Doe,          20374 Magnolia Road
    Okuonghae, Kaminsky,    Crescent, Iowa 51526
4   B. George, S. Doe,
    Ryan, and Joseph:

5

6
    For Movant Choices      RENA ANDOH, ESQ.
7   Women's Medical         DANIELLE VRABIE, ESQ.
    Center and              Sheppard Mullin Richter & Hampton
8   LLP
    Merle Hoffman           30 Rockefeller Plaza
9                           New York, New York 10112

10

11

12

13
    Court Reporter:   Anthony D. Frisolone, FAPR, RDR, CRR, CRI
14                    Official Court Reporter
                      Telephone: (718) 613-2487
15                    Facsimile: (718) 613-2694
                      E-mail: Anthony_Frisolone@nyed.uscourts.gov
16
    Proceedings recorded by computerized stenography.  Transcript
17  produced by Computer-aided Transcription.

18

19

20

21

22

23

24

25

*Oral Argument*                                                        3

1           (In open court.)

2           COURTROOM DEPUTY:  All rise.  The United States

3  District Court for the Eastern District of New York is now in

4  session.  The Honorable Carol Bagley Amon is now presiding.

5           (Honorable Carol Bagley Amon takes the bench.)

6           COURTROOM DEPUTY:  Calling civil cause for oral

7  argument in Docket No. 17-CV-3706, *People of the State of New*

8  *York against Kenneth Griepp, et al.*.

9           Counsel, please note your appearances for the

10 record.

11          MS. PULLMAN:  For the plaintiff, People of the State

12 of New York, New York State Attorney General by Sandra

13 Pullman, Nancy Trasande, and Jessica Attie.

14          Good afternoon, Your Honor.

15          MR. CANNON:  For the defendant, Kenneth Griepp, et

16 al., Martin Cannon and Horatio Mihet.

17          Good afternoon, Your Honor.

18          COURTROOM DEPUTY:  People of the State of New York

19 by Schneider by versus Griepp, 13-CV-3 706 on for oral

20 argument.

21          THE COURT:  State your appearances for record for

22 plaintiffs.

23          MS. PULLMAN:  Sandra Pullman from the New York State

24 Attorney General's office for the plaintiff.

25          THE COURT:  Good afternoon.

*Oral Argument*        **4**

1       MS. TRASANDE:  Nancy Trasande.

2       MS. ATTIE:  Jessica Attie for the plaintiff.

3       THE COURT:  And for the defendants.

4       MR. CANNON:  Martin Cannon for the Ken Griepp

5   defendants, Judge.

6       THE COURT:  Good afternoon.

7       MR. MIHET:  Horatio Mihet for the Kenneth Griepp

8   defendants.  Your Honor, my colleague representing the Land

9   and Braxton defendants is unable to be with us but has

10  authorized me to represent their position for this hearing as

11  well.

12       THE COURT:  And we have the non-party Choices.

13       MS. ANDOH:  Rena Andoh Sheppard, Mullin, Richter &

14  Hampton, for Choices Women's Medical Center.

15       MS. VRABIE:  Danielle Vrabie also for Choices.

16       THE COURT:  Everyone can be seated.

17       I understand that a discovery dispute, those of you

18  who want to characterize it as that, has been brought to the

19  Court's attention.  I would ask the parties to pay a little

20  bit, particularly defendants, pay a little bit closer

21  attention to the Court's rule.  You know, I get emergency

22  applications.  I understand why you thought it was important

23  to get this resolved, but replies are filed.  I think there

24  was a complaint about Choices going over the limit and then I

25  get a reply paper where replies aren't even authorized and

*Oral Argument*                                                  **5**

1    that was over the limit.  So these are rules that I would ask

2    the parties, particularly the defendants, to observe.

3         Let me see if I can synthesize this and if I

4    understand this and maybe we can go from here.  The parties

5    can correct it if I have a misimpression.

6         There exists among the materials turned over in

7    discovery what, for want of a better term, I guess, are

8    questionnaires that were filled out by patients at Choices.  I

9    don't know the number of these questionnaires, but I, from

10   defendant's papers, I am assuming that at least four of these

11   questionnaires had information that would be deemed favorable

12   to the defendants.

13        Is that correct so far?

14        MR. MIHET:  Yes, Your Honor.  That was meant to be a

15   sampling.  I'll represent to the Court I think there are

16   between 2 or 300 of these out there.

17        THE COURT:  Favorable?

18        MR. MIHET:  We would say all of them are favorable.

19   I'm sure my colleague would disagree.

20        THE COURT:  All are favorable?  Then if every one of

21   the questionnaires is favorable, there's an easy solution --

22   they all come into evidence at the hearing.  Doesn't that end

23   the matter?  They all come in as exhibits.

24        MR. MIHET:  I'm sure my colleagues would disagree

25   and they're going to try to argue their own inferences from

*Oral Argument*                                                        6

1   these, so some of these are --

2          THE COURT:  You just said to me, though, that you

3   view them to be all favorable.  What I thought was that there

4   was a discrete portion of those that you believed were

5   favorable; that you were seeking the names of those

6   individuals so that you could call them in your case.  If your

7   viewpoint is that they're all favorable, then I think the easy

8   solution to that would be that we admit all of them into

9   evidence at the hearing.

10          MS. ANDOH:  Your Honor, just on behalf of Choices.

11          We'd certainly be willing to give you, give the

12   parties a declaration authenticating them as business records

13   for that purpose as long as the names and phone numbers and

14   contact information remain redacted.  We would certify them

15   all.

16          MR. MIHET:  Your Honor, I may be overly optimistic

17   when I say, "All are favorable."  I would read them that way,

18   but I'm sure --

19          THE COURT:  Then let that be --

20          MR. MIHET:  Stipulate --

21          THE COURT:  -- the end of it.

22          They'll all come into evidence.  You can argue that

23   what's favorable without the need to have to bring these

24   people down here.  I had actually thought that you were

25   objecting to the bulk of them, and if that were the case then

*Oral Argument*                                                    7

1   we'd have to sift out in fairness what we would need.  But I

2   think the answer to that is, let them all come in and make

3   your arguments from them.  And that protects -- it gets you

4   what you're interested in which is the fact that you think

5   they're favorable and to protect the patient confidentiality.

6          MR. MIHET:  The problem we have, your Honor, is

7   they're going to take some language from them and argue that

8   it's not favorable.  And then we're at a distinct disadvantage

9   and.

10         THE COURT:  You're going to argue information from

11  them that is favorable that they may take that position with.

12  I thought we had a very different situation here.

13         MR. MIHET:  We do --

14         THE COURT:  I misunderstood it.

15         MR. MIHET:  The bigger problem, your Honor, is what

16  they're planning to do.  We learned this last week at

17  depositions.  They're planning to have Choices employees

18  testify not from what they learned from these questionnaires,

19  but what they were allegedly told by unidentified patients

20  regarding their experiences with the defendants.

21         THE COURT:  I thought this was just things that they

22  witnessed?  I thought the escorts were only going to testify

23  to things that they observed.

24         Is that correct, Ms. Pullman?

25         MS. PULLMAN:  That's correct, your Honor.  I think

*Oral Argument*                                        8

 1    that Mr. Mihet is referring to staff members from Choices who

 2    have -- who executed declarations that were attached to our

 3    original preliminary injunction.

 4            THE COURT:  You're not calling them.

 5            MS. PULLMAN:  We're calling the staff members who

 6    are testifying about their personal interactions with patients

 7    who have come in and said, I'm 30 minutes late.

 8            THE COURT:  That's hearsay.

 9            MS. PULLMAN:  It is, your Honor.  And, well, we

10    think there are some exceptions.

11            THE COURT:  That raises a question, though.

12            MR. MIHET:  That's our main problem.

13            THE COURT:  That raises a question because then

14    they're going to be talking about their interactions with

15    patients and they can't go behind that.

16            MS. PULLMAN:  We have two answers to that, your

17    Honor.  One is certainly hearsay is an admissible at a

18    preliminary injunction hearing.

19            THE COURT:  I understand that.

20            MS. PULLMAN:  And defendants are allowed to make

21    their argument about the sufficiency of our evidence to meet

22    our burden to show that patients were, indeed, deterred late.

23            THE COURT:  This is a whole new problem that I

24    didn't understand we had because I understood that you were

25    going to base your case not on patient information, but on

*Oral Argument*                                                    9

1   what escorts had witnessed at proceedings.  Not based on what

2   patients were, or what staff members were telling them.  Maybe

3   I missed the ball somewhere, but I didn't understand that was

4   going to be and I don't know if you made that clear before.

5          MR. MIHET:  I apologize, your Honor.

6          THE COURT:  Isn't nice we have meetings so we can

7   find out what's going on here.  I'm very concerned about this.

8   Now we have a problem I didn't know we had before.

9          MR. MIHET:  And, your Honor, it's very concerning

10  for us because these --

11         THE COURT:  Why are you raising it now at this

12  meeting?  You were talking about questionnaires and

13  questionnaires are okay and my theory resolving the

14  questionnaires is now put them all in and everyone argue and

15  we can argue -- you can argue that, well, you seemed to want

16  to argue that they're helpful.

17         MS. PULLMAN:  Your Honor, we are more than satisfied

18  with your proposal to submit all of the questionnaires as

19  redacted as business records, have the parties argue, you

20  know, the weight that should be given them and what -- how we

21  interpret them is up to the parties to argue and put on their

22  cases.

23         One thing that I will say to be clear is the two

24  staff members that we intend to put on in our case-in-chief

25  are describing how they've processed patients who have come in

1    after they've encountered defendants.  And that information

2    was in their declaration.  Exactly what they were going to

3    testify to was in the declaration attached to the preliminary

4    injunction motion filed with the complaint months and months

5    and months ago.

6            The parties entered into discovery.  We executed a

7    protective order that specifically carved out personally

8    identifying information of patients.  It's explicit that

9    personally identifying information of patients will be

10   redacted and defendants never raised an issue with it.  They

11   redacted their own documents that contained names of patients

12   with whom they interacted.  And then a week before the close

13   discovery, they raised this issue.

14           We are more than satisfied with your Honor's

15   proposal that all of the records com in and the parties can

16   use them as they see fit to argue whether they're favorable or

17   not.

18           MR. MIHET:  Here's the problem, your Honor.  We

19   can't cross-examine those staff members.

20           MS. PULLMAN:  You can.

21           THE COURT:  You know.

22           MS. PULLMAN:  You've have to take their deposition.

23   You can absolutely cross-examine staff members.

24           MR. MIHET:  When they say some unidentified

25   patient --

*Oral Argument*                                                    **11**

1          THE COURT:  Excuse me, Counsel.  Are you raising

2    that for the first time this moment --

3          MR. MIHET:  No, Your Honor.

4          THE COURT:  -- because I did not understand that to

5    be raised in the papers.

6          MR. MIHET:  No, Your Honor.

7          In our emergency motion, we raised that as being the

8    root of the problem here.  If we look at the bottom of the

9    first page where we say what the problem is, we learned at

10   depositions last week with these two staff members that they

11   intend to testify at length about what patients supposedly

12   told them.

13         THE COURT:  You knew that from their affidavit.

14         MR. MIHET:  Well, your Honor, we knew from the

15   affidavit that had that information, but when we that deposed

16   them is when we really understood what the scope of this

17   hearsay testimony was going to be.

18         What the Attorney General is doing is trying to

19   create this general patient distress theory based on patients

20   that they've talked to that we haven't and we are hamstrung

21   because we cannot disprove that theory.  We cannot rebut those

22   allegations.

23         Interestingly enough, the Attorney General has had

24   these patient identities for a long time.  They've called upon

25   some of these patients.  We've seen in their privilege log

*Oral Argument*                                                    12

1    that they have notes from their conversations with these

2    patients.  It wasn't a HIPAA violation for the Attorney

3    General to try to interview these patients and now they're

4    going to present.

5            THE COURT:  But you've known from day one that --

6    I'm just complaining now about how this is being raised.  I'm

7    not saying this isn't relevant information that you would not

8    otherwise have a right to have.  It's just that you've known

9    from day one about these interviews and about the fact that

10   they hadn't given the names and how they were going to proceed

11   at the hearing.  And I'm just concerned that now at this hour

12   this is being raised a week before the hearing because you've

13   known this all along.  I had thought this really related to

14   these questionnaires, but it's a different issue that you're

15   raising.

16           MR. MIHET:  Part of the problem, your Honor, is

17   everything has been so expedited in this case they dumped

18   4,000 pages of documents in our hands.  We have been spending

19   non-stop deposition time for the last three weeks, I think.

20   And when we sat across the table from these two witnesses last

21   Tuesday, it all came into focus.  Had we had six months or a

22   year for discovery.

23           THE COURT:  No.  You read the depositions, though,

24   didn't you?  You read their statements.

25           MR. MIHET:  Tuesday.

1           THE COURT:  You read their statements, you knew that

2   this is how they were going to proceed.  In the beginning,

3   there wasn't any application or discovery application, Please

4   give us the names of all of these people.  You're asking for

5   this now and you've known that this has been an issue for a

6   long time.  I thought this all came about in connection with

7   these questionnaires.

8           What kind of testimony -- are they offering hearsay

9   testimony or testimony about present sense impression with

10  these people?

11          MS. PULLMAN:  The latter, your Honor.

12          THE COURT:  Then that's hearsay.

13          MS. PULLMAN:  An excited utterance.  We also further

14  feel that if your Honor --

15          THE COURT:  Are they talking about specific

16  individuals that they sat down with?

17          MR. CANNON:  Yes.

18          MR. MIHET:  Yes.

19          MS. PULLMAN:  The staff members are describing

20  experiences that they had with patients.

21          THE COURT:  Did they know who those patients are?

22          MS. PULLMAN:  Did they know their names?

23          THE COURT:  Is there a way to say that on such and

24  such you can link that event with a specific patient?

25          MS. PULLMAN:  I'm not sure that they have that

*Oral Argument*                                                        **14**

1   recall.  When we've interviewed them, they've described

2   various reactions that they observed.  They discussed how they

3   do their job and how their job is affected by defendant's

4   activities.

5           None of their -- I think it's also worth

6   mentioning -- that none of their testimony is anything that

7   they either recalled from looking at these patient

8   questionnaires or --

9           THE COURT:  No, it's not the patient's

10  questionnaires.  You're basically saying to me that they're

11  giving testimony in broad strokes.

12          MS. ANDOH:  Your Honor, if I may just because I

13  prepared the witnesses at issue for deposition last week and

14  defended them, so I have some sense at this point of sort of

15  where they are.

16          There's sort of two degrees of separation, I think,

17  in terms of the information that they're able to give.  The

18  first is that a lot of it is removed in time by years at this

19  point.  In other words, they remember specific incidents but

20  they're not going to remember who the specific patient is who

21  told them that information because it may have happened in

22  2015, 2016, 2017, they go through this every Saturday.

23          And the other aspect, too, that none of the patients

24  had either in a questionnaire or not been able to identify the

25  identity of a specific protester.  So even to the extent that

*Oral Argument*                    **15**

1    they are going to speak about incidents that they're aware of

2    that happened outside the clinic, there is no situation in

3    which even if the patients were contacted that any of them

4    would be able to tie any of the specific incidents to anybody

5    who is necessarily participating.

6            THE COURT:  So when counsel objects at the hearing

7    to the relevance, you're going to say, You're right, it isn't

8    relevant.

9            MS. ANDOH:  I'm not going to be at the hearing

10   because I'm not a party.  From our perspective, certainly, in

11   terms of Choices's position on this.  For us, we're just

12   talking about our patients' information being turned.  And so,

13   our perspective is somewhat different from the AG's in that

14   respect.

15           THE COURT:  From what you're saying to me, you can't

16   even link -- it won't even be linked to specific patients.

17           MS. ANDOH:  That's correct, it can't be.

18           THE COURT:  It's not only recourse to offer in

19   rebuttal to this would presumably be for them to call every

20   single person in the past four years who walked into there.

21           MS. ANDOH:  Right.  Honestly, I interpret their

22   request as actually essentially asking us for a patient list

23   because of fundamentally what's going on here.  The

24   questionnaires themselves can't be linked to specific

25   incidents even on video necessarily.  A lot of them are

*Oral Argument*                                                          **16**

1    undated.

2              MR. MIHET:  That's not quite true, your Honor.

3              MS. ANDOH:  They're incredibly generalized documents

4    and they just talk about --

5              THE COURT:  It just seems like to me, Counsel, that

6    your argument with regard to these documents is that they are

7    entitled to little weight.

8              MR. MIHET:  Well, your Honor, they're entitled to

9    little weight, but the testimony from these staff members is

10   entitled to no weight and it's highly prejudicial.

11             THE COURT:  You can argue that.  It seems at the

12   hearing you can argue that this shouldn't be given, you know,

13   that weight to the extent it may or may not be hearsay.  But

14   it also isn't going to relate to any of the current defendants

15   which makes it problematic.

16             It's not like there's witnesses out there.  I don't

17   think anything solves your problem except giving you an entire

18   patient list.  I thought we were at a much more discrete

19   issue.

20             MR. MIHET:  Your Honor, if I could?

21             THE COURT:  Yes.

22             MR. MIHET:  We have video that's dated from a

23   particular date and the --

24             THE COURT:  Right.

25             MR. MIHET:  And the video depicts interactions

*Oral Argument*                                    **17**

1   between patient and defendants.  The video doesn't have audio.

2   So you're going to told by the state that what's happening in

3   the video is harassment and blocking and whatnot, but there's

4   no audio so --

5            THE COURT:  So they haven't met their burden.

6   That's your argument.

7            MR. MIHET:  Now, at the same time, we have these

8   patient questionnaires.

9            THE COURT:  That I'm letting you have introduced.

10           MR. MIHET:  Well, except that if we have the name of

11  the patient that was there on that date, you know, that

12  they're able to -- they testified that if they have a patient

13  name they can tell us the date that that patient was at the

14  clinic.  So if we're talking about an event that took place

15  September 15th --

16           THE COURT:  Can you link -- is there one of these

17  patient questionnaires that you can link to a video?

18           MR. MIHET:  No, because we don't have the names.

19           THE COURT:  Not the names it would be the day.

20           MS. ANDOH:  The video doesn't have names on it

21  either.

22           THE COURT:  No, it would be the date.

23           MR. MIHET:  We don't have a date.

24           THE COURT:  Do they --

25           MS. ANDOH:  We did not redact dates.  Most of them

*Oral Argument*                                                          **18**

1    are simply undated.

2         THE COURT:  Point out one to incident, for instance,

3    where a questionnaire corresponds with a video directly and

4    you could say, you know, that maybe that's something that we

5    consider.  But, in any event, I'm letting you -- there has to

6    be a balancing here and that's what I'm trying to do which is

7    to do a balancing.

8         There is patient privacy here.  That doesn't

9    necessarily mean that that rules the day.  The defendants have

10   the right to defend themselves, too, but it seems to me that

11   where you have this questionnaire that you can use that

12   balancing, you know, the privacy versus the probative value

13   that permitting you to use this questionnaire and to argue

14   from these questionnaires is a fair way to resolve this

15   without the need to have individual people come to court and

16   testify based on their privacy concern.

17        Now, if there was a given questionnaire that you

18   could link directly to an event where you would say, This is

19   so critical so us that we need to find this person, then, you

20   know, maybe there is some way we could deal with that issue.

21        But it just sounds like it's so general that you're

22   not going to be able to pinpoint it.  And I think your

23   argument is they've given you nothing but generalized

24   testimony.  You can't make them make it more specific if they

25   don't, that's just character of their testimony.  You can

1    argue it's deficient.

2            MR. MIHET:  Part of the problem, your Honor, is the

3    president of Choices testified on Wednesday that Choices, if

4    given a patient name, can look in a database and tell us the

5    date and the time that the patient was there.  So the reason

6    we haven't been able to link these two in particular events on

7    tape is we can't give them any names because they won't give

8    them to us.

9            THE COURT:  You can give them dates.

10           MS. PULLMAN:  Your Honor, that's not a part of

11   plaintiff's case-in-chief.  I mean, again, to your point about

12   we have the burden here.  Choices is not the plaintiff.  The

13   AG is putting on certain incidents.

14           What I understood defendants to be saying was they

15   think that some of these questionnaires don't reflect someone

16   who is unhappy with the activities and felt impeded.  If there

17   was a stipulation that said we don't impede a hundred percent

18   of the patients, we would happily stipulate to that.  We just

19   state it besides the point.

20           What they're really looking for is to cal every

21   single patient and try to find someone who says they weren't

22   blocked.  And then what they've said is then they might compel

23   that person to testify.  And then you get a situation where

24   someone simply by virtue of going to see her doctor is now

25   compelled to testify at a public hearing about --

*Oral Argument*                                              **20**

1          THE COURT:  If there was someone that could be

2    pinpointed particularly crucial to an area, we could deal with

3    it.  They could testify under a pseudonym.  We can deal with

4    ways somebody would have to testify.  It is so general at this

5    point that I'm not seeing a need for a given patient.  It

6    seems the only way to satisfy this sort of concern would be a

7    wholesale production of a patient list which I have a real

8    concern about ordering that.

9          MS. ANDOH:  One more fact to add to the record.

10          THE COURT:  Particularly when the plaintiffs aren't

11    calling any patients.

12          MS. ANDOH:  And, your Honor, just one more point

13    that I would just like to have in the record just to give you

14    some sense of scope.

15          On an average Saturday, Choices sees 150 patients.

16    And so, if we're talking about even just giving us a date to

17    go through in order to pull information of patients that

18    showed up at Choices on that date, we're going to be talking

19    about even if you gave us ten days we're talking about over a

20    thousand patients.  And we're also talking about the vast

21    majority of them are not there for abortion services.  The

22    vast majority of services that was Choices provides to its

23    patients are prenatal Ob-Gyn type services.

24          And so, we're talking about potentially contacting

25    people who weren't even there to have an abortion procedure

*Oral Argument*                                    21

1  performed and without any ability to pinpoint them to a

2  specific time or incident on a tape.

3          THE COURT:  I don't know that it would make a

4  difference what they were there for.  The question is access

5  to the clinic.

6          MR. MIHET:  We would never ask what they were there

7  for.  It wouldn't be relevant to the inquiry.

8          THE COURT:  I don't know what they were there for.

9  Presumably, if there are all these people coming for all of

10 these other different procedures, then the protesters are

11 wasting their time.

12         MS. ANDOH:  I certainly don't need to characterize

13 it.

14         THE COURT:  Are they going up to women my age and

15 going, Please don't have an abortion.

16         MS. ANDOH:  They are equal opportunity in terms of

17 who they approach.  Approach in air quotes.

18         THE COURT:  We don't need to get to that.

19         MS. ANDOH:  From a volume perspective, the idea of a

20 patient list it's actually a massive, massive situation for

21 us.  Even asking for a single day, we're talking about 150

22 plus people.

23         MR. CANNON:  The point she makes is a good one.  The

24 problem is solved as far as the massiveness of the whole

25 thing.  When you realize the reason we are here today is

*Oral Argument*                                                    **22**

1    because we've not been provided the names of the patients that

2    actually answered the questionnaires.

3            Their position would be far more compelling had

4    Choices not delivered these questionnaires unredacted like so

5    many pizzas to the Attorney General.

6            THE COURT:  The thing that was redacted were the

7    names.

8            MR. CANNON:  Names.

9            MR. MIHET:  Not to the Attorney General.

10           MR. CANNON:  Not to the Attorney General.

11           MS. ANDOH:  That's not correct.

12           MR. CANNON:  They've got names, phone numbers.

13   They've been able to call and talk to people.  And they're now

14   giving us the redacted stuff and we can't talk to the same

15   people.

16           THE COURT:  You've known this all along.

17           MR. CANNON:  No.

18           MR. MIHET:  No.

19           MS. PULLMAN:  Yes.

20           MR. CANNON:  That's a mistake, Judge, we have not.

21   The declarations that were filed in the early part of the case

22   did not clue us into this.  The significance of the

23   questionnaires became apparent much more recently.  And the

24   fact that they're planning to testify as to what people who

25   may or may not be --

*Oral Argument*                                                23

1        THE COURT:  In the questionnaire.

2        MR. CANNON:  In the questionnaires, but who may have

3   did or didn't say to them is big.

4        You know, the question of questionnaires are

5   admissible under hearsay is maybe yes maybe no and we could

6   robbery come to an agreement on that.  What we can't agree to

7   is that their witnesses will testify as to what patients told

8   them when we aren't able to access that patient.  And the fact

9   that the there's an excited utterance --

10       THE COURT:  That's independent of the

11  questionnaires.  Because the people they're talking about may

12  have absolutely nothing to do with the questionnaires, so

13  that's a much broader problem.  That would entail, presumably,

14  this list of all of the patients that they've had over all of

15  the years because of the very vagueness of this testimony.

16       And I think your argument to that is to the

17  vagueness of the testimony because I don't know how we

18  solve -- it's a problem unrelated to the questionnaires.

19       MR. CANNON:  I just want to be careful that the

20  Court's sort of maybe inclination, which maybe I share, to let

21  the forms in doesn't result in allowing testimony in.  That is

22  much more plain than hearsay as to what patients said.

23       THE COURT:  You can object.  I mean, you can object

24  at the time that it shouldn't come in.  But I don't know,

25  that's a different question from than giving a patient list

*Oral Argument*                                                          **24**

1    that's going to do you absolutely no good.

2           MR. CANNON:  On the forms, your Honor, what do we do

3    if, in the 200, they fish out 10 or 15 and they argue from

4    them when we don't have the information that we could use to

5    rebut what the arguments.

6           THE COURT:  Well, look, a moment ago I was going to

7    come out with an entirely different proposal.  But a moment

8    ago, you told me you wanted all of them in because you think

9    they're all favorable.

10          MR. MIHET:  I didn't, your Honor.

11          THE COURT:  Having said that, you know what, I'm

12   going to give you your wish.

13          MS. ANDOH:  We'll provide an authentication

14   affidavit for them.

15          THE COURT:  This can't go on.

16          MR. MIHET:  I think we'd be at a great disadvantage,

17   your Honor, if that were your ruling because I think --

18          THE COURT:  Look, I can't spend all day.  I have

19   other cases on my calendar and this becomes a moving target

20   and I can't deal with a moving target, Counsel.

21          When we came out here, I thought I had a different

22   issue but you now tell me that you think all of them are

23   favorable.  To the extent that you tell me that, they all come

24   in.  They don't get to elaborate on what's said in them.  You

25   don't get to elaborate on what's said in them.  I mean,

1  they're not going to show the affidavit to a staffer and say,

2  Do you remember this person, didn't she really say something

3  else?  That's not going to happen.  Everybody is left with

4  what's said in there and that's it.  So that's how we're going

5  to proceed.

6           MS. PULLMAN:  Thank you.

7           MS. ANDOH:  Thank you.

8           THE COURT:  That's it for this issue.  Thank you.

9           MS. PULLMAN:  Thank you.

10          MR. CANNON:  Thank you.

11          MR. MIHET:  Thank you.

12          (WHEREUPON, this matter was adjourned.)

13

14                        *   *   *

15

16              <u>CERTIFICATE OF REPORTER</u>

17

    I certify that the foregoing is a correct transcript of the
18  record of proceedings in the above-entitled matter.

19

20

21

22         *Anthony D. Frisolone*

23  _____
    Anthony D. Frisolone, FAPR, RDR, CRR, CRI
24  Official Court Reporter

25

## 1

**10** [1] - 24:3
**10112** [1] - 2:9
**10271** [1] - 1:17
**1053** [1] - 1:20
**120** [1] - 1:17
**13-CV-3** [1] - 3:19
**15** [1] - 24:3
**150** [2] - 20:15, 21:21
**15th** [1] - 17:15
**17** [1] - 1:6
**17-3706** [1] - 1:3
**17-CV-3706** [1] - 3:7

## 2

**2** [1] - 5:16
**200** [1] - 24:3
**2015** [1] - 14:22
**2016** [1] - 14:22
**2017** [1] - 14:22
**2018** [1] - 1:6
**20374** [1] - 2:3

## 3

**30** [2] - 2:8, 8:7
**300** [1] - 5:16
**32751** [1] - 1:20
**3:30** [1] - 1:6

## 4

**4,000** [1] - 12:18

## 5

**51526** [1] - 2:3

## 6

**613-2487** [1] - 2:14
**613-2694** [1] - 2:15

## 7

**706** [1] - 3:19
**718** [2] - 2:14, 2:15

## A

**ability** [1] - 21:1
**able** [8] - 14:17, 14:24, 15:4, 17:12, 18:22, 19:6, 22:13, 23:8
**abortion** [3] - 20:21, 20:25, 21:15
**above-entitled** [1] - 25:18
**absolutely** [3] - 10:23, 23:12, 24:1
**access** [2] - 21:4, 23:8
**Action** [1] - 1:3

**activities** [2] - 14:4, 19:16
**add** [1] - 20:9
**adjourned** [1] - 25:12
**admissible** [2] - 8:17, 23:5
**admit** [1] - 6:8
**affected** [1] - 14:3
**affidavit** [4] - 11:13, 11:15, 24:14, 25:1
**afternoon** [4] - 3:14, 3:17, 3:25, 4:6
**AG** [1] - 19:13
**AG's** [1] - 15:13
**age** [1] - 21:14
**ago** [3] - 10:5, 24:6, 24:8
**agree** [1] - 23:6
**agreement** [1] - 23:6
**aided** [1] - 2:17
**air** [1] - 21:17
**al** [2] - 1:7, 3:16
**allegations** [1] - 11:22
**allegedly** [1] - 7:19
**allowed** [1] - 8:20
**allowing** [1] - 23:21
**Amon** [2] - 3:4, 3:5
**AMON** [1] - 1:10
**Andoh** [1] - 4:13
**ANDOH** [18] - 2:6, 4:13, 6:10, 14:12, 15:9, 15:17, 15:21, 16:3, 17:20, 17:25, 20:9, 20:12, 21:12, 21:16, 21:19, 22:11, 24:13, 25:7
**answer** [1] - 7:2
**answered** [1] - 22:2
**answers** [1] - 8:16
**Anthony** [2] - 2:13, 25:23
**apologize** [1] - 9:5
**apparent** [1] - 22:23
**appearances** [2] - 3:9, 3:21
**application** [2] - 13:3
**applications** [1] - 4:22
**approach** [2] - 21:17
**area** [1] - 20:2
**argue** [16] - 5:25, 6:22, 7:7, 7:10, 9:14, 9:15, 9:16, 9:19, 9:21, 10:16, 16:11, 16:12, 18:13, 19:1, 24:3
**ARGUMENT** [1] - 1:9
**argument** [7] - 3:7, 3:20, 8:21, 16:6, 17:6, 18:23, 23:16
**arguments** [2] - 7:3, 24:5
**aspect** [1] - 14:23
**Assistant** [1] - 1:15
**assuming** [1] - 5:10
**attached** [2] - 8:2, 10:3
**attention** [2] - 4:19, 4:21
**Attie** [2] - 3:13, 4:2
**ATTIE** [2] - 1:14, 4:2
**Attorney** [10] - 1:3, 1:16, 3:12, 3:24, 11:18, 11:23, 12:2, 22:5, 22:9, 22:10
**Attorneys** [1] - 1:15
**audio** [2] - 17:1, 17:4
**authenticating** [1] - 6:12
**authentication** [1] - 24:13
**authorized** [2] - 4:10, 4:25
**average** [1] - 20:15
**aware** [1] - 15:1

## B

**BAGLEY** [1] - 1:10
**Bagley** [2] - 3:4, 3:5
**balancing** [3] - 18:6, 18:7, 18:12
**ball** [1] - 9:3
**base** [1] - 8:25
**based** [3] - 9:1, 11:19, 18:16
**became** [1] - 22:23
**becomes** [1] - 24:19
**BEFORE** [1] - 1:10
**beginning** [1] - 13:2
**behalf** [1] - 6:10
**behind** [1] - 8:15
**bench** [1] - 3:5
**better** [1] - 5:7
**between** [2] - 5:16, 17:1
**big** [1] - 23:3
**bigger** [1] - 7:15
**bit** [2] - 4:20
**blocked** [1] - 19:22
**blocking** [1] - 17:3
**Blvd** [1] - 1:20
**bottom** [1] - 11:8
**Braxton** [1] - 4:9
**bring** [1] - 6:23
**broad** [1] - 14:11
**broader** [1] - 23:13
**Broadway** [1] - 1:17
**Brooklyn** [1] - 1:5
**brought** [1] - 4:18
**bulk** [1] - 6:25
**burden** [3] - 8:22, 17:5, 19:12
**business** [2] - 6:12, 9:19

## C

**cal** [1] - 19:20
**calendar** [1] - 24:19
**CANNON** [14] - 2:2, 3:15, 4:4, 13:17, 21:23, 22:8, 22:10, 22:12, 22:17, 22:20, 23:2, 23:19, 24:2, 25:10
**Cannon** [3] - 2:2, 3:16, 4:4
**cannot** [2] - 11:21
**careful** [1] - 23:19
**Carol** [2] - 3:4, 3:5
**CAROL** [1] - 1:10
**carved** [1] - 10:7
**case** [7] - 6:6, 6:25, 8:25, 9:24, 12:17, 19:11, 22:21
**case-in-chief** [2] - 9:24, 19:11
**cases** [2] - 9:22, 24:19
**CBA** [1] - 1:3
**Center** [3] - 1:20, 2:7, 4:14
**certain** [1] - 19:13
**certainly** [4] - 6:11, 8:17, 15:10, 21:12
**CERTIFICATE** [1] - 25:16
**certify** [2] - 6:14, 25:17
**character** [1] - 18:25
**characterize** [2] - 4:18, 21:12
**chief** [2] - 9:24, 19:11
**Choices** [16] - 2:6, 4:12, 4:14, 4:15, 4:24, 5:8, 6:10, 7:17, 8:1, 19:3, 19:12, 20:15, 20:18, 20:22, 22:4

**Choices's** [1] - 15:11
**Civil** [1] - 1:3
**civil** [1] - 3:6
**clear** [2] - 9:4, 9:23
**clinic** [3] - 15:2, 17:14, 21:5
**close** [1] - 10:12
**closer** [1] - 4:20
**clue** [1] - 22:22
**colleague** [2] - 4:8, 5:19
**colleagues** [1] - 5:24
**com** [1] - 10:15
**coming** [1] - 21:9
**Commons** [1] - 1:20
**compel** [1] - 19:22
**compelled** [1] - 19:25
**compelling** [1] - 22:3
**complaining** [1] - 12:6
**complaint** [2] - 4:24, 10:4
**Computer** [1] - 2:17
**Computer-aided** [1] - 2:17
**computerized** [1] - 2:16
**concern** [3] - 18:16, 20:6, 20:8
**concerned** [2] - 9:7, 12:11
**concerning** [1] - 9:9
**CONFERENCE** [1] - 1:4
**confidentiality** [1] - 7:5
**connection** [1] - 13:6
**consider** [1] - 18:5
**contact** [1] - 6:14
**contacted** [1] - 15:3
**contacting** [1] - 20:24
**contained** [1] - 10:11
**Continued** [1] - 2:1
**conversations** [1] - 12:1
**correct** [7] - 5:5, 5:13, 7:24, 7:25, 15:17, 22:11, 25:17
**corresponds** [1] - 18:3
**counsel** [1] - 15:6
**Counsel** [5] - 1:19, 3:9, 11:1, 16:5, 24:20
**Court** [5] - 2:13, 2:14, 3:3, 5:15, 25:24
**court** [2] - 3:1, 18:15
**Court's** [3] - 4:19, 4:21, 23:20
**COURTROOM** [3] - 3:2, 3:6, 3:18
**create** [1] - 11:19
**Crescent** [1] - 2:3
**CRI** [2] - 2:13, 25:23
**critical** [1] - 18:19
**cross** [2] - 10:19, 10:23
**cross-examine** [2] - 10:19, 10:23
**CRR** [2] - 2:13, 25:23
**crucial** [1] - 20:2
**current** [1] - 16:14

## D

**DANIELLE** [1] - 2:7
**Danielle** [1] - 4:15
**database** [1] - 19:4
**date** [8] - 16:23, 17:11, 17:13, 17:22, 17:23, 19:5, 20:16, 20:18
**dated** [1] - 16:22
**dates** [2] - 17:25, 19:9
**days** [1] - 20:19
**deal** [4] - 18:20, 20:2, 20:3, 24:20

**declaration** [3] - 6:12, 10:2, 10:3
**declarations** [2] - 8:2, 22:21
**deemed** [1] - 5:11
**defend** [1] - 18:10
**Defendant** [1] - 1:19
**defendant's** [2] - 5:10, 14:3
**defendants** [4] - 4:3, 4:5, 4:8, 4:9, 4:20, 5:2, 5:12, 7:20, 8:20, 10:1, 10:10, 16:14, 17:1, 18:9, 19:14
**Defendants** [2] - 1:8, 2:2
**defended** [1] - 14:14
**deficient** [1] - 19:1
**degrees** [1] - 14:16
**delivered** [1] - 22:4
**depicts** [1] - 16:25
**deposed** [1] - 11:15
**deposition** [3] - 10:22, 12:19, 14:13
**depositions** [3] - 7:17, 11:10, 12:23
**DEPUTY** [3] - 3:2, 3:6, 3:18
**described** [1] - 14:1
**describing** [2] - 9:25, 13:19
**deterred** [1] - 8:22
**difference** [1] - 21:4
**different** [7] - 7:12, 12:14, 15:13, 21:10, 23:25, 24:7, 24:21
**directly** [2] - 18:3, 18:18
**disadvantage** [2] - 7:8, 24:16
**disagree** [2] - 5:19, 5:24
**discovery** [6] - 4:17, 5:7, 10:6, 10:13, 12:22, 13:3
**discrete** [2] - 6:4, 16:18
**discussed** [1] - 14:2
**disprove** [1] - 11:21
**dispute** [1] - 4:17
**distinct** [1] - 7:8
**distress** [1] - 11:19
**DISTRICT** [3] - 1:1, 1:1, 1:11
**District** [2] - 3:3
**Docket** [1] - 3:7
**doctor** [1] - 19:24
**documents** [4] - 10:11, 12:18, 16:3, 16:6
**Doe** [2] - 2:3, 2:4
**down** [2] - 6:24, 13:16
**dumped** [1] - 12:17

## E

**E-mail** [1] - 2:15
**early** [1] - 22:21
**EASTERN** [1] - 1:1
**Eastern** [1] - 3:3
**easy** [2] - 5:21, 6:7
**either** [3] - 14:7, 14:24, 17:21
**elaborate** [2] - 24:24, 24:25
**emergency** [2] - 4:21, 11:7
**employees** [1] - 7:17
**encountered** [1] - 10:1
**end** [2] - 5:22, 6:21
**entail** [1] - 23:13
**entered** [1] - 10:6
**entire** [1] - 16:17
**entirely** [1] - 24:7
**entitled** [4] - 16:7, 16:8, 16:10, 25:18
**equal** [1] - 21:16

**ERIC** [1] - 1:3
**escorts** [2] - 7:22, 9:1
**ESQ** [7] - 1:13, 1:14, 1:14, 1:19, 2:2, 2:6, 2:7
**essentially** [1] - 15:22
**et** [2] - 1:7, 3:15
**et al.** [1] - 3:8
**event** [4] - 13:24, 17:14, 18:5, 18:18
**events** [1] - 19:6
**evidence** [5] - 5:22, 6:9, 6:22, 8:21
**exactly** [1] - 10:2
**examine** [2] - 10:19, 10:23
**except** [2] - 16:17, 17:10
**exceptions** [1] - 8:10
**excited** [2] - 13:13, 23:9
**excuse** [1] - 11:1
**executed** [2] - 8:2, 10:6
**exhibits** [1] - 5:23
**exists** [1] - 5:6
**expedited** [1] - 12:17
**experiences** [2] - 7:20, 13:20
**explicit** [1] - 10:8
**extent** [3] - 14:25, 16:13, 24:23

## F

**Facsimile** [1] - 2:15
**fact** [5] - 7:4, 12:9, 20:9, 22:24, 23:8
**fair** [1] - 18:14
**fairness** [1] - 7:1
**FAPR** [2] - 2:13, 25:23
**far** [3] - 5:13, 21:24, 22:3
**favorable** [16] - 5:11, 5:17, 5:18, 5:20, 5:21, 6:3, 6:5, 6:7, 6:17, 6:23, 7:5, 7:8, 7:11, 10:16, 24:9, 24:23
**felt** [1] - 19:16
**filed** [3] - 4:23, 10:4, 22:21
**filled** [1] - 5:8
**first** [3] - 11:2, 11:9, 14:18
**fish** [1] - 24:3
**fit** [1] - 10:16
**Fitchett** [1] - 1:19
**Florida** [1] - 1:20
**focus** [1] - 12:21
**foregoing** [1] - 25:17
**forms** [2] - 23:21, 24:2
**four** [2] - 5:10, 15:20
**Frisolone** [2] - 2:13, 25:23
**fundamentally** [1] - 15:23

## G

**General** [10] - 1:4, 1:15, 1:16, 3:12, 11:18, 11:23, 12:3, 22:5, 22:9, 22:10
**general** [3] - 11:19, 18:21, 20:4
**General's** [1] - 3:24
**generalized** [2] - 16:3, 18:23
**George** [2] - 2:2, 2:4
**given** [7] - 9:20, 12:10, 16:12, 18:17, 18:23, 19:4, 20:5
**great** [1] - 24:16
**GRIEPP** [1] - 1:7
**Griepp** [6] - 2:2, 3:8, 3:15, 3:19, 4:4, 4:7

(guess - non)

**guess** [1] - 5:7
**Gyn** [1] - 20:23

## H

**Hampton** [2] - 2:7, 4:14
**hamstrung** [1] - 11:20
**hands** [1] - 12:18
**happily** [1] - 19:18
**harassment** [1] - 17:3
**hearing** [10] - 4:10, 5:22, 6:9, 8:18, 12:11, 12:12, 15:6, 15:9, 16:12, 19:25
**hearsay** [8] - 8:8, 8:17, 11:17, 13:8, 13:12, 16:13, 23:5, 23:22
**HELD** [1] - 1:10
**helpful** [1] - 9:16
**highly** [1] - 16:10
**HIPAA** [1] - 12:2
**Hoffman** [1] - 2:8
**honestly** [1] - 15:21
**Honor** [31] - 3:14, 3:17, 4:8, 5:14, 6:10, 6:16, 7:6, 7:15, 7:25, 8:9, 8:17, 9:5, 9:9, 9:17, 10:18, 11:3, 11:6, 11:14, 12:16, 13:11, 13:14, 14:12, 16:2, 16:8, 16:20, 19:2, 19:10, 20:12, 24:2, 24:10, 24:17
**Honor's** [1] - 10:14
**HONORABLE** [1] - 1:10
**Honorable** [2] - 3:4, 3:5
**HORATIO** [1] - 1:19
**Horatio** [2] - 3:16, 4:7
**hour** [1] - 12:11
**hundred** [1] - 19:17

## I

**idea** [1] - 21:19
**identify** [1] - 14:24
**identifying** [2] - 10:8, 10:9
**identities** [1] - 11:24
**identity** [1] - 14:25
**impede** [1] - 19:17
**impeded** [1] - 19:16
**important** [1] - 4:22
**impression** [1] - 13:9
**incident** [2] - 18:2, 21:2
**incidents** [5] - 14:19, 15:1, 15:4, 15:25, 19:13
**inclination** [1] - 23:20
**incredibly** [1] - 16:3
**indeed** [1] - 8:22
**independent** [1] - 23:10
**individual** [1] - 18:15
**individuals** [2] - 6:6, 13:16
**inferences** [1] - 5:25
**information** [14] - 5:11, 6:14, 7:10, 8:25, 10:1, 10:8, 10:9, 11:15, 12:7, 14:17, 14:21, 15:12, 20:17, 24:4
**injunction** [3] - 8:3, 8:18, 10:4
**inquiry** [1] - 21:7
**instance** [1] - 18:2
**intend** [2] - 9:24, 11:11
**interacted** [1] - 10:12
**interactions** [3] - 8:6, 8:14, 16:25
**interested** [1] - 7:4

**interestingly** [1] - 11:23
**interpret** [2] - 9:21, 15:21
**interview** [1] - 12:3
**interviewed** [1] - 14:1
**interviews** [1] - 12:9
**introduced** [1] - 17:9
**Iowa** [1] - 2:3
**issue** [9] - 10:10, 10:13, 12:14, 13:5, 14:13, 16:19, 18:20, 24:22, 25:8

## J

**January** [1] - 1:6
**Jessica** [2] - 3:13, 4:2
**JESSICA** [1] - 1:14
**job** [2] - 14:3
**Joseph** [1] - 2:4
**Judge** [2] - 4:5, 22:20
**JUDGE** [2] - 1:10, 1:11

## K

**Kaminsky** [1] - 2:3
**Ken** [1] - 4:4
**KENNETH** [1] - 1:7
**Kenneth** [3] - 3:8, 3:15, 4:7
**kind** [1] - 13:8
**known** [5] - 12:5, 12:8, 12:13, 13:5, 22:16

## L

**Land** [1] - 4:8
**language** [1] - 7:7
**last** [5] - 7:16, 11:10, 12:19, 12:20, 14:13
**late** [2] - 8:7, 8:22
**latter** [1] - 13:11
**Law** [1] - 2:2
**learned** [3] - 7:16, 7:18, 11:9
**least** [1] - 5:10
**left** [1] - 25:3
**length** [1] - 11:11
**letting** [2] - 17:9, 18:5
**Liberty** [1] - 1:19
**limit** [2] - 4:24, 5:1
**link** [6] - 13:24, 15:16, 17:16, 17:17, 18:18, 19:6
**linked** [2] - 15:16, 15:24
**list** [6] - 15:22, 16:18, 20:7, 21:20, 23:14, 23:25
**LLP** [1] - 2:8
**log** [1] - 11:25
**look** [4] - 11:8, 19:4, 24:6, 24:18
**looking** [2] - 14:7, 19:20

## M

**Magnolia** [1] - 2:3
**mail** [1] - 2:15
**main** [1] - 8:12
**Maitland** [2] - 1:20, 1:20
**majority** [2] - 20:21, 20:22

**Martin** [2] - 3:16, 4:4
**MARTIN** [1] - 2:2
**massive** [2] - 21:20
**massiveness** [1] - 21:24
**materials** [1] - 5:6
**matter** [3] - 5:23, 25:12, 25:18
**mean** [4] - 18:9, 19:11, 23:23, 24:25
**meant** [1] - 5:14
**Medical** [2] - 2:7, 4:14
**meet** [1] - 8:21
**meeting** [1] - 9:12
**meetings** [1] - 9:6
**members** [9] - 8:1, 8:5, 9:2, 9:24, 10:19, 10:23, 11:10, 13:19, 16:9
**mentioning** [1] - 14:6
**Merle** [1] - 2:8
**met** [1] - 17:5
**might** [1] - 19:22
**MIHET** [37] - 1:19, 4:7, 5:14, 5:18, 5:24, 6:16, 6:20, 7:6, 7:13, 7:15, 8:12, 9:5, 9:9, 10:18, 10:24, 11:3, 11:6, 11:14, 12:16, 12:25, 13:18, 16:2, 16:8, 16:20, 16:22, 16:25, 17:7, 17:10, 17:18, 17:23, 19:2, 21:6, 22:9, 22:18, 24:10, 24:16, 25:11
**Mihet** [3] - 3:16, 4:7, 8:1
**minutes** [1] - 8:7
**misimpression** [1] - 5:5
**missed** [1] - 9:3
**mistake** [1] - 22:20
**misunderstood** [1] - 7:14
**moment** [3] - 11:2, 24:6, 24:7
**months** [4] - 10:4, 10:5, 12:21
**most** [1] - 17:25
**motion** [2] - 10:4, 11:7
**Movant** [1] - 2:6
**moving** [2] - 24:19, 24:20
**MS** [39] - 3:11, 3:23, 4:1, 4:2, 4:13, 4:15, 6:10, 7:25, 8:5, 8:9, 8:16, 8:20, 9:17, 10:20, 10:22, 13:11, 13:13, 13:19, 13:22, 13:25, 14:12, 15:9, 15:17, 15:21, 16:3, 17:20, 17:25, 19:10, 20:9, 20:12, 21:12, 21:16, 21:19, 22:11, 22:19, 24:13, 25:6, 25:7, 25:9
**Mullin** [2] - 2:7, 4:13
**Musco** [1] - 2:3

## N

**name** [3] - 17:10, 17:13, 19:4
**names** [14] - 6:5, 6:13, 10:11, 12:10, 13:4, 13:22, 17:18, 17:19, 17:20, 19:7, 22:1, 22:7, 22:8, 22:12
**Nancy** [2] - 3:13, 4:1
**NANCY** [1] - 1:14
**necessarily** [3] - 15:5, 15:25, 18:9
**need** [6] - 6:23, 7:1, 18:15, 18:19, 20:5, 21:12, 21:18
**never** [2] - 10:10, 21:6
**new** [1] - 8:23
**NEW** [2] - 1:1, 1:3
**New** [13] - 1:4, 1:5, 1:16, 1:17, 2:9, 3:3, 3:7, 3:12, 3:18, 3:23
**nice** [1] - 9:6
**non** [2] - 4:12, 12:19

(non-party - removed)

**non-party** [1] - 4:12
**non-stop** [1] - 12:19
**none** [3] - 14:5, 14:6, 14:23
**note** [1] - 3:9
**notes** [1] - 12:1
**nothing** [2] - 18:23, 23:12
**number** [1] - 5:9
**numbers** [2] - 6:13, 22:12

## O

**Ob** [1] - 20:23
**Ob-Gyn** [1] - 20:23
**object** [2] - 23:23
**objecting** [1] - 6:25
**objects** [1] - 15:6
**observe** [1] - 5:2
**observed** [2] - 7:23, 14:2
**OF** [5] - 1:1, 1:3, 1:9, 25:16
**offer** [1] - 15:18
**offering** [1] - 13:8
**office** [1] - 3:24
**Office** [1] - 1:16
**Offices** [1] - 2:2
**Official** [2] - 2:14, 25:24
**Okuonghae** [1] - 2:3
**one** [10] - 5:20, 8:17, 9:23, 12:5, 12:9, 17:16, 18:2, 20:9, 20:12, 21:23
**open** [1] - 3:1
**opportunity** [1] - 21:16
**optimistic** [1] - 6:16
**ORAL** [1] - 1:9
**oral** [2] - 3:6, 3:19
**order** [2] - 10:7, 20:17
**ordering** [1] - 20:8
**original** [1] - 8:3
**otherwise** [1] - 12:8
**outside** [1] - 15:2
**overly** [1] - 6:16
**own** [2] - 5:25, 10:11

## P

**p.m** [1] - 1:6
**page** [1] - 11:9
**pages** [1] - 12:18
**paper** [1] - 4:25
**papers** [2] - 5:10, 11:5
**part** [4] - 12:16, 19:2, 19:10, 22:21
**participating** [1] - 15:5
**particular** [2] - 16:23, 19:6
**particularly** [4] - 4:20, 5:2, 20:2, 20:10
**parties** [8] - 4:19, 5:2, 5:4, 6:12, 9:19, 9:21, 10:6, 10:15
**party** [2] - 4:12, 15:10
**past** [1] - 15:20
**patient** [25] - 7:5, 8:25, 10:25, 11:19, 11:24, 13:24, 14:7, 14:20, 15:22, 16:18, 17:1, 17:8, 17:11, 17:12, 17:13, 17:17, 18:8, 19:4, 19:5, 19:21, 20:5, 20:7, 21:20, 23:8, 23:25
**patient's** [1] - 14:9
**patients** [30] - 5:8, 7:19, 8:6, 8:15, 8:22, 9:2, 9:25, 10:8, 10:9, 10:11,

11:11, 11:19, 11:25, 12:2, 12:3, 13:20, 13:21, 14:23, 15:3, 15:16, 19:18, 20:11, 20:15, 20:17, 20:20, 20:23, 22:1, 23:7, 23:14, 23:22
**patients'** [1] - 15:12
**pay** [2] - 4:19, 4:20
**PEOPLE** [1] - 1:3
**people** [11] - 6:24, 13:4, 13:10, 18:15, 20:25, 21:9, 21:22, 22:13, 22:15, 22:24, 23:11
**People** [3] - 3:7, 3:11, 3:18
**percent** [1] - 19:17
**performed** [1] - 21:1
**permitting** [1] - 18:13
**person** [4] - 15:20, 18:19, 19:23, 25:2
**personal** [1] - 8:6
**personally** [2] - 10:7, 10:9
**perspective** [3] - 15:10, 15:13, 21:19
**phone** [2] - 6:13, 22:12
**pinpoint** [2] - 18:22, 21:1
**pinpointed** [1] - 20:2
**pizzas** [1] - 22:5
**place** [1] - 17:14
**plain** [1] - 23:22
**Plaintiff** [2] - 1:5, 1:13
**plaintiff** [4] - 3:11, 3:24, 4:2, 19:12
**plaintiff's** [1] - 19:11
**plaintiffs** [2] - 3:22, 20:10
**planning** [3] - 7:16, 7:17, 22:24
**Plaza** [1] - 2:8
**plus** [1] - 21:22
**point** [8] - 14:14, 14:19, 18:2, 19:11, 19:19, 20:5, 20:12, 21:23
**portion** [1] - 6:4
**position** [4] - 4:10, 7:11, 15:11, 22:3
**potentially** [1] - 20:24
**prejudicial** [1] - 16:10
**preliminary** [3] - 8:3, 8:18, 10:3
**prenatal** [1] - 20:23
**prepared** [1] - 14:13
**present** [2] - 12:4, 13:9
**president** [1] - 19:3
**presiding** [1] - 3:4
**presumably** [3] - 15:19, 21:9, 23:13
**privacy** [3] - 18:8, 18:12, 18:16
**privilege** [1] - 11:25
**probative** [1] - 18:12
**problem** [14] - 7:6, 7:15, 8:12, 8:23, 9:8, 10:18, 11:8, 11:9, 12:16, 16:17, 19:2, 21:24, 23:13, 23:18
**problematic** [1] - 16:15
**procedure** [1] - 20:25
**procedures** [1] - 21:10
**proceed** [3] - 12:10, 13:2, 25:5
**proceedings** [2] - 9:1, 25:18
**Proceedings** [1] - 2:16
**processed** [1] - 9:25
**produced** [1] - 2:17
**production** [1] - 20:7
**proposal** [3] - 9:18, 10:15, 24:7
**protect** [1] - 7:5
**protective** [1] - 10:7
**protects** [1] - 7:3
**protester** [1] - 14:25
**protesters** [1] - 21:10

**provide** [1] - 24:13
**provided** [1] - 22:1
**provides** [1] - 20:22
**pseudonym** [1] - 20:3
**public** [1] - 19:25
**pull** [1] - 20:17
**Pullman** [2] - 3:13, 3:23
**PULLMAN** [20] - 1:13, 3:11, 3:23, 7:25, 8:5, 8:9, 8:16, 8:20, 9:17, 10:20, 10:22, 13:11, 13:13, 13:19, 13:22, 13:25, 19:10, 22:19, 25:6, 25:9
**pullman** [1] - 7:24
**purpose** [1] - 6:13
**put** [3] - 9:14, 9:21, 9:24
**putting** [1] - 19:13

## Q

**questionnaire** [6] - 14:24, 18:3, 18:11, 18:13, 18:17, 23:1
**questionnaires** [26] - 5:8, 5:9, 5:11, 5:21, 7:18, 9:12, 9:13, 9:14, 9:18, 12:14, 13:7, 14:8, 14:10, 15:24, 17:8, 17:17, 18:14, 19:15, 22:2, 22:4, 22:23, 23:2, 23:4, 23:11, 23:12, 23:18
**quite** [1] - 16:2
**quotes** [1] - 21:17

## R

**raised** [6] - 10:10, 10:13, 11:5, 11:7, 12:6, 12:12
**raises** [2] - 8:11, 8:13
**raising** [3] - 9:11, 11:1, 12:15
**RDR** [2] - 2:13, 25:23
**reactions** [1] - 14:2
**read** [4] - 6:17, 12:23, 12:24, 13:1
**real** [1] - 20:7
**realize** [1] - 21:25
**really** [4] - 11:16, 12:13, 19:20, 25:2
**reason** [2] - 19:5, 21:25
**rebut** [2] - 11:21, 24:5
**rebuttal** [1] - 15:19
**recalled** [1] - 14:7
**recently** [1] - 22:23
**record** [5] - 3:10, 3:21, 20:9, 20:13, 25:18
**recorded** [2] - 2:16
**records** [3] - 6:12, 9:19, 10:15
**recourse** [1] - 15:18
**redact** [1] - 17:25
**redacted** [6] - 6:14, 9:19, 10:10, 10:11, 22:6, 22:14
**referring** [1] - 8:1
**reflect** [1] - 19:15
**regard** [1] - 16:6
**regarding** [1] - 7:20
**relate** [1] - 16:14
**related** [1] - 12:13
**relevance** [1] - 15:7
**relevant** [3] - 12:7, 15:8, 21:7
**remain** [1] - 6:14
**remember** [3] - 14:19, 14:20, 25:2
**removed** [1] - 14:18

**RENA** [1] - 2:6
**Rena** [1] - 4:13
**replies** [2] - 4:23, 4:25
**reply** [1] - 4:25
**Reporter** [3] - 2:13, 2:14, 25:24
**REPORTER** [1] - 25:16
**represent** [2] - 4:10, 5:15
**representing** [1] - 4:8
**request** [1] - 15:22
**resolve** [1] - 18:14
**resolved** [1] - 4:23
**resolving** [1] - 9:13
**respect** [1] - 15:14
**result** [1] - 23:21
**Richter** [2] - 2:7, 4:13
**rise** [1] - 3:2
**Road** [1] - 2:3
**robbery** [1] - 23:6
**Rockefeller** [1] - 2:8
**root** [1] - 11:8
**rule** [1] - 4:21
**rules** [2] - 5:1, 18:9
**ruling** [1] - 24:17
**Ryan** [1] - 2:4

## S

**sampling** [1] - 5:15
**Sandra** [2] - 3:12, 3:23
**SANDRA** [1] - 1:13
**sat** [2] - 12:20, 13:16
**satisfied** [2] - 9:17, 10:14
**satisfy** [1] - 20:6
**Saturday** [2] - 14:22, 20:15
**Schneider** [1] - 3:19
**SCHNEIDERMAN** [1] - 1:3
**scope** [2] - 11:16, 20:14
**seated** [1] - 4:16
**see** [3] - 5:3, 10:16, 19:24
**seeing** [1] - 20:5
**seeking** [1] - 6:5
**sees** [1] - 20:15
**sense** [3] - 13:9, 14:14, 20:14
**separation** [1] - 14:16
**September** [1] - 17:15
**services** [3] - 20:21, 20:22, 20:23
**session** [1] - 3:4
**share** [1] - 23:20
**Sheppard** [2] - 2:7, 4:13
**show** [2] - 8:22, 25:1
**showed** [1] - 20:18
**sift** [1] - 7:1
**significance** [1] - 22:22
**simply** [2] - 18:1, 19:24
**single** [3] - 15:20, 19:21, 21:21
**situation** [4] - 7:12, 15:2, 19:23, 21:20
**six** [1] - 12:21
**solution** [2] - 5:21, 6:8
**solve** [1] - 23:18
**solved** [1] - 21:24
**solves** [1] - 16:17
**someone** [4] - 19:15, 19:21, 19:24, 20:1
**somewhat** [1] - 15:13

**somewhere** [1] - 9:3
**sort** [4] - 14:14, 14:16, 20:6, 23:20
**sounds** [1] - 18:21
**specific** [10] - 13:15, 13:24, 14:19, 14:20, 14:25, 15:4, 15:16, 15:24, 18:24, 21:2
**specifically** [1] - 10:7
**spend** [1] - 24:18
**spending** [1] - 12:18
**staff** [9] - 8:1, 8:5, 9:2, 9:24, 10:19, 10:23, 11:10, 13:19, 16:9
**staffer** [1] - 25:1
**STATE** [1] - 1:3
**state** [3] - 3:21, 17:2, 19:19
**State** [7] - 1:4, 1:16, 3:7, 3:11, 3:12, 3:18, 3:23
**statements** [2] - 12:24, 13:1
**STATUS** [1] - 1:4
**stenography** [1] - 2:16
**stipulate** [2] - 6:20, 19:18
**stipulation** [1] - 19:17
**stop** [1] - 12:19
**strokes** [1] - 14:11
**stuff** [1] - 22:14
**submit** [1] - 9:18
**sufficiency** [1] - 8:21
**supposedly** [1] - 11:11
**synthesize** [1] - 5:3

## T

**table** [1] - 12:20
**tape** [2] - 19:7, 21:2
**target** [2] - 24:19, 24:20
**Telephone** [1] - 2:14
**ten** [1] - 20:19
**term** [1] - 5:7
**terms** [3] - 14:17, 15:11, 21:16
**testified** [2] - 17:12, 19:3
**testify** [11] - 7:18, 7:22, 10:3, 11:11, 18:16, 19:23, 19:25, 20:3, 20:4, 22:24, 23:7
**testifying** [1] - 8:6
**testimony** [12] - 11:17, 13:8, 13:9, 14:6, 14:11, 16:9, 18:24, 18:25, 23:15, 23:17, 23:21
**the defendant** [1] - 3:15
**themselves** [2] - 15:24, 18:10
**theory** [3] - 9:13, 11:19, 11:21
**they've** [10] - 9:25, 10:1, 11:20, 11:24, 14:1, 18:23, 19:22, 22:12, 22:13, 23:14
**thousand** [1] - 20:20
**three** [1] - 12:19
**tie** [1] - 15:4
**today** [1] - 21:25
**took** [1] - 17:14
**Transcript** [1] - 2:16
**TRANSCRIPT** [1] - 1:9
**transcript** [1] - 25:17
**Transcription** [1] - 2:17
**TRASANDE** [2] - 1:14, 4:1
**Trasande** [2] - 3:13, 4:1
**true** [1] - 16:2
**try** [3] - 5:25, 12:3, 19:21
**trying** [2] - 11:18, 18:6

**Tuesday** [2] - 12:21, 12:25
**turned** [2] - 5:6, 15:12
**two** [6] - 8:16, 9:23, 11:10, 12:20, 14:16, 19:6
**type** [1] - 20:23

## U

**unable** [1] - 4:9
**undated** [2] - 16:1, 18:1
**under** [2] - 20:3, 23:5
**understood** [3] - 8:24, 11:16, 19:14
**unhappy** [1] - 19:16
**unidentified** [2] - 7:19, 10:24
**United States** [3] - 1:1, 1:11, 3:2
**unredacted** [1] - 22:4
**unrelated** [1] - 23:18
**up** [3] - 9:21, 20:18, 21:14
**utterance** [2] - 13:13, 23:9

## V

**vagueness** [2] - 23:15, 23:17
**value** [1] - 18:12
**various** [1] - 14:2
**vast** [2] - 20:20, 20:22
**versus** [2] - 3:19, 18:12
**video** [8] - 15:25, 16:22, 16:25, 17:1, 17:3, 17:17, 17:20, 18:3
**view** [1] - 6:3
**viewpoint** [1] - 6:7
**violation** [1] - 12:2
**virtue** [1] - 19:24
**volume** [1] - 21:19
**VRABIE** [2] - 2:7, 4:15
**Vrabie** [1] - 4:15

## W

**walked** [1] - 15:20
**wasting** [1] - 21:11
**ways** [1] - 20:4
**Wednesday** [1] - 19:3
**week** [5] - 7:16, 10:12, 11:10, 12:12, 14:13
**weeks** [1] - 12:19
**weight** [5] - 9:20, 16:7, 16:9, 16:10, 16:13
**whatnot** [1] - 17:3
**whole** [2] - 8:23, 21:24
**wholesale** [1] - 20:7
**willing** [1] - 6:11
**wish** [1] - 24:12
**witnessed** [2] - 7:22, 9:1
**witnesses** [4] - 12:20, 14:13, 16:16, 23:7
**women** [1] - 21:14
**Women's** [2] - 2:7, 4:14
**words** [1] - 14:19
**worth** [1] - 14:5

## Y

**year** [1] - 12:22
**years** [3] - 14:18, 15:20, 23:15
**YORK** [2] - 1:1, 1:3
**York** [13] - 1:4, 1:5, 1:16, 1:17, 2:9, 3:3, 3:8, 3:12, 3:18, 3:23